DAVID L. PINKSTON (#6630)
KEITH A. CALL (#6708)
P. MATTHEW COX (#9879)
ROBERT T. DENNY (#13687)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145-5000
Telephone: (801) 521-9000
Fax: (801) 363-0400
dlp@scmlaw.com
kac@scmlaw.com
pmc@scmlaw.com
rtd@scmlaw.com

*Counsel for David J. Richards, LLC d/b/a Western US Mineral Investors, LLC*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| In re | Bankruptcy Case No. 16-24818 (Chapter 11) |
|---|---|
| CS MINING, LLC, | |
| Debtor, | Judge William T. Thurman |

**REPLY IN SUPPORT OF THE MOTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 TO APPROVE SETTLEMENT AGREEMENT BY AND BETWEEN CS MINING, LLC AND DAVID J. RICHARDS, LLC D/B/A WESTERN US MINERAL INVESTORS, LLC**

David J. Richards, LLC d/b/a Western US Mineral Investors, LLC ("WUMI") submits the following reply in support of the Debtor's motion (Dkt. 664) to approve the settlement agreement between Debtor and WUMI.

**INTRODUCTION**

This Court has scheduled an evidentiary hearing on Debtor's motion to approve a proposed settlement between Debtor, CS Mining, LLC ("CS Mining" or "Debtor") and WUMI for July 5-6, 2017. The Court should approve the proposed settlement. The settlement will provide significant benefits to the Debtor's Estate and will eliminate protracted and expensive litigation. Moreover, the Debtor's claims against WUMI have significant weaknesses substantially affecting the likelihood of success.

The key issue is whether WUMI is obligated to convert its loan to equity under an Intercreditor Agreement between WUMI, the Debtor, and Noble Americas Corp. ("Noble"), the predecessor to Waterloo Street Limited. WUMI recently filed a motion for partial summary judgment in a related adversary proceeding, demonstrating as a matter of law that it is not required to convert its loan to equity.

Waterloo attempts to argue that WUMI should be required to convert to equity because two of WUMI's former managers are also managers of Debtor and have breached fiduciary duties owed to the Debtor. The evidence, however, has shown--and will show--that WUMI has at all times acted in good faith. WUMI has come to the Court with clean hands, so equity does not allow for its loan to be subordinated.

The proposed settlement is fair and reasonable. It was negotiated at arms-length between the Debtor and WUMI. It provides substantial benefits to the Debtor's estate. It resolves costly litigation that the Debtor is likely to lose. The CRO and Official Committee of Unsecured Creditors (the "Committee") support the settlement. This Court should approve it.

The following provides a summary of some of the reasons the objections to the settlement lack merit and why the Court should approve the settlement.

**I.    THE CLAIMS AGAINST WUMI ARE WEAK BECAUSE WUMI IS NOT REQUIRED TO CONVERT UNDER THE INTERCREDITOR AGREEMENT.**

On August 12, 2014, CS Mining, WUMI, and Noble entered into a contract titled the Intercreditor Agreement. The parties entered into this agreement in connection with Noble's agreement to loan up to $30 million to CS Mining. Among other things, the Intercreditor Agreement addressed the respective rights of WUMI and Noble in light of the fact that WUMI had already loaned $20.5 million to CS Mining.[1]

Waterloo argues that WUMI was required to convert its $20.5 million loan to equity pursuant to § 5.2 of the Intercreditor Agreement. That Section provides:

> 5.2    Mandatory Conversion    In the event that Project Completion Date (as defined in the Noble Loan Agreement) occurs or Noble loans the Borrower the Full Facility Amount pursuant to the Noble Loan Agreement, and there are no existing defaults under the Noble Loan Agreement or that occur in connection with lending the Full Facility Amount, WUMI hereby agrees to promptly (but in any event within 5 business days) convert the WUMI Obligations in full into the equity . . . . In connection with such conversion, the WUMI obligations will be extinguished all Liens held by WUMI on Collateral shall be released.[2]

Thus, § 5.2 provides two potential events that could trigger WUMI's obligation to convert: (1) "Project Completion," or (2) CS Mining draws upon the full amount of the $30 million loan facility. ***Importantly, WUMI is not obligated to convert if, at the time of the triggering events, CS Mining is in default of its obligations under the Noble Loan Agreement.***

---

[1] *See* Intercreditor Agreement, attached as **Exhibit 1**.
[2] *Id.* § 5.2, p. 4.

On March 10, 2015, WUMI and CS Mining agreed to the Tenth Amendment to the WUMI Loan Agreement (the "Tenth Amendment"). Under the Tenth Amendment, CS Mining promised WUMI that CS Mining would not draw down more than $29,750,000 of the Noble loan facility without WUMI's knowledge and consent.[3] While Waterloo does not like the Tenth Amendment, the evidence will show that it is a valid, binding and enforceable agreement between CS Mining and WUMI.

Between November 10, 2015, and January 7, 2016, Noble and its successor, Waterloo, issued three different letters to CS Mining, informing CS Mining that it was in default under the Noble loan agreement.[4] These notices allowed Waterloo to purchase the Noble loan at a sharp discount from its face value. Both Noble and Waterloo had admitted under oath that the CS Mining had defaulted on the Noble loan.[5]

After WUMI refused to convert its loan to equity because of the defaults, Waterloo manufactured a sham "waiver" of such defaults, by which it attempted to somehow erase the fact that several events of default had already occurred.[6]

In a related Adversary Proceeding that CS Mining filed against WUMI (Case No. 17-2024), WUMI has filed a motion for partial summary judgment, demonstrating that WUMI has no obligation to convert its loan to equity under the Intercreditor Agreement because of CS

---

[3] Tenth Amendment to Loan & Security Agreement, attached as **Exhibit 3.**
[4] *See* Noble Letter dated November 10, 2015, attached as **Exhibit 4**; Noble Letter dated December 30, 2015, attached as **Exhibit 5**; Waterloo Letter dated January 7, 2016, attached as **Exhibit 6**.
[5] Noble Americas Corp.'s Resps. To WUMI's 4/7/17 Reqs. for Admission & Interrogs. at p. 4, attached as **Exhibit 7**; Transcript of 30(b)(6) Deposition of Waterloo (Sanjiv Noronha) dated May 31, 2017 ("Waterloo Dep."), attached as **Exhibit 8**, at 149:4-22, 151:12-23.
[6] *See* Waiver, attached as **Exhibit 9**.

Mining's pre-existing defaults under the Noble loan agreement. A copy of that motion is attached as **Exhibit 2**.

The evidence, as summarized in WUMI's motion for summary judgment, demonstrates that WUMI has no obligation to convert its loan to equity under the Intercreditor Agreement. The Debtor, the CRO, and the Committee recognize that there are significant weaknesses in the claims against WUMI for conversion to equity. This strongly demonstrates that the proposed settlement is reasonable and fair to Debtor and to the Estate.

## II. RICHARDS AND WALKER HAVE NO CONTROL OVER WUMI.

Waterloo argues that the settlement should not be approved because Waterloo thinks it can prove Richards and Walker were insiders of the Debtor who had conflicts of interest and breached their duties to the Debtor by approving WUMI's foreclosure actions against the Debtor. Waterloo even goes so far as to argue that Walker "handed the Debtor a victory" on its adversary proceeding against WUMI by admitting he authorized WUMI's foreclosure action against the Debtor.[7]

As the Debtor and the CRO recognize, this argument is seriously flawed, and WUMI has a meaningful chance of prevailing at the trial of CS Mining's adversary proceeding on this issue. There is no dispute that the WUMI loan was in material default and that WUMI had the right under the applicable loan documents to foreclose. Richards and Walker had absolutely no legal or practical ability to prevent WUMI from foreclosing. WUMI's operating agreement removed from Richards and Walker any ability to prevent WUMI's foreclosure. Moreover, Richards and

---

[7] *See* Waterloo's Objection, Dkt. No. 691, at 27.

Walker resigned their management positions at WUMI, and Richards gave up his ownership interest, leaving them with no legal or practical influence on WUMI's decisions.

> A. **Even While They Were Still Managers, the WUMI Operating Agreement Left Richards and Walker Powerless to Prevent WUMI from Proceeding with Default and Foreclosure.**

In about July 2013, St. Cloud Capital Partners II, L.P. ("St. Cloud") invested $8,000,000 in WUMI, which enabled WUMI to increase the amount of its loan to CS Mining. In connection with that investment, St. Cloud and the other members of WUMI entered into that certain "First Amended Limited Liability Company Agreement of David J. Richards, LLC" ("WUMI Operating Agreement").[8] By design, the WUMI Operating Agreement gave St. Cloud three seats on WUMI's five-member Board of Managers. The holders of all other units were entitled to designate two managers. Thus, St. Cloud, whose principal is Robert Lautz, controlled three out of five manager positions. The other two managers, David J. Richards and Clint Walker, were relegated to a minority position.[9]

The WUMI Operating Agreement specifically provided that St. Cloud could declare a default and pursue foreclosure against CS Mining in the event of a payment default, even without the consent of the two minority managers. Specifically, Section 5.4 of the WUMI Operating Agreement provides, in relevant part (emphasis added):

> The Board of Managers shall not, without consent of the Minority Managers [*i.e.* Richards and Walker] . . . declare a default *that is not a payment default* by Borrower [CS Mining] pursuant to the [WUMI] Loan Documents or pursue collection or foreclosure pursuant to the Loan Documents without both the

---

[8] Copy attached as **Exhibit 10**.
[9] WUMI Operating Agreement, § 5.2(a); *see* Transcript of Deposition of Clint Walker dated May 23, 2017 ("Walker Dep."), attached as **Exhibit 11**, at 195:14-23.

6

approval of the Minority Managers, which approval shall not be unreasonably withheld . . .[10]

In other words, even when Richards and Walker were still managers, if CS Mining defaulted on the WUMI Loan by failing to make payments, the St. Cloud-appointed manager, Lautz, did not need approval from Richards or Walker in order to initiate foreclosure proceedings. He could do that unilaterally as the majority manager of WUMI. Moreover, the WUMI Operating Agreement stripped from Richards and Walker any ability to withhold consent to foreclosure without good reason. Given that CS Mining was in default of its payment obligations, no conceivable good reason existed for which Richards or Walker could have withheld such consent.[11]

Richards and Walker both testify to this fact and add that WUMI was determined to foreclose on the WUMI Loan because of CS Mining's payment default. As a creditor, St. Cloud wanted its money, and it was entitled to get it through foreclosure.[12] As Richards testified, "I think St. Cloud was going to foreclose no matter what so I didn't think I had any control over it. In fact, I was told as much by Lautz."[13]

### B. Richards and Walker Eventually Resigned as Managers of WUMI.

Aside from being powerless to stop WUMI's foreclosure actions against CS Mining, Richards and Walker have no ability to control WUMI on any other issue relevant to this case. Richards and Walker have both resigned as managers of WUMI, and Richards has no ownership

---

[10] First Amended Limited Liability Company Agreement of David J. Richards, LLC (dba Western US Mineral Investors, LLC), attached as **Exhibit 10**, at § 5.4.
[11] *See* Walker Dep. at 218:13 – 220:21.
[12] Transcript of Deposition of David J. Richards dated June 6, 2017 ("DJR Dep."), attached as **Exhibit 12**, at 68:7-20; Walker Dep. 220:6-21.
[13] DJR Dep. 59:15-18.

7

interest. Control over WUMI resides solely in its three St. Cloud managers, led by Lautz. Lautz has no interest in the Debtor, outside of his interest in WUMI, a pre-petition creditor.

Richards testified at his June 6, 2017 deposition that he has no ownership interest in WUMI and has had no such interest since about the end of 2015.[14] Richards is no longer manager of WUMI, having resigned as a manager at least by May 23, 2016.[15]

Walker maintains an ownership interest through an investment vehicle, Clarity Copper, LLC. But he is not a manager of WUMI and has not been since about July 2016.[16]

Equitable subordination is an equitable claim. *See* Bankruptcy Code § 510(c)(1). The Tenth Circuit requires a showing, among other things, that the party subject to equitable subordination must have engaged in "inequitable conduct." *In re Hedged-Investments Associates, Inc.*, 380 F.3d 1292, 1300 (10th Cir. 2004); *see also United States v. Noland,* 517 U.S. 535, 538–39 (1996). Waterloo or the Debtor may or may not be able to assert claims against Richards or Walker individually for inequitable conduct. But there is no evidence that WUMI engaged in any inequitable conduct. The evidence will show that WUMI did nothing more than properly act on its legal rights. This further demonstrates the weakness of the Debtor's claims against WUMI and supports the reasonableness of the proposed settlement.

---

[14] DJR Dep. at 48:17-25.
[15] DJR Dep. at 51:18 – 53:1; Correspondence from David J. Richards dated May 23, 2016, attached as **Exhibit 13**.
[16] Walker Dep. at 135:2-11, 162:4-19; Resignation Letter from Clint Walker dated July 27, 2016, attached as **Exhibit 14**.

### III. WATERLOO MISSTATES THE IMPACT OF THE SETTLEMENT.

Waterloo attempts to suggest that approval of the settlement would cause Waterloo to lose all of its rights to any potential recovery on its legal claims against WUMI.[17] This is not accurate.

Approval of the settlement will resolve WUMI's rights *vis-à-vis* the bankruptcy estate, and it will set WUMI's priority rights in the event of any distribution. It will resolve the bankruptcy-specific claims for recharacterization and subordination. To the extent that Waterloo seeks those bankruptcy-specific claims as a remedy, those claim are resolved. While WUMI believes Waterloo's claims are meritless, the proposed settlement does not resolve Waterloo's claims for monetary relief.

As Waterloo points out, it has asserted causes of action against WUMI for, among other things, breach of contract and tortious interference.[18] Neither WUMI nor the Debtor have asked the Court to foreclose these state-law claims. Waterloo may still be entitled to seek a damage or monetary remedy in any such proceedings. The proposed settlement does not foreclose such claims.

What Waterloo really wants is the remedy of specific performance for its legal claims, requiring WUMI to convert its loan to equity. Unfortunately for Waterloo, even without the settlement, Waterloo it is not entitled to a specific performance remedy either in this Court or in state court. *See generally* Restatement (Second) of Contracts § 359(1) ("Specific performance or injunction will not be ordered if damages would be adequate to protect the expectation interest of

---

[17] *See, e.g.,* Waterloo Opp'n, p. 18 ("If the Waterloo Claim Objection is not decided on the merits, Waterloo loses its right to ***any*** potential recovery in this case.")
[18] Waterloo Opp'n, at 7, ¶ 7.

the injured party."); *Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y.2d 409, 415, 754 N.E.2d 184, 188 (2001) ("In general, specific performance will not be ordered where money damages 'would be adequate to protect the expectation interest of the injured party.'"), citing Restatement (Second) of Contracts § 359(1).

Moreover, the core issue here is not whether Waterloo's claim has merit or value. Rather, the core issue is whether the settlement between the Debtor and WUMI "falls below the lowest point in the range of reasonableness." *In re Key3Media Group, Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005), citing *In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D.N.J. 2000). WUMI loaned $20.5 million to CS Mining and has a prepetition claim of $24.9 million. Its loan is secured by a first-position lien on most of CS Mining's most valuable assets and a second-position lien on all of CS Mining's assets. It is undisputed that CS Mining is in default. CS Mining's claims against WUMI have substantial weakness and would likely cost millions to litigate. The proposed settlement is eminently reasonable.

**IV.    WATERLOO SHOULD NOT BE ABLE THWART THE ADMINISTRATION OF THE ESTATE BY REQUESTING RESOLUTION OF ITS OBJECTION PRIOR TO APPROVAL OF THE SETTLEMENT.**

Waterloo claims this Court should not and cannot approve the settlement until resolution of the Waterloo objection to WUMI's claim. This is incorrect. Cases addressing the orderly administration of claims have found that a court had the authority to approve a Rule 9019 settlement even with a claim objection pending by the objecting creditor. *See In re Kaiser Aluminum Corp.*, 339 B.R. 91, 94-95 (D. Del. 2006); *In re Heritage Organization, LLC*, 375 B.R. 230, 285 (Bank. N. D. Tex. 2007). As the *Heritage* court explained:

> Taken to its logical conclusion, the Kornman Parties' argument that § 502 confers not only a right to object to a claim but also a right to a ruling would mean that

10

> the Court could *never* permit a settlement of a claim objection—the Court would be required to deny the compromise and rule upon the merits, even though both the claimant and the objectant desired a different result. In other words, if the Kornman Parties' interpretation is correct, the Trustee could not, even in the absence of opposition, compromise *his own* claim objection. Yet courts routinely permit settlements of claim objections.

*Id*. at 285. Further, the court explained, the better way "to harmonize § 502 and Rule 9019 is to read the 'notice and hearing' requirement of Rule 9019 as satisfying the right to be heard with respect to the claim objection." *Id*. The court then explained, "[w]hile a party in interest has a statutory right to object to a claim, the Trustee [or in this case the Debtor in Possession], as the representative of the estate, has the ability to compromise that objection, as long as the objectant is given notice and an opportunity to be heard with respect to the fairness and wisdom of the compromise. Rule 9019's requirement of court approval of a compromise after notice and hearing provides protection to the party whose claim objection is being compromised." *Id*. (citations omitted). As these courts explain, requiring litigation undermines the policy of promoting settlements in bankruptcy. As a result, Waterloo's objection to the settlement should be overruled and the orderly administration of the estate should proceed.

## CONCLUSION

For all these reasons, and for others to be shown at trial, the Court should approve the proposed settlement between the Debtor and WUMI.

DATED this 30th day of June, 2017.

                                              SNOW, CHRISTENSEN & MARTINEAU

                                              /s/ P. Matthew Cox
                                              David L. Pinkston
                                              Keith A. Call
                                              P. Matthew Cox
                                              Robert T. Denny
                                              *Attorneys for David J. Richards, LLC d/b/a*
                                              *Western US Mineral Investors, LLC*

**CERTIFICATE OF SERVICE**

I, hereby certify that on the 30th day of June, 2017, I electronically filed the foregoing document with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case as identified below, are registered CM/ECF user and will be served through the CM/ECF system.

- James W. Anderson jwa@clydesnow.com, jritchie@clydesnow.com
- Troy J. Aramburu taramburu@swlaw.com; nharward@swlaw.com; docket_slc@swlaw.com
- Darwin H. Bingham dbingham@scalleyreading.net; cat@scalleyreading.net
- Stephen T. Bobo sbobo@reedsmith.com
- Kyle A. Brannon kbrannon@nexsenpruet.com
- Scott S Bridge sbridge@keslerrust.com
- Martin J. Brill mjb@lnbyb.com
- Mona Lyman Burton mburton@hollandhart.com; intaketeam@hollandhart.com; slclitdocket@hollandhart.com; lcpaul@hollandhart.com
- Keith A. Call kcall@scmlaw.com
- Kenneth L. Cannon kcannon@djplaw.com; khughes@djplaw.com
- Laurie A. Cayton tr laurie.cayton@usdoj.gov; James.Gee@usdoj.gov; Lindsey.Huston@usdoj.gov; Suzanne.Verhaal@usdoj.gov
- Patricia W. Christensen pchristensen@parrbrown.com
- Christopher B. Chuff chuffc@pepperlaw.com
- Joanna J. Cline clinej@pepperlaw.com
- Joseph M.R. Covey calendar@parrbrown.com
- P. Matthew Cox bankruptcy_pmc@scmlaw.com
- Robert T. Denny rtd@scmlaw.com, ajm@scmlaw.com
- Timothy D. Ducar tducar@azlawyers.com, orders@azlawyers.com
- Victoria B. Finlinson vbf@clydesnow.com
- Philip A. Gasteier pag@lnbyb.com
- Christopher Grivakes cg@agzlaw.com
- Robert W. Hamilton rwhamilton@jonesday.com
- M. Darin Hammond dhammond@smithknowles.com, astevenson@smithknowles.com
- George B. Hofmann ghofmann@cohnekinghorn.com, dhaney@cohnekinghorn.com; jthorsen@cohnekinghorn.com
- Paul C. Huck paulhuck@jonesday.com, apolo@jonesday.com
- David W. Hunter davidh@fisherhunterlaw.com
- Evan L. James elj@cjmlv.com, kbc@cjmlv.com;ljw@cjmlv.com
- Pedro A. Jimenez pjimenez@jonesday.com
- Michael R. Johnson mjohnson@rqn.com, docket@rqn.com;dburton@rqn.com
- Peter J. Kuhn tr Peter.J.Kuhn@usdoj.gov; James.Gee@usdoj.gov; Lindsey.Huston@usdoj.gov; Suzanne.Verhaal@usdoj.gov
- Brian R. Langford brian@mhmlawoffices.com, brian@mhmlawoffice.com
- David H. Leigh dleigh@rqn.com, dburton@rqn.com;docket@rqn.com

- David E. Leta dleta@swlaw.com, wkalawaia@swlaw.com;csmart@swlaw.com
- Andrew C. Lillie andrew.lillie@hoganlovells.com
- Jessica Black Livingston jessica.livingston@hoganlovells.com
- Ralph R. Mabey rmabey@kmclaw.com
- Adelaide Maudsley amaudsley@kmclaw.com, tslaughter@kmclaw.com
- Steven J. McCardell smccardell@djplaw.com, khughes@djplaw.com
- Scott O. Mercer som@keslerrust.com
- Krikor J. Meshefejian kjm@lnbyb.com
- Elijah L. Milne emilne@djplaw.com, pbricker@djplaw.com
- Matt Munson matt@mamunsonlaw.com, chris@mamunsonlaw.com
- Sherilyn A. Olsen solsen@hollandhart.com, slclitdocket@hollandhart.com;intaketeam@hollandhart.com;cfries@hollandhart.com
- Ellen E Ostrow eeostrow@hollandhart.com, mkthurgood@hollandhart.com;intaketeam@hollandhart.com
- A.M. Cristina Perez Soto cperezsoto@jonesday.com
- Lester A. Perry lap@hooleking.com, apb@hooleking.com
- David L. Pinkston bankruptcy_dlp@scmlaw.com
- George W. Pratt gpratt@joneswaldo.com
- Adam H Reiser areiser@cohnekinghorn.com
- Walter A Romney war@clydesnow.com
- John H. Schanne schannej@pepperlaw.com, henrys@pepperlaw.com; molitorm@pepperlaw.com
- Chris L. Schmutz chrisschmutz.pc@gmail.com, hillaryschmutz@yahoo.com
- Jeremy C. Sink jsink@mbt-law.com
- Stephen Styler steve@stylerdaniels.com
- Richard C. Terry richard@tjblawyers.com, cbcecf@yahoo.com
- Jeff D. Tuttle jtuttle@swlaw.com, jpollard@swlaw.com;docket_slc@swlaw.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov
- Jessica P Wilde jwilde@joneswaldo.com ;
- Mark W Williams mwilliams@shermanhoward.com, dfouts@shermanhoward.com; efiling@sah.com; bmcalister@shermanhoward.com
- Kim R. Wilson bankruptcy_krw@scmlaw.com
- Laura J. Wolff ljw@cjmlv.com
- Lee E. Woodard lwoodard@harrisbeach.com
- Beth Ann R. Young bry@Lnbyb.com
- P. Matthew x2Cox bankruptcy_pmc@scmlaw.com
- Gale K. x6Francis txbk13@utah.gov

**By U.S. mail** – I further certify that on the _ day of June, 2017, I caused the foregoing document to be sent by United States mail, first class postage prepaid, to the following at the addresses set forth below:

FTI Consulting, Inc.
1001 17th St. #1100

14

Attn: David Beckman
Denver, CO 80202

                                        /s/     P. Matthew Cox