DAVID L. PINKSTON (#6630)
KEITH A. CALL (#6708)
P. MATTHEW COX (#9879)
ROBERT T. DENNY (#13687)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145-5000
Telephone: (801) 521-9000
Fax: (801) 363-0400
dlp@scmlaw.com
kac@scmlaw.com
pmc@scmlaw.com
rtd@scmlaw.com

*Counsel for David J. Richards, LLC d/b/a Western US Mineral Investors, LLC*

---

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re<br><br>CS MINING, LLC,<br><br>       Debtor, | Bankruptcy Case No. 16-24818<br>(Chapter 11)<br><br>Judge William T. Thurman |

---

## NOTICE OF APPEAL AND STATEMENT OF ELECTION TO HAVE APPEAL HEARD BY THE DISTRICT COURT

Pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8001 *et seq.*, creditor and party-in-interest, David J. Richards, LLC dba Western US Mineral Investors, LLC ("WUMI"), files the following Notice of Appeal and Statement of Election to Have Appeal Heard by the District Court, conforming to the Official Form therefor (Official Form 417A (12/15)), and pursuant to Rule 8003, Fed. R. Bankr. P. and 10th Cir. BAP L.R. 8005-1.

**Part 1: Identify the appellant**

1. Name of appellant:  David J. Richards, LLC dba Western US Mineral Investors, LLC ("WUMI").

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

| For appeals in an adversary proceeding. | For appeals in a bankruptcy case and not in an adversary proceeding. |
|---|---|
| ☐ Plaintiff | ☐ Debtor |
| ☐ Defendant | ✔ Creditor |
| ☐ Other (describe) _____ | ☐ Trustee |
| | ☐ Other (describe) _____ |

**Part 2: Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed from: *Order Denying Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 to Approve Settlement by and Between CS Mining, LLC and David J. Richards, LLC, dba Western US Mineral Investors, LLC,* entered by the Honorable William T. Thurman, in the above-captioned bankruptcy case, on July 28, 2017 [Docket No. 796] (the "Order").

2. State the date on which the judgment, order, or decree was entered: July 28, 2017.

3. The Order incorporates, by reference, the Court's *Memorandum Decision Denying Motion to Approve Settlement,* dated July 27, 2017 [Docket No. 793] (the "Memorandum Decision").

.

**Part 3: Identify the other parties to the appeal**

*List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):*

See Addendum A, attached.

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

*If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.*

✓     Appellant hereby elects to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel. To avoid confusion, the "box" is, indeed, checked, signifying Appellant's election to have the appeal heard by the district court.

Pursuant to Rule 80003(a)(3), copies of the Order and the Memorandum Decision are attached

hereto at Addendum B.

DATED this 10th day of August, 2017.

SNOW, CHRISTENSEN & MARTINEAU

  /s/ David L. Pinkston
David L. Pinkston
Keith A. Call
P. Matthew Cox
Robert T. Denny
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145-5000
Telephone: (801) 521-9000
Fax: (801) 363-0400
*Attorneys for David J. Richards, LLC d/b/a*
*Western US Mineral Investors, LLC*

## CERTIFICATE OF SERVICE

I, hereby certify that on the 10th day of August, 2017, I electronically filed the foregoing document with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system.  I further certify that the parties of record in this case as identified below, are registered CM/ECF user and will be served through the CM/ECF system.

- James W. Anderson jwa@clydesnow.com, jritchie@clydesnow.com
- Troy J. Aramburu taramburu@swlaw.com; nharward@swlaw.com; docket_slc@swlaw.com
- Darwin H. Bingham dbingham@scalleyreading.net; cat@scalleyreading.net
- Stephen T. Bobo sbobo@reedsmith.com
- Kyle A. Brannon kbrannon@nexsenpruet.com
- Scott S Bridge sbridge@keslerrust.com
- Martin J. Brill mjb@lnbyb.com
- Mona Lyman Burton mburton@hollandhart.com; intaketeam@hollandhart.com; slclitdocket@hollandhart.com; lcpaul@hollandhart.com
- Keith A. Call kcall@scmlaw.com
- Kenneth L. Cannon kcannon@djplaw.com; khughes@djplaw.com
- Laurie A. Cayton tr laurie.cayton@usdoj.gov; James.Gee@usdoj.gov; Lindsey.Huston@usdoj.gov; Suzanne.Verhaal@usdoj.gov
- Patricia W. Christensen pchristensen@parrbrown.com
- Christopher B. Chuff chuffc@pepperlaw.com
- Joanna J. Cline clinej@pepperlaw.com
- Joseph M.R. Covey calendar@parrbrown.com
- P. Matthew Cox bankruptcy_pmc@scmlaw.com
- Robert T. Denny rtd@scmlaw.com, ajm@scmlaw.com
- Timothy D. Ducar tducar@azlawyers.com, orders@azlawyers.com
- Victoria B. Finlinson vbf@clydesnow.com
- Philip A. Gasteier pag@lnbyb.com
- Christopher Grivakes cg@agzlaw.com
- Robert W. Hamilton rwhamilton@jonesday.com
- M. Darin Hammond dhammond@smithknowles.com, astevenson@smithknowles.com
- George B. Hofmann ghofmann@cohnekinghorn.com, dhaney@cohnekinghorn.com; jthorsen@cohnekinghorn.com
- Paul C. Huck paulhuck@jonesday.com, apolo@jonesday.com
- David W. Hunter davidh@fisherhunterlaw.com
- Evan L. James elj@cjmlv.com, kbc@cjmlv.com;ljw@cjmlv.com
- Pedro A. Jimenez pjimenez@jonesday.com
- Michael R. Johnson mjohnson@rqn.com, docket@rqn.com;dburton@rqn.com
- Peter J. Kuhn tr Peter.J.Kuhn@usdoj.gov; James.Gee@usdoj.gov; Lindsey.Huston@usdoj.gov; Suzanne.Verhaal@usdoj.gov
- Brian R. Langford brian@mhmlawoffices.com, brian@mhmlawoffice.com
- David H. Leigh dleigh@rqn.com, dburton@rqn.com;docket@rqn.com

- David E. Leta dleta@swlaw.com, wkalawaia@swlaw.com;csmart@swlaw.com
- Andrew C. Lillie andrew.lillie@hoganlovells.com
- Jessica Black Livingston jessica.livingston@hoganlovells.com
- Ralph R. Mabey rmabey@kmclaw.com
- Adelaide Maudsley amaudsley@kmclaw.com, tslaughter@kmclaw.com
- Steven J. McCardell smccardell@djplaw.com, khughes@djplaw.com
- Scott O. Mercer som@keslerrust.com
- Krikor J. Meshefejian kjm@lnbyb.com
- Elijah L. Milne emilne@djplaw.com, pbricker@djplaw.com
- Matt Munson matt@mamunsonlaw.com, chris@mamunsonlaw.com
- Sherilyn A. Olsen solsen@hollandhart.com, slclitdocket@hollandhart.com; intaketeam@hollandhart.com; cfries@hollandhart.com
- Ellen E Ostrow eeostrow@hollandhart.com, mkthurgood@hollandhart.com; intaketeam@hollandhart.com
- A.M. Cristina Perez Soto cperezsoto@jonesday.com
- Lester A. Perry lap@hooleking.com, apb@hooleking.com
- David L. Pinkston bankruptcy_dlp@scmlaw.com
- George W. Pratt gpratt@joneswaldo.com
- Adam H Reiser areiser@cohnekinghorn.com
- Walter A Romney war@clydesnow.com
- John H. Schanne schannej@pepperlaw.com, henrys@pepperlaw.com; molitorm@pepperlaw.com
- Chris L. Schmutz chrisschmutz.pc@gmail.com, hillaryschmutz@yahoo.com
- Jeremy C. Sink jsink@mbt-law.com
- Stephen Styler steve@stylerdaniels.com
- Richard C. Terry richard@tjblawyers.com, cbcecf@yahoo.com
- Jeff D. Tuttle jtuttle@swlaw.com, jpollard@swlaw.com;docket_slc@swlaw.com
- United States Trustee USTPRegion19.SK.ECF@usdoj.gov
- Jessica P Wilde jwilde@joneswaldo.com ;
- Mark W Williams mwilliams@shermanhoward.com, dfouts@shermanhoward.com; efiling@sah.com; bmcalister@shermanhoward.com
- Kim R. Wilson bankruptcy_krw@scmlaw.com
- Laura J. Wolff ljw@cjmlv.com
- Lee E. Woodard lwoodard@harrisbeach.com
- Beth Ann R. Young bry@Lnbyb.com
- P. Matthew x2Cox bankruptcy_pmc@scmlaw.com
- Gale K. x6Francis txbk13@utah.gov

_/s/_  David L. Pinkston
_____

# EXHIBIT A

# PARTIES AND COUNSEL

**Brahma Group, In**
*(Creditor)*

represented by

**Mona Lyman Burton**
Holland and Hart
222 S. Main Street
Suite 2200
Salt Lake City, UT 84101
(801) 799-5822
(801) 799-5700 (fax)
mburton@hollandhart.com
*Assigned: 07/18/16*

**Sherilyn A. Olsen**
Holland & Hart
222 S. Main Street
Suite 2200
Salt Lake City, UT 84101
(801) 799-5800
(801) 799-5700 (fax)
solsen@hollandhart.com
*Assigned: 06/07/16*

**Ellen E Ostrow**
Holland & Hart
222 South Main Street
Suite 2200
Salt Lake City, UT 84101
(801) 799-5981
(801) 799-5700 (fax)
eeostrow@hollandhart.com
*Assigned: 12/16/16*

**CS Mining, LLC** (Debtor in Possession)
P.O. Box 608

represented by

**Troy J. Aramburu**
Snell & Wilmer L.L.P.

Milford, UT 84751

15 West South Temple
Suite 1200
Salt Lake City, UT 84101
(801) 257-1900
(801) 257-1800 (fax)
taramburu@swlaw.com
*Assigned: 06/27/16*

**Joanna J. Cline**
Pepper Hamilton, LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19899-1709
302-777-6500
302-421-8390 (fax)
clinej@pepperlaw.com
*Assigned: 01/23/17*
*LEAD ATTORNEY*


**Donald J. Detweiler**
Pepper Hamilton, LLP
Hercules Plaza, Suite 5100
1313 North Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
302-777-6500
302-656-8865 (fax)
detweilerd@pepperlaw.com
*Assigned: 06/30/16*
*LEAD ATTORNEY*

**Francis J. Lawall**
Pepper Hamilton
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
(215)981-4000
(215)981-4750 (fax)
*Assigned: 06/30/16*
*LEAD ATTORNEY*

**David E. Leta**
Snell & Wilmer
15 West South Temple

Suite 1200
Salt Lake City, UT 84101-1547
(801) 257-1928
(801) 257-1800 (fax)
dleta@swlaw.com
*Assigned: 06/28/16*

**Jeff D. Tuttle**
Snell & Wilmer
15 West South Temple
Suite 1200
Salt Lake City, UT 84101
801-257-1800
jtuttle@swlaw.com
*Assigned: 06/28/16*

**Caterpillar Financial Services Corp.**
*Added: 08/08/2016*
*(Creditor)*

represented
by

**Michael R. Johnson**
Ray Quinney & Nebeker P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, UT 84145-0385
(801) 532-1500
(801) 532-7543 (fax)
mjohnson@rqn.com
*Assigned: 11/18/16*

**David H. Leigh**
Ray Quinney Nebeker P.C.
36 South State Street
Suite 1400
P.O. Box 45385
Salt Lake City, UT 84145-0385
801- 532-1500
801-532-7543 (fax)
dleigh@rqn.com
*Assigned: 08/08/16*

**DXS Capital (US) Limited**
*Added: 07/01/2016*
*(Creditor)*

represented
by

**Robert W. Hamilton**
Jones Day
325 John H. McConnell Blvd.
Suite 600

Columbus, OH 43215-2673
614-281-3848
614-461-4198 (fax)
rwhamilton@jonesday.com
*Assigned: 06/09/17*
*LEAD ATTORNEY*

**Paul C. Huck, Jr.**
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
305-714-9700
305-714-9799 (fax)
paulhuck@jonesday.com
*Assigned: 07/05/16*
*LEAD ATTORNEY*

**Pedro A. Jimenez**
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
305-714-9700
305-714-9799 (fax)
pjimenez@jonesday.com
*Assigned: 07/05/16*
*LEAD ATTORNEY*

**Ralph R. Mabey**
Kirton McConkie
50 East South Temple
Salt Lake City, UT 84111
(801) 239-3145
866-763-0412 (fax)
rmabey@kmclaw.com
*Assigned: 07/01/16*

**Adelaide Maudsley**
Kirton McConkie
50 East South Temple
Suite 400
Salt Lake City, UT 84111
801-321-4837
801-321-4893 (fax)
amaudsley@kmclaw.com
*Assigned: 07/01/16*

**A.M. Cristina Perez Soto**
Jones Day
600 Brickell Avenue
Suite 3300
Miami, FL 33131
305-714-9700
305-714-9799 (fax)
cperezsoto@jonesday.com
*Assigned: 04/12/17*
*LEAD ATTORNEY*

**David J. Richards, LLC dba Western US Mineral Investors**
*Added: 06/30/2016*
*(Creditor)*

represented by

**Keith A. Call**
Snow Christensen & Martineau
10 Exchange Place 11th Floor
Salt Lake City, UT 84111
801-322-9144
801-363-0400 (fax)
kcall@scmlaw.com
*Assigned: 06/30/17*

**P. Matthew Cox**
Snow Christensen & Martineau
10 Exchange Place, 11th Floor
P.O. Box 45000
Salt Lake City, UT 84145
(801)521-9000
(801) 363-0400 (fax)
bankruptcy_pmc@scmlaw.com
*Assigned: 06/30/16*

**David L. Pinkston**
Snow Christensen & Martineau
10 Exchange Place
Eleventh Floor
P.O. Box 45000
Salt Lake City, UT 84145
(801) 322-9180
(801) 363-0400 (fax)
bankruptcy_dlp@scmlaw.com
*Assigned: 06/30/16*

**Kim R. Wilson**
Snow Christensen & Martineau
10 Exchange Place 11th Floor
P.O. Box 45000
Salt Lake City, UT 84145
(801) 521-9000
(801) 363-0400 (fax)
bankruptcy_krw@scmlaw.com
*Assigned: 06/30/16*

**FTI Consulting, Inc.**
1001 17th St. #1100
Attn: David Beckman
Denver, CO 80202
*Added: 08/05/2016*
*(Other Prof.)*

**Komatsu Financial Limited Partnership**
*Added: 06/20/2016*
*(Creditor)*

represented by

**Michael R. Johnson**
Ray Quinney & Nebeker P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, UT 84145-0385
(801) 532-1500
(801) 532-7543 (fax)
mjohnson@rqn.com
*Assigned: 06/20/16*

**David H. Leigh**
Ray Quinney Nebeker P.C.
36 South State Street
Suite 1400
P.O. Box 45385
Salt Lake City, UT 84145-0385
801- 532-1500
801-532-7543 (fax)
dleigh@rqn.com
*Assigned: 06/20/16*
*LEAD ATTORNEY*

**Noble Americas Corp.**
*Added: 01/31/2017*
*(Creditor)*

represented
by

**James W. Anderson**
Clyde Snow & Sessions, P.C.
201 S Main Street #1300
Salt Lake City, UT 84111
801-322-2516
801-521-6280 (fax)
jwa@clydesnow.com
*Assigned: 01/31/17*

**Official Committee of Creditors**
**Holding Unsecured Claims**
*Added: 08/31/2016*
*(Creditor Committee)*

represented
by

**Martin J. Brill**
Levene, Neale, Bender, Yoo & Brill
L.L.P
10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067
310-229-1234
310-229-1244 (fax)
mjb@lnbyb.com
*Assigned: 08/31/16*

13

**Philip A. Gasteier**
Levene, Neale, Bender, Yoo & Brill
L.L,P
10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067
310-229-1234
310-229-1244 (fax)
pag@lnbyb.com
*Assigned: 09/07/16*
*LEAD ATTORNEY*

**George B. Hofmann**
Cohne Kinghorn PC
111 East Broadway
11th Floor
Salt Lake City, UT 84111
(801) 363-4300
(801) 363-4378 (fax)
ghofmann@cohnekinghorn.com
*Assigned: 09/07/16*
*LEAD ATTORNEY*


**Adam H Reiser**
Cohne Kinghorn PC
111 East Broadway
11th Floor
Salt Lake City, UT 84111
(801) 415-0157
(801) 363-4378 (fax)
areiser@cohnekinghorn.com
*Assigned: 09/23/16*

**PacNet Capital (US) Limited**
*Added: 07/01/2016*
*(Creditor)*

represented
by

**Robert W. Hamilton**
Jones Day
325 John H. McConnell Blvd.
Suite 600
Columbus, OH 43215-2673
614-281-3848
614-461-4198 (fax)
rwhamilton@jonesday.com
*Assigned: 06/09/17*
*LEAD ATTORNEY*

**Paul C. Huck, Jr.**
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
305-714-9700
305-714-9799 (fax)
paulhuck@jonesday.com
*Assigned: 07/05/16*
*LEAD ATTORNEY*

**Pedro A. Jimenez**
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
305-714-9700
305-714-9799 (fax)
pjimenez@jonesday.com
*Assigned: 07/05/16*
*LEAD ATTORNEY*

**Ralph R. Mabey**
Kirton McConkie
50 East South Temple
Salt Lake City, UT 84111
(801) 239-3145
866-763-0412 (fax)
rmabey@kmclaw.com
*Assigned: 07/01/16*

**Adelaide Maudsley**
Kirton McConkie
50 East South Temple
Suite 400
Salt Lake City, UT 84111

801-321-4837
801-321-4893 (fax)
amaudsley@kmclaw.com
*Assigned: 07/01/16*

**A.M. Cristina Perez Soto**
Jones Day
600 Brickell Avenue
Suite 3300
Miami, FL 33131
305-714-9700
305-714-9799 (fax)
cperezsoto@jonesday.com
*Assigned: 04/12/17*
*LEAD ATTORNEY*

**Tamra Mining Company, LLC**
*Added: 07/18/2017*
*(Interested Party)*

represented
by

**Robert W. Hamilton**
Jones Day
325 John H. McConnell Blvd.
Suite 600
Columbus, OH 43215-2673
614-281-3848
614-461-4198 (fax)
rwhamilton@jonesday.com
*Assigned: 07/18/17*
*LEAD ATTORNEY*

**Paul C. Huck, Jr.**
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
305-714-9700
305-714-9799 (fax)
paulhuck@jonesday.com
*Assigned: 07/18/17*
*LEAD ATTORNEY*

**Pedro A. Jimenez**
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
305-714-9700
305-714-9799 (fax)
pjimenez@jonesday.com

*Assigned: 07/18/17*
*LEAD ATTORNEY*

**Ralph R. Mabey**
Kirton McConkie
50 East South Temple
Salt Lake City, UT 84111
(801) 239-3145
866-763-0412 (fax)
rmabey@kmclaw.com
*Assigned: 07/18/17*

**Adelaide Maudsley**
Kirton McConkie
50 East South Temple
Suite 400
Salt Lake City, UT 84111
801-321-4837
801-321-4893 (fax)
amaudsley@kmclaw.com
*Assigned: 07/18/17*

**A.M. Cristina Perez Soto**
Jones Day
600 Brickell Avenue
Suite 3300
Miami, FL 33131
305-714-9700
305-714-9799 (fax)
cperezsoto@jonesday.com
*Assigned: 07/18/17*
*LEAD ATTORNEY*

**United States Trustee**
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111
USTPRegion19.SK.ECF@usdoj.gov
*Added: 06/02/2016*
*(U.S. Trustee)*

represented
by

**Laurie A. Cayton tr**
US Trustees Office
Ken Garff Building
405 South Main Street
Suite 300
Salt Lake City, UT 84111
801-524-3031
801-524-5628 (fax)
laurie.cayton@usdoj.gov
*Assigned: 06/03/16*

**Peter J. Kuhn tr**
US Trustees Office
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111
(801) 524-5734
(801) 524-5628 (fax)
Peter.J.Kuhn@usdoj.gov
*Assigned: 09/13/16*

**Utah Copper, LLC**
*Added: 07/18/2017*
*(Interested Party)*

represented
by

**Kenneth L. Cannon, II**
Durham Jones & Pinegar, P.C.
111 South Main Street, Suite 2400
P O Box 4050
Salt Lake City, UT 84110-4050
(801) 415-3000
(801) 415-3500 (fax)
kcannon@djplaw.com
*Assigned: 07/18/17*

**Steven J. McCardell**
Durham Jones & Pinegar
111 South Main Street, Suite 2400
P O Box 4050
Salt Lake City, UT 84110-4050
(801) 415-3000
(801) 415-3500 (fax)
smccardell@djplaw.com
*Assigned: 07/18/17*

**Waterloo Street Limited**
*Added: 09/16/2016*
*(Creditor)*

represented
by

**Robert W. Hamilton**
Jones Day
325 John H. McConnell Blvd.
Suite 600
Columbus, OH 43215-2673
614-281-3848
614-461-4198 (fax)
rwhamilton@jonesday.com
*Assigned: 06/09/17*
*LEAD ATTORNEY*

**Adelaide Maudsley**
Kirton McConkie
50 East South Temple
Suite 400
Salt Lake City, UT 84111
801-321-4837
801-321-4893 (fax)
amaudsley@kmclaw.com
*Assigned: 09/16/16*

**A.M. Cristina Perez Soto**
Jones Day
600 Brickell Avenue
Suite 3300
Miami, FL 33131
305-714-9700
305-714-9799 (fax)
cperezsoto@jonesday.com
*Assigned: 04/12/17*
*LEAD ATTORNEY*

**Wellington Financial Partners**
*Added: 09/02/2016*
*(Interested Party)*

represented
by

**Kenneth L. Cannon, II**
Durham Jones & Pinegar, P.C.
111 South Main Street, Suite 2400
P O Box 4050
Salt Lake City, UT 84110-4050
(801) 415-3000
(801) 415-3500 (fax)
kcannon@djplaw.com
*Assigned: 09/02/16*

**Steven J. McCardell**
Durham Jones & Pinegar
111 South Main Street, Suite 2400
P O Box 4050
Salt Lake City, UT 84110-4050
(801) 415-3000
(801) 415-3500 (fax)
smccardell@djplaw.com
*Assigned: 09/02/16*

# EXHIBIT B

**This order is SIGNED.**





**Dated: July 28, 2017**

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

*uae*

_Proposed Order Prepared and Submitted By_:

Ralph R. Mabey (#2036)
Adelaide Maudsley (#8791)
**KIRTON McCONKIE P.C.**
50 East South Temple, Suite 400
Salt Lake City, UT 84111
Telephone: 801-328-3600
Facsimile: 801-212-2013
Email: rmabey@kmclaw.com
    amaudsley@kmclaw.com

Pedro A. Jimenez (admitted *pro hac vice*)
Robert W. Hamilton (admitted *pro hac vice*)
Paul Huck, Jr. (admitted *pro hac vice*)
Cristina Pérez Soto (admitted *pro hac vice*)
**JONES DAY**
600 Brickell Avenue
Brickell World Plaza, Suite 3300
Miami, FL 33131
Telephone: 305-714-9700
Facsimile: 305-714-9799
Email: pjimenez@jonesday.com
    rwhamilton@jonesday.com
    paulhuck@jonesday.com
    cperezsoto@jonesday.com

*Counsel for Tamra Mining Company, Waterloo Street Limited, PacNet Capital (U.S.) Limited and DXS Capital (U.S.) Limited*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| In re CS MINING, LLC,<br><br>    Debtor. | Bankruptcy Case No. 16-24818<br><br>Chapter 11<br><br>Judge William T. Thurman |
| --- | --- |

**ORDER DENYING MOTION PURSUANT TO
FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019
TO APPROVE SETTLEMENT BY AND BETWEEN CS MINING, LLC AND
DAVID J. RICHARDS, LLC DBA WESTERN US MINERAL INVESTORS, LLC**

The "Motion Pursuant To Federal Rule of Bankruptcy Procedure 9019 to Approve Settlement Agreement by and between CS Mining, LLC and David J. Richards, LLC dba Western US Mineral Investors, LLC" (Docket No. 664) (the "WUMI Settlement Motion") having come before the Court for evidentiary hearing on July 21, 2017 (the "Hearing"); and at the Hearing, Donald J. Detweiler, Francis J. Lawall, Joanna J. Cline, Jeff Tuttle, and Troy Aramburu having appeared on behalf of the Debtor; Ralph R. Mabey, Adelaide Maudsley, Pedro A. Jimenez, Robert W. Hamilton, and Cristina Pérez Soto having appeared on behalf of Waterloo Street Limited, Tamra Mining Company, LLC, PacNet Capital (U.S.) Limited, and DXS Capital (U.S.) Limited; Martin J. Brill and Philip A. Gasteier (telephonically) having appeared on behalf of the Unsecured Creditors' Committee; David L. Pinkston and P. Matthew Cox having appeared on behalf of David J. Richards, LLC d/b/a Western US Mineral Investors, LLC; James W. Anderson and Walter A. Romney, Jr. having appeared on behalf of Noble Americas Corp.; Mona L. Burton appeared on behalf of Brahma Group, Inc.; David H. Leigh having appeared on behalf of Caterpillar Financial Services Corporation and Komatsu Financial Limited Partnership; Kenneth L. Cannon having appeared on behalf of Wellington Financing Partners, LLC, St. Cloud Capital Partners II, Broadbill Partners, L.P., and Oxbow Carbon LLC; Steve Alder having appeared on behalf of the State of Utah Division of Oil, Gas and Mining; Vincent Cameron having appeared on behalf of the Office of the United States Trustee; and any other appearances or telephonic participants having been noted on the record; and the Court having taken the matter under advisement and having issued its "Memorandum Decision Denying Motion to Approve

2

4829-8310-5612.v2

Case 16-24818   Doc 937   Filed 09/20/17   Entered 09/20/17 23:44:24   Desc Main
Document      Page 3 of 10

Settlement" (Docket No. 793) (the "<u>Decision</u>") on July 27, 2017; and incorporating herein by reference the findings of fact and conclusions of law set forth in the Decision; and for good cause appearing,

IT IS HEREBY ORDERED THAT:

1.      The WUMI Settlement Motion is DENIED.

-----------------------------------------------------------------------------------------------------------------

END OF ORDER

4829-8310-5612.v2

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing Order shall be made to the following parties in the manner designated below:

## BY CM/ECF ELECTRONIC SERVICE:

The undersigned certifies that the parties of record in this case are identified below, are registered users of CM/ECF system, and are to receive notice of the foregoing order through the CM/ECF system.

- James W. Anderson    jwa@clydesnow.com, jritchie@clydesnow.com
- Troy J. Aramburu    taramburu@swlaw.com, nharward@swlaw.com;docket_slc@swlaw.com
- Darwin H. Bingham    dbingham@scalleyreading.net, cat@scalleyreading.net
- Stephen T. Bobo    sbobo@reedsmith.com
- Kyle A. Brannon    kbrannon@nexsenpruet.com
- Scott S Bridge    sbridge@keslerrust.com
- Martin J. Brill    mjb@lnbyb.com
- Mona Lyman Burton    mburton@hollandhart.com, intaketeam@hollandhart.com;slclitdocket@hollandhart.com;lcpaul@hollandhart.com
- Keith A. Call    kcall@scmlaw.com
- Kenneth L. Cannon    kcannon@djplaw.com, khughes@djplaw.com
- Laurie A. Cayton tr    laurie.cayton@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Patricia W. Christensen    pchristensen@parrbrown.com
- Christopher B. Chuff    chuffc@pepperlaw.com
- Joanna J. Cline    clinej@pepperlaw.com
- Joseph M.R. Covey    calendar@parrbrown.com
- P. Matthew Cox    bankruptcy_pmc@scmlaw.com
- Robert T. Denny    rtd@scmlaw.com, ajm@scmlaw.com
- Timothy D. Ducar    tducar@azlawyers.com, orders@azlawyers.com
- Victoria B. Finlinson    vbf@clydesnow.com
- Philip A. Gasteier    pag@lnbyb.com
- Christopher Grivakes    cg@agzlaw.com
- Robert W. Hamilton    rwhamilton@jonesday.com
- M. Darin Hammond    dhammond@smithknowles.com, astevenson@smithknowles.com
- George B. Hofmann    ghofmann@cohnekinghorn.com, dhaney@cohnekinghorn.com;jthorsen@cohnekinghorn.com
- Paul C. Huck    paulhuck@jonesday.com

4829-8310-5612.v2

- David W. Hunter    davidh@fisherhunterlaw.com
- Evan L. James    elj@cjmlv.com, kbc@cjmlv.com;ljw@cjmlv.com
- Pedro A. Jimenez    pjimenez@jonesday.com
- Michael R. Johnson    mjohnson@rqn.com, docket@rqn.com;dburton@rqn.com
- Peter J. Kuhn tr    Peter.J.Kuhn@usdoj.gov,
  James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Brian R. Langford    brian@mhmlawoffices.com, brian@mhmlawoffice.com
- David H. Leigh    dleigh@rqn.com, dburton@rqn.com;docket@rqn.com
- David E. Leta    dleta@swlaw.com, wkalawaia@swlaw.com;csmart@swlaw.com
- Andrew C. Lillie    andrew.lillie@hoganlovells.com
- Jessica Black Livingston    jessica.livingston@hoganlovells.com
- Ralph R. Mabey    rmabey@kmclaw.com
- Adelaide Maudsley    amaudsley@kmclaw.com, tslaughter@kmclaw.com
- Steven J. McCardell    smccardell@djplaw.com, khughes@djplaw.com
- Scott O. Mercer    som@keslerrust.com
- Krikor J. Meshefejian    kjm@lnbyb.com
- Elijah L. Milne    emilne@djplaw.com, pbricker@djplaw.com
- Matt Munson    matt@mamunsonlaw.com, chris@mamunsonlaw.com
- Sherilyn A. Olsen    solsen@hollandhart.com,
  slclitdocket@hollandhart.com;intaketeam@hollandhart.com;cfries@hollandhart.com
- Ellen E Ostrow    eeostrow@hollandhart.com,
  mkthurgood@hollandhart.com;intaketeam@hollandhart.com
- A.M. Cristina Perez Soto    cperezsoto@jonesday.com
- Lester A. Perry    lap@hooleking.com, apb@hooleking.com
- David L. Pinkston    bankruptcy_dlp@scmlaw.com
- George W. Pratt    gpratt@joneswaldo.com
- Adam H Reiser    areiser@cohnekinghorn.com
- Walter A Romney    war@clydesnow.com
- John H. Schanne    schannej@pepperlaw.com,
  henrys@pepperlaw.com;molitorm@pepperlaw.com
- Chris L. Schmutz    chrisschmutz.pc@gmail.com, hillaryschmutz@yahoo.com
- Jeremy C. Sink    jsink@mbt-law.com
- Stephen Styler    steve@stylerdaniels.com
- Richard C. Terry    richard@tjblawyers.com, cbcecf@yahoo.com
- Jeff D. Tuttle    jtuttle@swlaw.com, jpollard@swlaw.com;docket_slc@swlaw.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Jessica P Wilde    jwilde@joneswaldo.com
- Mark W Williams    mwilliams@shermanhoward.com,
  dfouts@shermanhoward.com;efiling@sah.com;bmcalister@shermanhoward.com

4829-8310-5612.v2

- Kim R. Wilson     bankruptcy_krw@scmlaw.com
- Laura J. Wolff    ljw@cjmlv.com
- Lee E. Woodard    lwoodard@harrisbeach.com
- Beth Ann R. Young    bry@Lnbyb.com
- P. Matthew x2Cox     bankruptcy_pmc@scmlaw.com
- Gale K. x6Francis    txbk13@utah.gov

## BY US MAIL:

The undersigned further certifies the following are to receive a copy of the foregoing Order by first class US Mail, postage prepaid.

Donald J. Detweiler
Pepper Hamilton, LLP
Hercules Plaza, Suite 5100
1313 North Market Street, P.O. Box 1709
Wilmington, DE 19899-1709

Epiq Bankruptcy Solutions, LLC
777 Third Ave, 12th Floor
New York, NY 10017

FTI Consulting, Inc.
1001 17th St. #1100
Attn: David Beckman
Denver, CO 80202

Francis J. Lawall
Pepper Hamilton
3000 Two Logan Square, Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

4829-8310-5612.v2

Levene, Neale, Bender, Yoo & Brill L.L.P.
10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067


_____/s/ Adelaide Maudsley_____

7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 28, 2017, the foregoing document was filed

with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system

and was electronically served by CM/ECF to each of the following counsel of record:

- James W. Anderson    jwa@clydesnow.com, jritchie@clydesnow.com
- Troy J. Aramburu    taramburu@swlaw.com,
  nharward@swlaw.com;docket_slc@swlaw.com
- Darwin H. Bingham    dbingham@scalleyreading.net, cat@scalleyreading.net
- Stephen T. Bobo    sbobo@reedsmith.com
- Kyle A. Brannon    kbrannon@nexsenpruet.com
- Scott S Bridge    sbridge@keslerrust.com
- Martin J. Brill    mjb@lnbyb.com
- Mona Lyman Burton    mburton@hollandhart.com,
  intaketeam@hollandhart.com;slclitdocket@hollandhart.com;lcpaul@hollandhart.com
- Keith A. Call    kcall@scmlaw.com
- Kenneth L. Cannon    kcannon@djplaw.com, khughes@djplaw.com
- Laurie A. Cayton tr    laurie.cayton@usdoj.gov,
  James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Patricia W. Christensen    pchristensen@parrbrown.com
- Christopher B. Chuff    chuffc@pepperlaw.com
- Joanna J. Cline    clinej@pepperlaw.com
- Joseph M.R. Covey    calendar@parrbrown.com
- P. Matthew Cox    bankruptcy_pmc@scmlaw.com
- Robert T. Denny    rtd@scmlaw.com, ajm@scmlaw.com
- Timothy D. Ducar    tducar@azlawyers.com, orders@azlawyers.com
- Victoria B. Finlinson    vbf@clydesnow.com
- Philip A. Gasteier    pag@lnbyb.com
- Christopher Grivakes    cg@azlaw.com
- Robert W. Hamilton    rwhamilton@jonesday.com
- M. Darin Hammond    dhammond@smithknowles.com, astevenson@smithknowles.com
- George B. Hofmann    ghofmann@cohnekinghorn.com,
  dhaney@cohnekinghorn.com;jthorsen@cohnekinghorn.com
- Paul C. Huck    paulhuck@jonesday.com
- David W. Hunter    davidh@fisherhunterlaw.com
- Evan L. James    elj@cjmlv.com, kbc@cjmlv.com;ljw@cjmlv.com

4829-8310-5612.v2

- Pedro A. Jimenez    pjimenez@jonesday.com
- Michael R. Johnson    mjohnson@rqn.com, docket@rqn.com;dburton@rqn.com
- Peter J. Kuhn tr    Peter.J.Kuhn@usdoj.gov,
  James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Brian R. Langford    brian@mhmlawoffices.com, brian@mhmlawoffice.com
- David H. Leigh    dleigh@rqn.com, dburton@rqn.com;docket@rqn.com
- David E. Leta    dleta@swlaw.com, wkalawaia@swlaw.com;csmart@swlaw.com
- Andrew C. Lillie    andrew.lillie@hoganlovells.com
- Jessica Black Livingston    jessica.livingston@hoganlovells.com
- Ralph R. Mabey    rmabey@kmclaw.com
- Adelaide Maudsley    amaudsley@kmclaw.com, tslaughter@kmclaw.com
- Steven J. McCardell    smccardell@djplaw.com, khughes@djplaw.com
- Scott O. Mercer    som@keslerrust.com
- Krikor J. Meshefejian    kjm@lnbyb.com
- Elijah L. Milne    emilne@djplaw.com, pbricker@djplaw.com
- Matt Munson    matt@mamunsonlaw.com, chris@mamunsonlaw.com
- Sherilyn A. Olsen    solsen@hollandhart.com,
  slclitdocket@hollandhart.com;intaketeam@hollandhart.com;cfries@hollandhart.com
- Ellen E Ostrow    eeostrow@hollandhart.com,
  mkthurgood@hollandhart.com;intaketeam@hollandhart.com
- A.M. Cristina Perez Soto    cperezsoto@jonesday.com
- Lester A. Perry    lap@hooleking.com, apb@hooleking.com
- David L. Pinkston    bankruptcy_dlp@scmlaw.com
- George W. Pratt    gpratt@joneswaldo.com
- Adam H Reiser    areiser@cohnekinghorn.com
- Walter A Romney    war@clydesnow.com
- John H. Schanne    schannej@pepperlaw.com,
  henrys@pepperlaw.com;molitorm@pepperlaw.com
- Chris L. Schmutz    chrisschmutz.pc@gmail.com, hillaryschmutz@yahoo.com
- Jeremy C. Sink    jsink@mbt-law.com
- Stephen Styler    steve@stylerdaniels.com
- Richard C. Terry    richard@tjblawyers.com, cbcecf@yahoo.com
- Jeff D. Tuttle    jtuttle@swlaw.com, jpollard@swlaw.com;docket_slc@swlaw.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Jessica P Wilde    jwilde@joneswaldo.com
- Mark W Williams    mwilliams@shermanhoward.com,
  dfouts@shermanhoward.com;efiling@sah.com;bmcalister@shermanhoward.com
- Kim R. Wilson    bankruptcy_krw@scmlaw.com
- Laura J. Wolff    ljw@cjmlv.com

- Lee E. Woodard   lwoodard@harrisbeach.com
- Beth Ann R. Young   bry@Lnbyb.com
- P. Matthew x2Cox   bankruptcy_pmc@scmlaw.com
- Gale K. x6Francis   txbk13@utah.gov

And by first class US Mail, postage prepaid, on July 28, 2017, to the following parties:

Donald J. Detweiler
Pepper Hamilton, LLP
Hercules Plaza, Suite 5100
1313 North Market Street, P.O. Box 1709
Wilmington, DE 19899-1709

Epiq Bankruptcy Solutions, LLC
777 Third Ave, 12th Floor
New York, NY 10017

FTI Consulting, Inc.
1001 17th St. #1100
Attn: David Beckman
Denver, CO 80202

Francis J. Lawall
Pepper Hamilton
3000 Two Logan Square, Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

Levene, Neale, Bender, Yoo & Brill L.L.P.
10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067

_____ */s/ Torri Slaughter, Legal Assistant_

4829-8310-5612.v2

**This order is SIGNED.**



**Dated: July 27, 2017**



**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

*uae*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IN RE: CS MINING, LLC, | Bankruptcy No. 16-24818 |
| Debtor. | Chapter 11 |
| | Hon. William T. Thurman |

**MEMORANDUM DECISION DENYING MOTION TO APPROVE SETTLEMENT**

The matter before the Court is the *Motion Pursuant to Federal Rule Of Bankruptcy Procedure 9019 to Approve Settlement Agreement By and Between CS Mining, LLC and David J. Richards, LLC d/b/a Western US Mineral Investors, LLC* (the "WUMI Motion") filed by the Debtor and debtor-in-possession, CS Mining, LLC (the "Debtor" or "CSM").[1]

Through the WUMI Motion, the Debtor seeks approval of a settlement proposal[2] and settlement agreement[3] (the "WUMI Settlement Agreement" or "WUMI Settlement") by and

---

[1] Case No. 16-24818, Docket. No. 664. All references to the Docket ("Dkt.") will be to the main bankruptcy case, which is Case No. 16-24818, unless otherwise specified. *See also* Debtor Exhibit ("Dtr. Ex.") 3, Confidential Settlement Proposal to Western US Mineral Investors, LLC; Dtr. Ex. 4, Settlement Agreement By and Between CS Mining, LLC and David J. Richards DBA Western US Mineral Investors, LLC; Dtr. Ex. 6, Copy of Docket #664.

[2] Debtor Exhibit ("Dtr. Ex") 3, Confidential Settlement Proposal to Western US Mineral Investors, LLC.

[3] Dtr. Ex. 4, Settlement Agreement By and Between CS Mining, LLC and David J. Richards dba Western US Mineral Investors, LLC.

1

between the Debtor and David J. Richards, LLC *d/b/a* Western US Mineral Investors, LLC, an

Ohio limited liability Company ("WUMI" and together with the Debtor, the "Parties").

The Court received and thoroughly reviewed the responses to the WUMI Motion filed by

the Official Committee of Creditors Holding Unsecured Claims (the "UCC");[4] Caterpillar

Financial Services Corporation ("Caterpillar") and Komatsu Financial Limited Partnership

("Komatsu");[5] Brahma Group, Inc. ("Brahma");[6] Noble Americas Corp. ("Noble");[7] and

Waterloo Street Limited, a British Virgin Islands Company ("Waterloo") and DXS Capital

(U.S.) Limited ("DXS") (the "Waterloo Objection").[8] The Court also received and thoroughly

reviewed Debtor's reply to the Waterloo Objection[9] and WUMI's memorandum in support of the

WUMI Motion.[10]

On July 21, 2017, the Court conducted an evidentiary hearing on the WUMI Motion (the

"Hearing"). At the Hearing, Donald J. Detweiler, Francis J. Lawall, Joanna J. Cline, Jeff Tuttle,

and Troy Aramburu appeared on behalf of the Debtor; Ralph R. Mabey, Adelaide Maudsley,

Pedro A. Jimenez, Robert W. Hamilton, and Cristina Pérez Soto appeared on behalf of Waterloo,

DXS, Tamra Mining Company, LLC, a Delaware limited liability company ("Tamra"), and

PacNet Capital (US) Limited, a Delaware limited liability company ("PacNet" and together with

Waterloo and DXS are referred to collectively, as the "Waterloo Parties" or "Waterloo"); Martin

J. Brill and Philip A. Gasteier appeared on behalf of the UCC; David L. Pinkston and P. Matthew

Cox appeared on behalf of WUMI; James W. Anderson and Walter A. Romney, Jr. appeared on

---

[4] Dkt. No. 683.
[5] Dkt. No. 684.
[6] Dkt. No. 687.
[7] Dkt. No. 688.
[8] Dkt. No. 691.
[9] Dkt. No. 704.
[10] Dkt. No. 705.

behalf of Noble; Mona L. Burton appeared on behalf of Brahma; Kenneth L. Cannon appeared

on behalf of Wellington Financing Partners, LLC ("Wellington"), St. Cloud Capital Partners II,

L.P. ("St. Cloud"), Broadbill Partners, L.P., ("Broadbill") and Oxbow Carbon LLC ("Oxbow"

and together with Wellington, St. Cloud and Broadbill, the "DIP Lenders"); David H. Leigh

appeared on behalf of Caterpillar and Komatsu; Steve Alder appeared on behalf of the State of

Utah Division of Oil, Gas and Mining; Vincent Cameron appeared on behalf of the Office of The

United States Trustee; and any other appearances were noted on the record.

At the Hearing, the Debtor orally withdrew its *Motion Pursuant to Federal Rule Of

Bankruptcy Procedure 9019 to Approve Settlement Agreement By and Between CS Mining, LLC

and Waterloo Street Limited*,[11] *amended by*,[12] (the "Waterloo Motion"), which was also set for

consideration at the Hearing. Through the Waterloo Motion, the Debtor sought approval of a

settlement agreement (the "Waterloo Settlement Agreement") by and between the Debtor, on one

hand, and the Waterloo Parties and Tamra on the other hand, which related to an Asset Purchase

Agreement (the "Tamra APA") by and among the Debtor and Tamra. Although withdrawn, the

Debtor's consideration of the Waterloo Motion and Tamra APA is relevant to the WUMI

Motion, as discussed further herein.

The Court has considered the relevant pleadings filed in connection with the WUMI

Motion, the arguments of the parties, testimony of witnesses, evidence presented at the Hearing,

and the Court has conducted an independent review of the applicable law. In addition, the Court

takes notice of the docket in this case, as of the date of the Hearing. After the Hearing, the Court

took the matter under advisement. The Court issues this Memorandum Decision, making its

---

[11] Dkt. No. 717.
[12] Dkt. No. 732. *See also* Waterloo Ex. RR, Motion to Approve Settlement, Dkt. 717;
Waterloo Ex. SS, Notice of Amended Motion to Approve Settlement, Dkt. 732.

findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure ("FRCP")

52(a) and Federal Rule of Bankruptcy Procedure ("FRBP" or "Rule") 7052.[13]

The Waterloo Parties argue that the WUMI Motion should be denied because the WUMI

Settlement Agreement lacks good faith, benefits insiders, abridges Waterloo's rights to be heard

on its claims against WUMI, and was not properly approved by the Debtor's board of managers.

The Debtor and WUMI assert that the WUMI Settlement Agreement meets the *Kopexa*

standards, is a result of good faith and fair dealings, and will facilitate any upcoming sale of the

Debtor's assets. The Court agrees with the Waterloo Parties, in part. For the reasons that follow,

the Court denies the WUMI Motion.

## I.    JURISDICTION, VENUE AND STATUTORY PREDICATES

This Court has jurisdiction over the WUMI Motion pursuant to 28 U.S.C. §§ 157(b)(2)

and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is core pursuant

to 28 U.S.C. § 157(b)(2)(O). The statutory bases for the relief requested by the WUMI Motion

are 11 U.S.C. § 105, Federal Rule of Bankruptcy Procedure 9019 and Local Rule 9019-1.[14]

## II.   BACKGROUND

This Memorandum Decision is detailed, but necessarily so, in the Court's opinion. The

WUMI Motion brings to the forefront the dynamics of corporate authority, alleged insider

dealings, the competing interests of various secured creditors vying for limited resources, claims

amongst the secured creditors as to priority, recharacterization, equitable subordination, and the

---

[13] The Court's findings and conclusions are made for the limited purpose of ruling on the
WUMI Motion. Any of the findings of fact herein are deemed, to the extent appropriate, to be
conclusions of law, and any conclusions of law are similarly deemed, to the extent appropriate,
to be findings of fact, and they shall be equally binding as both.

[14] All subsequent statutory references are to title 11 of the United States Code (11 U.S.C.
§§ 101 *et seq.* as amended, the "Code" or "Bankruptcy Code") unless otherwise indicated.

interpretation of the law of the case. A review the history of the case from the outset and how the

Debtor got here is necessary to give the ruling the proper context.

### A. CSM's Corporate Structure

A brief overview of the Debtor's corporate structure and relevant parties thereto is

important as it relates to the WUMI Motion.

The Debtor is a limited liability company organized on June 20, 2011, and existing under

the laws of the State of Delaware. Three members, all of whom are parties to a limited liability

company agreement (the "CSM Operating Agreement") own the Debtor.[15] Those members

include: (i) Skye Mineral Partners, LLC ("SMP"); (ii) Robert Reynolds, as representative of

certain former first lien lenders; and (iii) Copper King Mining Corporation ("Copper King").

SMP is the majority-controlling member of the Debtor, owning approximately 99.25% of the

overall units of the Debtor. Copper King owns approximately 0.13% of the overall units of the

Debtor, and Robert Reynolds represents 0.62% of the overall units of the Debtor.

SMP is owned by DXS; PacNet; Skye Mineral Investors, LLC ("SMI"); and Clarity

Copper, LLC ("Clarity Copper").

### B. CSM Board

Prior to June 1, 2017, the Debtor's board of managers (the "Board") consisted of three

people: (1) Marshall Cooper ("Cooper"), the DXS and PacNet designee; (2) Clinton Walker

("Walker"), the designee of Clarity Copper; and (3) David J. Richards ("Richards"), the designee

of SMI. Additional members on the Board were appointed after June 1, 2017. Clarity Copper

appointed John Bryan, SMI appointed Sturges Karban, and DXS and PacNet appointed Thomas

K. Reilly.

---

[15] Dtr. Ex. 1, Limited Liability Company Agreement of CS Mining, LLC.

### C.  Brief Overview of CSM's Lending Structure

The Court will briefly discuss the Debtor's lending structure, as it is relevant to the WUMI Settlement Agreement and disputes amongst the Board managers. The Debtor has three primary pre-petition secured lenders: SMP, WUMI and Noble/Waterloo.

#### 1)        The SMP Loan

On November 10, 2011, CSM, as borrower, and SMP, as lender, entered into a loan modification agreement (the "SMP Loan"). In connection with the SMP Loan, SMP was granted a security interest in all of the Debtor's assets. In its schedules, the Debtor lists an obligation to SMP in a disputed amount of $27,309,249.78 and an undetermined collateral value.[16]

#### 2)        The WUMI Loan

On August 10, 2012, CSM, as borrower, and WUMI, as lender, entered into a loan and security agreement (the "WUMI Loan"). The WUMI Loan gave WUMI a senior-lien on substantially all of the Debtor's assets. On August 10, 2012, CSM and SMP entered into a debt subordination agreement in favor of WUMI (the "SMP Subordination Agreement"). Per the SMP Subordination Agreement, SMP agreed to subordinate its debt and lien to WUMI's debt and lien under the WUMI Loan.

In its schedules, the Debtor lists an obligation to WUMI in a disputed amount of $24,407,274.00 and an undetermined collateral value.[17] In connection with its pre-petition loan, on February 15, 2017, WUMI filed proof of claim no. 61-1 in this case (the "WUMI Claim"). Pursuant to the WUMI Claim, WUMI asserts a secured claim in the amount of $24,926,036.00 against Debtor's bankruptcy estate.

---

[16] Dkt No. 231, Debtor's Schedule D at 62.
[17] Dkt No. 231, Debtor's Schedule D at 62.

6

### a)  WUMI Managers and Members

Richards is the founder of WUMI. WUMI was previously managed by three individuals: Robert Lautz ("Lautz"), controlling three manger positions; and Richards and Walker, each controlling one manager position. Lautz represents WUMI majority member St. Cloud and Walker represents WUMI minority member Clarity Copper. Richards represented WUMI minority member David Richards, LLC ("Richards, LLC"),[18] Richards and Walker resigned as WUMI board members on May 26, 2016, and July 27, 2016, respectively. Richards, LLC also divested its equity interest in WUMI. Clarity Copper still has an ownership interest in WUMI.

Richards and Walker are both on the boards of the Debtor and SMP (Debtor's holding company). Richards and Walker control SMP members SMI and Clarity Copper, respectively. Finally, Richards and Walker previously controlled WUMI, Richards had an interest in WUMI, and Walker currently has an ownership interest and economic stake in WUMI, through Clarity Copper.

### 3)  The Noble/Waterloo Loan

On August 12, 2014, CSM, as borrower, and Noble, as lender, entered into a loan and security agreement, later purchased by Waterloo on December 31, 2015 (the "Noble/Waterloo Loan"). In its schedules, the Debtor lists an obligation to Waterloo in a disputed amount of $34,755,133.23 and an undetermined collateral value.[19] Waterloo asserts a secured claim against Debtor's estate in the amount of $38,342,342.00 (the "Waterloo Claim").[20]

---

[18] WUMI Ex. A, First Amended Limited Liability Company Agreement of David J. Richards, LLC.

[19] Dkt No. 231, Debtor's Schedule D at 62.

[20] The Waterloo Claim is not filed with the Court but referred to obliquely by the Debtor and Waterloo as "Claim No. 20007". *See* Dkt. No. 717, 733.

7

4)      **The Intercreditor Agreement Between CSM, Noble/Waterloo and WUMI**

On August 12, 2014, CSM, WUMI and Noble entered into an agreement (the "Intercreditor Agreement").[21] Pursuant to the Intercreditor Agreement, *inter alia*, WUMI allegedly agreed to subordinate portions of its liens it held against CSM to Noble's lien while retaining its senior-lien on other assets. The Intercreditor Agreement also required WUMI to convert its debt into equity in SMP once Noble advanced CSM $30,000,000.00 and there were no defaults under the Noble/Waterloo Loan (the "Mandatory Conversion Clause").[22] In addition, per the Intercreditor Agreement, SMP agreed to further subordinate its debt and lien under the SMP Loan to Noble's debt and lien under the Noble/Waterloo Loan.

5)      **The 10th Amendment Between CSM and WUMI**

On March 10, 2015, CSM and WUMI entered into an agreement whereby, *inter alia*, CSM was allegedly required to notify WUMI to gain its consent before drawing down more than $29,750,000.00 of the Noble/Waterloo Loan (the "10th Amendment").[23] On February 3, 2016, CSM drew down all amounts under the Noble/Waterloo Loan. Thereafter, Waterloo requested that WUMI comply with the Mandatory Conversion Clause. WUMI notified Waterloo that CSM was purportedly in default under the Noble/Waterloo Loan. On February 4, 2016, Waterloo waived any existing defaults by CSM under the Noble/Waterloo Loan.

Waterloo alleges that Richards and Walker entered into the 10th Amendment on behalf of CSM and WUMI so WUMI could avoid the Mandatory Conversion Clause. WUMI asserts the 10th Amendment was entered into in good faith. WUMI also believes it was not required to

---

[21] Waterloo Ex. S, Intercreditor Agreement. When Waterloo purchased the Noble Loan, it also purchased Noble's rights under the Intercreditor Agreement.

[22] *Id.* at 4.

[23] WUMI Ex. B, 10th Amendment to Loan and Security Agreement.

8

convert its debt to equity because CSM was purportedly in default under the Noble/Waterloo Loan.

### 6)    Organizational Chart

The following organizational chart is helpful in understanding the Debtor's corporate structure, board members, secured lenders and their relations to each other, the WUMI Settlement Agreement, and any upcoming sale of all or substantially all of the Debtor's assets. The chart, prepared by the Court, is included for illustrative purposes only.



## D.  Adversary Proceedings Relating to the WUMI Claim

During the pendency of this case, several adversary proceedings have been filed that relate to the WUMI Claim and the pre-petition lending arrangements of the Debtor, WUMI and

9

Waterloo. The adversary proceedings and claims alleged thereunder are relevant herein because

through the WUMI Settlement Agreement, the Debtor seeks to settle the disputed WUMI Claim.

### 1)        Clarity Copper v. Waterloo

On July 1, 2016, the complaint filed by plaintiffs Clarity Copper and SMI against

defendants PacNet, DXS, Sanjiv Noronha, Copper, Waterloo and Noble was removed to this

Court (Clarity Copper v. Waterloo).[24] This matter arises in connection with the Intercreditor

Agreement. The Noble/Waterloo Loan and related agreements were allegedly violated when it

was purchased by Waterloo. Plaintiffs in Clarity Copper v. Waterloo contend that the

Noble/Waterloo Loan purchase was a corporate opportunity, which defendants herein conspired

with Noble to take for themselves with the ultimate goal of triggering the Mandatory Conversion

Clause.

### 2)        Waterloo v. WUMI

On July 21, 2016, Waterloo and PacNet filed a complaint against WUMI ("Waterloo v.

WUMI Adversary").[25] The Waterloo v. WUMI Adversary arises from WUMI's alleged breach

of the Intercreditor Agreement. Waterloo seeks to disallow the WUMI Claim in full on grounds

of equitable subordination, recharacterization, and tortious interference. WUMI has filed a

counter-claim against Waterloo and PacNet.

### 3)        Debtor v. WUMI

On February 17, 2017, the Debtor filed a complaint against WUMI (the "WUMI

---

[24] Adv. P. No. 16-02114, Notice of Removal by Defendant, *Clarity Copper, LLC; Skye Mineral Investors, LLC v. PacNet Capital (US) Limited; DXS Capital (US) Limited; Sanjiv Noronha; Marshall Cooper; Waterloo Street Limited; Noble Americas Corp.*
[25] Adv. P. No. 16-02118, *PacNet Capital (US) Limited and Waterloo Street Limited v. David Richards, LLC, Western US Mineral Investors, Skye Mineral Investors, LLC, David J. Richards, Clarity Copper, LLC, Clinton C. Walker, and David C. McMullin.*

Adversary").[26] The complaint in the WUMI Adversary challenges the nature, extent, validity and priority of the WUMI Claim. The Debtor also seeks certain affirmative recoveries.

### 4)    Debtor v. Waterloo

On February 17, 2017, the Debtor filed a complaint against Noble and Waterloo (the "Waterloo Adversary Proceeding").[27] The Debtor seeks to disallow, recharacterize, and/or subordinate the Waterloo Claim. The Debtor also asserts the Waterloo Claim should be disallowed or subordinated because the claim stems from insider transactions and inequitable conduct.

### E.  Waterloo Objection to WUMI Claim

On May 22, 2017, Waterloo and PacNet filed an objection to the WUMI Claim pursuant to § 502(a) and Rule 3007 (the "Waterloo Claim Objection").[28] The Waterloo Claim Objection challenges the extent, validity, and priority of the WUMI Claim on the same grounds asserted in the Waterloo v. WUMI Adversary.

### F.  Factual Background Leading to WUMI Motion

Headquartered in Milford, Beaver County, Utah, the Debtor is in the business of mining and processing copper and other metals and materials. An involuntary petition was filed against the Debtor on June 2, 2016.[29] On August 4, 2016, the Court entered an Order for Relief, against the Debtor.[30] The Debtor continues to operate and manage its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108.

---

[26] Adv. P. No. 17-02024, *CS Mining, LLC v. David J. Richards, LLC d/b/a Western US Minerals, Inc.*
[27] Adv. P. No. 17-02025, *CS Mining, LLC v. Noble Americas Corp.; Waterloo Street Limited.*
[28] Dkt. No. 637.
[29] Dkt No. 1.
[30] Dkt. No. 130.

11

On May 15, 2017, the Debtor filed its first motion to approve a settlement agreement with WUMI (the "First WUMI Motion").[31] In connection with the First WUMI Motion, the Debtor also filed a motion to stay all litigation in the WUMI Adversary and the Court entered an order on the same.[32] On May 22, 2017, the Debtor withdrew the First WUMI Motion because it lacked the Board's approval.[33] The Debtor continued to pursue bi-lateral settlement discussions with both WUMI and the Waterloo Parties. On June 19, 2017, the Debtor filed the WUMI Motion.

On July 5, 2017, the Court conducted a hearing on the WUMI Motion. At that hearing, the Debtor notified the Court that it had recently received a cash bid for the purchase of substantially all of the Debtor's assets from Tamra and, as a result, the Debtor requested to continue the hearing so the Board and the Debtor's Chief Restructuring Officer, FTI Consulting (the "CROs"), could evaluate the bid. The Debtor also notified the Court that it intended to file the Waterloo Motion and Waterloo Settlement Agreement, in connection with the bid from Tamra. The Court granted Debtor's request to continue the hearing and set both the WUMI Motion and Waterloo Motion for hearing on July 17, 2017 and July 18, 2017 (the "Continued Hearings").

The Court issued an order setting dates and deadlines in connection with the Continued Hearing.[34] With that, the Court required the Waterloo Motion to be filed by July 10, 2017, and any objections to the same by July 13, 2017. The Debtor filed the Waterloo Motion on July 10, 2017; however, the Debtor amended that motion on July 14, 2017, to include the final version of the Waterloo Settlement Agreement and the Tamra APA. These documents were not included

---

[31] Dkt No. 625.
[32] Adv. No. 17-2024 at Dkt. Nos. 29, 31.
[33] Dkt. Nos. 639, 664 at ¶ 20.
[34] Dkt. No. 742.

with the Waterloo Motion when it was originally filed on July 10, 2017. Several parties objected

to the Waterloo Motion arguing, *inter alia*, that they lacked sufficient notice because they

received the APA on one business-days' notice.

At the Continued Hearing, the Court found that notice of the Waterloo Motion was

insufficient and thus further continued the Continued Hearings to July 21, 2017.[35] The Court

issued its findings and conclusions on the record, which are incorporated herein. The Court also

continued the objection deadline to the Waterloo Motion to July 20, 2017, to give interested

parties sufficient time to review the Waterloo Motion, as amended.[36]

At the Hearing, held July 21, 2017, the Debtor notified the Court it wished to seek

approval of the WUMI Motion and withdrew the Waterloo Motion.[37] In doing so, the Debtor

informed the Court that the Board held a telephonic meeting on July 20, 2017 (the "Telephonic

Board Meeting"), and at that meeting voted to pursue the WUMI Motion. The Board also

prohibited the CROs, on the Debtor's behalf, from pursuing any motion conflicting with the

WUMI Motion, in particular the Waterloo Motion, irrespective of whether the WUMI Motion

---

[35] The Court notes Local Rule 9019-1(a) (requiring parties to "file a written settlement agreement not less than 3 business days before a related hearing.").

[36] Dkt. No. 742. The Court did not receive additional objections to the Waterloo Motion after July 13, 2017.

[37] The Waterloo Settlement Agreement requested the following: 1) dismissal of the Waterloo Adversary Proceeding with prejudice; 2) resolution of the Waterloo Claim by allowing Waterloo a secured claim and validly perfected lien in the amount of $23,000,000.00 (the "Waterloo Allowed Secured Claim"); 3) resolution of the claim PacNet asserted against the estate, which claim would not be subject to any challenges by the Debtor or the estate on any grounds; 4) payment of $1,000,000.00 to the Debtor's estate exclusively from proceeds derived from the sale of the Debtor's assets; 5) subordination of the assets securing the Waterloo Allowed Secured Claim (the "Waterloo Collateral") to certain the Priority Obligations; 6) mutual releases; and 7) Waterloo's waiver of the right to credit bid the Waterloo Allowed Claim at any auction or sale of the Debtor's assets provided, however, that no other pre-petition secured lender, other than the DIP Lenders and any equipment lessors which have validly perfected liens on specified pieces of equipment, be allowed to credit bid in connection with any sale or auction of the Debtor's assets.

13

was approved.[38]

### G. Terms of the WUMI Settlement Agreement

The WUMI Settlement Agreement is made in connection with the WUMI Adversary and

the WUMI Claim. In summary, the Settlement Agreement requests the following:

1) dismissal of the WUMI Adversary, with prejudice;

2) resolution of the WUMI Claim by allowing WUMI a secured claim and validly

perfected lien in the amount of $23,000,000.00 (the "WUMI Secured Allowed Claim"), which

WUMI Allowed Secured Claim shall not be subject to challenge by any party on any grounds,

including challenges related to the nature, extent, validity and priority of the WUMI Allowed

Secured Claim and WUMI shall not be obligated to convert any portion of the WUMI Allowed

Secured Claim to equity in SMP or the Debtor, nor shall the WUMI Allowed Secured Claim be

subject to subordination or recharacterization;

3) payment of $1,000,000.00 to the Debtor's estate exclusively from any consideration

paid or payable to WUMI in whole or partial satisfaction of the WUMI Allowed Secured Claim

(the "Cash Consideration");

4) subordination of the assets securing the WUMI Allowed Secured Claim (the "WUMI

Collateral"), as set forth in the WUMI Loan, SMP Subordination Agreement and the

Intercreditor Agreement, to certain other claims in this case (the "Priority Obligations"), which

include the first priority liens and claims granted to the DIP Lenders, other pre-petition liens as

---

[38] Waterloo Ex. YY, Email from Christopher Chuff (Draft Meeting Minutes of July 20, 2017 Telephonic Regular Meeting of the Board). In considering the weight to give this exhibit, the Court notes that the meeting minutes were in draft form and not signed or finally approved by the Board. However, Beckman testified to the accuracy of the minutes sating that the events and information contained therein were as he recalled.

defined in the *Final DIP Financing Order*,[39] allowed administrative claims and unsecured

priority claims in this case, certain fees due and payable to the CROs, and the Cash

Consideration;

5) opportunity for WUMI, or any successor-in-interest or purchaser of the WUMI

Allowed Secured Claim, to credit bid, up to the value of the WUMI Collateral, at any auction or

sale of Debtor's assets, provided, such bid is deemed a qualified bid and the bidder provides

sufficient cash to Debtor's estate to pay all of the Priority Obligations;

6) resolution of all claims by and between the Debtor and WUMI without releasing or

resolving any direct or individual claims the Debtor may hold against any individual participants,

directors or officers of WUMI, nor releasing or resolving any derivative claims the Debtor may

hold against its own directors or officers; and

7) mutual releases as it relates to the WUMI Adversary and WUMI Claim.

### H.  CROs' Retention, CROs' Authority and the Sale Process

On August 5, 2016, the Debtor filed an application to employ its CROs.[40] On August 9,

2016, the Court held the hearing on the application to employ the CROs. At that hearing, the

Debtor's counsel advised the Court of the necessity of the CROs' services to facilitate the

reorganizational process due to a seemingly incurable impasse amongst the Board in coming to a

unanimous consent on certain significant issues to move the Debtor forward. In pertinent part,

Debtor's counsel stated:

---

[39] Dkt. No. 505.

[40] Dkt. No. 136. The Debtor's application requested approval of the CROs' employment for the "gap period". On August 11, 2016, the Debtor filed an application to employ its CROs for its advice during the bankruptcy case. Dkt. No. 173. The Court approved the Debtor's retention of the CROs. *See* Dkt. No. 206, Order Approving Application of CRO, as amended by Dkt. No. 580.

> [The Board members] are interlocking [and thus the Board] agreed to hire a chief
> restructuring officer. [The Board] went through an extensive interviewing
> process, and they ultimately hired [the CROs]. [The CROs were] retained for
> purposes for making recommendations as to how to proceed with respect to how
> to maximize the value of these assets. . . . These assets are complex, they are
> difficult, which is why [the CROs were] brought in. I believe that the [CROs are]
> experts [and] some of the leading folks in the country in this area, which is why
> again the board unanimously agreed to retain them. . . . I am much more
> comfortable knowing at this point that [the CROs] will be on board.[41]

The CROs were retained to substantially enhance the Debtor's ability to successfully reorganize for the benefit of all parties in interest. With that, the CROs engaged in a marketing process designed to sell all or substantially all of the Debtor's assets pursuant to a § 363 sale (the "Sale Process"). To facilitate the Sale Process, the Board executed consents ceding authority and power to the CROs to run and complete the Sale Process, including negotiating and executing any documents and filing any motions that the CROs deemed necessary, appropriate, or desirable in connection with the Sale Process.[42]

The Sale Process is governed by certain orders of this Court,[43] which outline the bidding procedures (the "Bid Procedures Order"). The Bid Procedures Order is relevant in that it

---

[41] Dkt. No. 210, Transcript regarding Hearing Held 08/09/2016.

[42] Waterloo Ex. PP, Notice of Filing Letter to the Court and Proposed Form of Order.

[43] Dkt. No. 433, Order Granting Debtor's Motion for Entry of an Order (A) Approving Bidding Procedures in Connection with Sale of Substantially All of the Estate's Assets (B) Approving Expense Reimbursement, (C) Scheduling An Auction And Hearing To Consider The Proposed Sale, and (D) Approving The Form And Manner Of Notice Thereof , *as subsequently amended by* Dkt. No. 505, Final Order (I) Authorizing the Debtor to Enter Into Additional $2.65 Million Postpetition Financing Agreement with Vendor and Existing DIP Lender; (II) Authorizing Amendment to Existing Debtor-in-Possession Financing Facility; (III) Approving Sulfuric Acid Supply Agreement; (IV) Authorizing the Use of Cash Collateral and (V) Granting Adequate Protection entered by the Court on January 17, 2017.

16

prevents secured lenders from credit bidding and the WUMI Settlement Agreement seeks to allow a credit bid by WUMI.[44]

At the Telephonic Board Meeting, the Board voted to quash the CROs' authority with respect to any agreements that granted releases on behalf of the Debtor.[45] This vote effectively stymied the CROs' authority to manage the Sale Process and gave that authority back to the contentious Board.

## I.   Responses and Objections to the WUMI Motion

The Court received several responses to the WUMI Motion from interested parties. The primary objection came from the Waterloo Parties. The Waterloo Objection asserts that the WUMI Motion fails the *Kopexa* analysis because, as they argue:

1) Waterloo could continue its adversary against WUMI at no cost to the estate; 2) the Debtor has a substantial probability of success on the merits of the WUMI Adversary Proceeding due to an alleged admission by Walker under the equitable subordination claim; 3) the WUMI Motion was not entered into in good faith and lacks the necessary fairness because the WUMI Settlement is an insider transaction by Richards and Walker, which requires a higher level of scrutiny by the Court; 4) the Motion lacks proper board approval because Richards and Walker improperly caused the Debtor to enter into the WUMI Settlement Agreement without Cooper's consent and in violation of the SMP operating agreement; and 5) the Board did not consider the *Kopexa* factors when voting on the settlement proposal with WUMI. Waterloo also argues that the WUMI Motion fails because it improperly limits Waterloo's claim objection rights under §

---

[44] Dkt. No. 732 at 15, ¶ 16 ("no prepetition secured lender shall be permitted to credit bid in connection with any sale or auction of the Debtor's assets, other than the DIP Lenders or any equipment lessors which have validly perfected liens on specified pieces of equipment.")

[45] Waterloo Ex. YY, Email from Christopher Chuff (Draft Meeting Minutes of July 20, 2017 Telephonic Regular Meeting of the Board).

502. Waterloo asserts that the WUMI Claim cannot be settled by the WUMI Motion and thus WUMI does not have an allowed claim to credit bid with at any upcoming sale of the Debtor's assets.

In response to the Waterloo Parties, the Debtor argues that the WUMI Settlement satisfies the applicable standard of review under *Kopexa* and should be approved because 1) the Debtor has met its burden in showing that the WUMI Settlement is in the best interest of the estate as it would resolve the WUMI Claim and WUMI Adversary and save the estate time and resources; 2) the WUMI Settlement provides for subordination of the WUMI Collateral to the Priority Obligations; 3) WUMI's right to credit bid enhances the Sale Process and thus benefits the estate; and 4) the $1,000,000.00 Cash Consideration to be paid by WUMI benefits the estate because it is completely unencumbered.

The Debtor also argues that the WUMI Motion should be granted because 1) any statements or wrongful acts by Walker are not the acts of WUMI and would not necessarily equate to an automatic right of equitable subordination of the WUMI Claim; 2) the CSM Operating Agreement governs the company and the Board was not required to obtain the prior written consent of DXS, but rather only needed approval of the majority of the Board for the WUMI Settlement to be approved; 3) the WUMI Settlement contains proper board approval per the CSM Operating Agreement because the Board made informed decisions when voting in favor of the WUMI Settlement Agreement; and 4) the Board was not required to review the standards as set forth in *Kopexa* when voting to approve a settlement, rather, the court is obligated to consider the *Kopexa* standards, and the standard applicable to the Board is the business judgment standard.

18

WUMI primarily asserts that Walker and Richards are not insiders, the WUMI Motion was negotiated in good faith and the contents and results of the WUMI Settlement Agreement are fair and reasonable. Noble argues that the WUMI Motion should be denied to the extent it establishes the WUMI Claim as allowed due to the pending disputes surrounding the parties pre-petition lending arrangements. The UCC supports the WUMI Motion. The Debtor resolved any objections by Caterpillar, Komatsu and Brahma and these parties supported the WUMI Motion at the Hearing.

## III.   NOTICE OF THE WUMI MOTION

The Waterloo Parties objected to the notice of the WUMI Motion because it is related to a potential asset purchase agreement ("APA") for the sale of Debtor's assets, between the Debtor and WUMI related parties ("Utah Copper"). This potential APA between the Debtor and Utah Copper was referred to by several parties at the Hearing and is apparently in the works. The final version has not been shared with Waterloo or filed with the Court. The Debtor stated that it only sought approval of the WUMI Motion as filed with the Court on June 19, 2017 – without any changes or the inclusion of an APA with Utah Copper.

The procedures for approving a settlement, and the entities to whom notice is given, are governed by Rules 9019(a), 2002(a)(3) and 2002(i). *See Collier on Bankruptcy* ¶ 9019.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Rule 9019(a) requires notice "to creditors, the United States trustee, the debtor [. . .] and to any other entity as the court may direct." Rule 2002(a)(3) requires that parties in interest receive twenty-one days' notice of the hearing by mail "unless the court for cause shown directs that notice not be sent[.]" Fed.R.Bankr.P. 2002(a). Notice may also be limited by court order. Fed.R.Bankr.P. 2002(i), (m); *In re Southern Medical Arts Co., Inc.,* 343 B.R. 250, 255 (10th Cir. BAP 2006). "The nature of the compromise or

settlement being presented and its importance to the estate, along with the need for expedition, will determine the notice that will have to be given in any particular case. In any event, the notice need only be the best notice practical under the circumstances." *Collier*, *supra*, ¶ 9019.01 (quotations omitted).

Parties in interest received about thirty-two days' notice before the Hearing to conduct a thorough review and conduct any discovery regarding the WUMI Motion. Accordingly, as a preliminary matter, the Court finds that notice of the WUMI Motion is appropriate under the circumstances. The objection to notice by the Waterloo Parties is overruled.

## IV.   DISCUSSION

There are several basis for the Court's decision to deny the WUMI Motion.

### A.   Standard of Review Under FRBP 9019

For the most part, the standard of review for the WUMI Motion is not in dispute. The Debtor has properly briefed the standard of review in which this Court must consider a settlement motion under Rule 9019, citing to applicable case law and in particular *In re Dennett*, which states:

> Rule 9019 allows the Trustee [or debtor-in-possession], with court approval after notice and hearing, to compromise or settle claims of the estate, including a cause of action a debtor has against a third party. [*See In re Kaiser Steel Corp.*, 105 B.R. 971 (D. Colo. 1989); *In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997); *In re Martin*, 91 F.3d 389 (3d. Cir. 1996)]. Further, settlements are favored in bankruptcy. [*See In re Southern Medical Arts Co.,* Inc., 343 B.R. 250 (10th Cir. BAP 2006); *In re Kaiser Steel Corp.,* 105 B.R. 971, 978 (D. Colo. 1989).] Appellate courts have held that a bankruptcy court's approval of a compromise must be affirmed unless the court's determination is either (1) completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. [*Id.*] Rule 9019 does not set out approval factors for a compromise, rather, the standards for consideration of compromise and settlement are left to case law. The underlying test for the bankruptcy court's approval is whether the

20

Trustee's actions are "within the universe of reasonable actions", not whether pressing onward might produce more funds. [*See In re Mailman Steam Carpet Cleaning Corp.*, 212 F.3d 632, 636 (1st Cir. 2000), *cert denied*, 531 U.S. 960 (2000); *see also* Rule 9019, Selected Case Comment, Approval–Factors and Standards for Consideration.] The Court's role is to determine if compromise and settlement is in best interest of creditors. [*See In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997); *In re Martin*, 91 F.3d 389 (3d. Cir. 1996); *In re Kaiser Steel Corp.*, 105 B.R. 971 (D. Colo. 1989).] Further, the Court must apprise itself of "all facts necessary for an intelligent and objective opinion of probabilities of ultimate success should the claim be litigated." [*See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968).] In considering whether a settlement or compromise is in the best interest of the estate, the court must consider four prongs:
(1) The probable success of the underlying litigation on the merits,
(2) The possible difficulty in collection of a judgment,
(3) The complexity and expense of the litigation, and
(4) The interests of creditors in deference to their reasonable views. [*See In re Kopexa Realty Venture Co.*, 213 B.R. 1020, 1022 (10th Cir. BAP 1997); *In re Martin*, 91 F.3d 389, 393 (3d. Cir. 1996); *accord In re Healthco Int'l Inc.*, 136 F.3d 45, 39 C.B. C.2d 939 (1st Cir. 1998); *In re Jackson Brewing Co.*, 624 F.2d 605, 607 (5th Cir. 1980); *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128 (8th Cir. 1984), *cert denied*, 469 U.S. 1207 (1985).]
Further, the Court is not required to hold a mini-trial on the issues involved in the case being compromised. Rather, the obligation of the court is to canvass [] "the issues and see whether the settlement falls below the lowest point in the range of reasonableness."
*In re Dennett*, 449 B.R. 139, 144-45 (Bankr. D. Utah 2011).

The Court adopts the *Kopexa* standard as set forth and reiterated in *In re Dennett*. *See In re Kopexa Realty Venture Co.*, 213 B.R. 1020 (10th Cir. BAP 1997). In addition, when determining the reasonableness of a settlement, the Court may consider whether the settlement is the product of good faith, arm's-length negotiations between the parties. *See In re Kaiser Steel Corp.*, 105 B.R. at 977 ("[F]indings as to good faith . . . are simply part and parcel of the court's consideration of whether the settlements were fair and equitable to the estate"); *In re The Heritage Org., L.L.C.*, 375 B.R. 230, 260 (Bankr. N.D. Tex. 2007) ("the court should consider' the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud

21

or collusion") (*quoting Matter of Cajun Elec. Power Co op., Inc.*, 119 F.3d 349, 356 (5th Cir. 1997)).

Turning to the WUMI Motion, the Court will now analyze each of the four prongs as outlined in *Kopexa* and other considerations to determine if the WUMI Settlement Agreement is in the best interest of the estate.

### B.  Probability of Success on the Merits

With respect to the first factor, the Debtor believes its probability of success in the WUMI Adversary is less than certain. The primary dispute in the WUMI Adversary is whether WUMI was obligated, under the WUMI Loan, Intercreditor Agreement and other agreements, to convert its interest in the WUMI Loan into equity in SMP pursuant to the Mandatory Conversion Clause. The WUMI Adversary is very fact intensive and involves several parties but the Debtor (and Waterloo) seem to have the better arguments. The Court is not saying that WUMI would not prevail if the case was tried on the merits. It may be that the Debtor would have an uphill battle proving its case. However, at the moment, it is difficult to ascertain the Debtor's chances of success due to the complexity of the WUMI Adversary.

The Court finds that Debtor's probabilities of success in the WUMI Adversary are less than certain. Accordingly, the uncertainty of Debtor's success in the WUMI Adversary weighs in favor of approving the WUMI Settlement Agreement.

### C.  Difficulty in Collection

The second factor weighs in favor of approving the WUMI Settlement Agreement due to the difficulty associated in collecting funds for the benefit of the estate. The Debtor may have some difficulty seeking to disallow or reduce the WUMI Claim. After an expensive and protracted litigation process it is very unlikely there will be any funds for payment to unsecured

22

creditors of Debtor's estate. However, the WUMI Settlement Agreement provides for the benefit

of the Cash Consideration, free and clear of any liens or claims of the DIP Lenders, Waterloo,

SMP or any other creditor alleging or asserting a secured claim or lien against the Debtor or the

Debtor's bankruptcy estate. Additionally, through the settlement, the WUMI Claim will be

subordinated and reduced by approximately $1,926,036.00. Accordingly, the Court finds there

would be some difficulty associated with collection in the WUMI Adversary and attempting to

do so may be more detrimental than beneficial to the estate. Alternatively, this factor is neutral,

as the Debtor is not attempting to collect a judgment.

### D.  Complexity and Expense

The Court finds this factor in neutral. The WUMI Adversary raises issues both with

respect to the extent, validity, and priority of the WUMI Claim and with respect to possible

breaches of fiduciary duties. The issues in the WUMI Adversary are fact intensive and extremely

complex. Additionally, litigating the underlying matter would be time consuming and very costly

for the Debtor. However, the Waterloo Parties also assert similar claims against WUMI. The

expense to the estate would be drastically reduced if Waterloo pursued and finalized its claims

against WUMI in the Waterloo v. WUMI Adversary. Accordingly, the Court finds that this

factor is neutral.

### E.  Interest of Creditors

This factor is neutral. The majority of creditors have indicated their support for the

WUMI Settlement Agreement. The Court understands that the paramount interest of the

creditors, in particular the UCC, favors a settlement which will facilitate the Debtor's

reorganization and Sale Process. Also, the Cash Consideration and subordination of the WUMI

Claim may be beneficial to creditors. However, as discussed further herein, and as the Waterloo

Parties argue, a settlement that primarily benefits parties closely related to the Debtor may not be in the best interest of creditors and the estate.

Accordingly, on its face, it might appear that the WUMI Motion meets the *Kopexa* standard. However, there are other considerations which the Court must analyze. *See Reiss v. Hagmann,* 881 F.2d 890, 892 (10th Cir. 1989) (the decision of a bankruptcy court "to approve the settlement [. . .] must be an informed one based upon an objective evaluation of developed facts.").

### F.  Other Considerations

#### 1)       Board Approval of the WUMI Motion

On June 16, 2017, the Board held a special meeting, which counsel for the Waterloo Parties objected to for various reasons.[46] All six of the Board members were present for the special meeting to consider the proposed WUMI Settlement Agreement. At the special meeting, the Board took two votes. The first vote, by the three new members, carried 2 to 1 in favor of the WUMI Settlement Agreement, with Mr. Reilly voting against the WUMI Resolution and Messrs. Bryan and Karban voting in favor. The second vote, with all members, carried 4 to 2 in favor of the WUMI Settlement Agreement, with Messrs. Cooper and Reilly voting against the WUMI Settlement Agreement and Messrs. Richards, Walker, Bryan and Karban voting in favor of the

---

[46] By re-notice, on June 14, 2017, a special meeting of the Board was scheduled to consider the WUMI Settlement Agreement. In the event that a quorum for the transaction of business did not exist at the June 14, 2017 special meeting, Walker requested that an additional special meeting be scheduled for June 16, 2017, and the notice of that additional special meeting was noticed on May 31, 2017. On June 13, 2017, Cooper advised the Board that neither he, nor Reilly, would be able to participate in the June 14, 2017 special meeting. The Board held the June 14, 2017 special meeting; however, an insufficient quorum existed. The entire Board was present for the June 16, 2017 special meeting. Cooper objected to the special meeting because he believed the Board failed to comply with the SMP Operating Agreement in its consideration of the WUMI Settlement Agreement. Cooper raised several other objections and moved to adjourn the meeting. The motion of Cooper was seconded by Reilly, voted on and then denied by a 4 to 2 vote.

24

Case 16-24818   Doc 983   Filed 09/19/17   Entered 09/19/17 23:44:24   Desc Main
Document   Page 56 of 76

same.

The Waterloo Parties argue that the Board should have allowed a vote by the "4 disinterested members" – meaning a vote by the three new members and Cooper. However, Cooper is not a disinterested member for the same reasons Richards and Walker are not disinterested. Cooper has a strong interest opposing the WUMI Settlement and for similar reasons Richards and Walker support the WUMI Settlement. Accordingly, the Court finds that the WUMI Settlement Agreement was approved by a majority of the newly appointed members of the board (2 to 1), as well as by a majority of the full board (4 to 2) and thus contains the requisite board approval.[47]

The Court also finds that the Board members are required to make informed decisions based on their business judgment. The Board members were not required to analyze the settlement proposal presented to them using the *Kopexa* factors, or any other case law, when making their business decisions.

The Board's approval of the WUMI Settlement Agreement is a questionable use of the business judgment afforded to the Debtor. However, for the limited purpose of ruling on the WUMI Motion, the Court finds that the Board authorized the Debtor to enter into and seek approval of the WUMI Settlement Agreement.

## 2)    Good Faith and Fairness

The Tenth Circuit has made clear that an insider may be defined by their close relationship to the debtor. *See In re U.S. Med., Inc.*, 531 F.3d 1272, 1276 (10th Cir. 2008) ([T]here are two distinct types of insiders, first those entities specifically mentioned in the statute

---

[47] The Debtor and Waterloo dispute whether the Debtor is governed by the CSM Operating Agreement or the SMP operating agreement. The Court finds it unnecessary to opine on this dispute as the WUMI Motion will be denied.

[. . .] i.e. per se insiders, or second those not listed in the statutory definition, but who have a sufficiently close relationship with the debtor that . . . conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor.") (first brackets added) (internal brackets and quotation marks omitted); *In re Kunz*, 489 F.3d 1072, 1079 (10th Cir. 2007) ("insider status may be based on a professional or business relationship with the debtor, in addition to the Code's per se classifications, where such relationship compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of dealings between the parties") (*quoting Miller Ave. Prof. & Promotional Serv. v. Brady (In re Enter. Acquisition Partners)*, 319 B.R. 626, 631 (9th Cir. BAP 2004)); *see also In re Adam Aircraft Indus., Inc.*, 510 B.R. 342, 350 (10th Cir. BAP 2014), aff'd, 805 F.3d 888 (10th Cir. 2015).

As members of the Board, Richards, Walker, Cooper, Karban, Bryan, and Reilly are statutory per se insiders as the term is defined by § 101(31)(B). Walker recently resigned as a WUMI manager but still holds an economic interest in WUMI though Clarity Copper.[48] Richards also recently resigned as a WUMI manager and stated that he divested his interest (through Richards, LLC) in WUMI.[49]

Walker maintains his ownership in WUMI, through Clarity Copper, and will benefit economically if WUMI benefits. Richards may no longer have an ownership interest in WUMI but it appears that he stands to gain from any transaction that benefits WUMI due to his relationship with the DIP Lenders.[50]  Richards and Walker organized the DIP Lenders and have

---

[48] Dkt. No. 705

[49] *See* Dkt. 705 ("Richards testified at his June 6, 2017, deposition that he has no ownership interest in WUMI and has had no such interest since about the end of 2015.")

[50] *See* Dkt. No 768, PDF with attached Audio File at 1:22:35 (Waterloo Counsel: "How much did St. Cloud eventually invest in WUMI?" Lautz: "The original investment was 8 million,

26

close ties to the DIP Lenders.[51] The DIP Lenders and WUMI intend to jointly credit bid at a sale

of the Debtor's assets.[52] Thus, Richards and Walker will benefit economically if the WUMI

Motion is approved.

The WUMI Motion is not an arms-length transaction and must be examined with closer

scrutiny. *See In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 498 (Bankr. S.D.N.Y.

1991) (holding "closer scrutiny of insider agreements should be added to the cook book list of

factors that Courts use to determine whether a settlement is fair and reasonable."); *In re HyLoft,*

*Inc.*, 451 B.R. 104, 113 (Bankr. D. Nev. 2011) ("While insider status alone is not fatal to

dealings between a debtor and an insider, the court must scrutinize these dealings more

carefully."); *In re Med. Software Sol..*, 286 B.R. 431, 445 (Bankr. D. Utah 2002) (requiring

higher level of scrutiny when proposed sale of Debtor's assets is to purported insider).

Karban, Bryan and Reilly are new members of the Board and have voted in favor of their

respective member designees. Thus, as of now, the decisions of Richards and Walker will hold

the majority (and if a unanimous consent of the Board is required, there will be grave difficulty

in coming to the same). Accordingly, the relationship between WUMI, Richards and Walker

---

subsequently, we did another 2 million." Waterloo Counsel: "So St. Cloud's investment in
WUMI is 10 million total, is that correct?" Lautz: "That's correct.") Richards is the founder of
WUMI, St. Cloud is the majority member of WUMI, St. Cloud is also a DIP Lender. Richards
and Walker were integral in assembling the DIP Lenders and Richards and Walker have close
ties with St. Cloud.

[51] See Dkt. No. 768, PDF with attached Audio File at 2:18:38 (Lautz: "Mr. Richards is
the one who has the connections with the DIP lenders so that you can speak to them. I believe
that David J. Richards and Clint Walker were instrumental in putting together the series of
investors that are now included in the DIP loan." Waterloo Counsel: "You said in your
deposition that if you're going to reach out to the DIP investors, you are going to do it through
David J. Richards because he put the group together and he has the contacts. Is that a fair
statement of your testimony?
Lautz: "That's fair.").

[52] *See* Dkt. No. 727 ("The DIP Lenders anticipate being part of at least one bid for the
Debtor's assets aligned with [WUMI.]")

compels the Court to conclude that WUMI has gained an advantage and is an insider in this transaction.

### 3)    Business Judgment of the Board and CROs

At the Hearing, CRO Beckman, on behalf of the Debtor and its Board, in exercise of their business judgments, stated that the WUMI Settlement is in the best interest of the creditors and the estate. The Waterloo Parties disagree and argue that the business judgments of the CROs are dubious, at best, as discussed below.

In multiple cases, this Court has stated that it will not second-guess the Debtor's business judgment when reasonable, exercised in good faith, and within the scope of the Code. *See In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981); *In re Eurogas, Inc.*, 560 B.R. 574, 585–86 (Bankr. D. Utah 2016).

Here, the CROs' business judgment is not reasonable and was not exercised in good faith. The contents of the Telephonic Board Meeting held the day before the Hearing bear heavily on the CROs' business judgment. In pertinent part, the meeting minutes provide:

> [The CROs] reported that [they] continued to negotiate [the] Asset Purchase Agreements [with Tamra] and [Utah Copper].[53] [The CROs] also informed the Board that a number of third parties unaffiliated with the [Debtor] and the Board were still interested in potentially submitting a bid for [the Debtor's] assets, and such bids would be received by the [Debtor], if at all on or before the [. . .] bid deadline [. . .]

> [Debtor's] Counsel [. . .] explained to the Board that, in connection with its bid, Tamra has provided the [Debtor] with proof of funds sufficient to pay the proposed purchase price and close the transaction [. . .]

> [Counsel informed the Board that the [Debtor] also received a draft Asset Purchase Agreement from Utah Copper, which counsel and the CROs were in the process of reviewing. Counsel noted that the Asset Purchase Agreement was not

---

[53] Utah Copper is believed to be a group put together by WUMI and the DIP Lenders to bid on the Debtor's assets at any upcoming sale.

in final form, that the $1.1 million deposit called for under the Utah Copper Asset Purchase Agreement was not yet provided to the [Debtor] or placed into escrow, and that Utah Copper has not yet provided proof of funds sufficient to close the transaction under the proposed terms [. . .]

[Debtor's] Counsel advised that [the Debtor's Counsel] and the CROs do not believe that Utah Copper has provided proof of funds sufficient to close the transaction under the proposed terms, and therefore remain concerned with Utah Copper's ability to close on the proposed Asset Purchase Agreement. Counsel explained that it and the CROs believe that the bid from Tamra is superior to the Utah Copper bid because, among other reasons, Tamra has provided the Company with proof of funds sufficient to close the transaction under the proposed terms, and Utah Copper has not.

[Debtor's] Counsel also explained that [the Debtor's Counsel] and the CROs believe that Tamra will withdraw its bid if the WUMI settlement is approved because the Tamra bid contains an explicit provision requiring its withdrawal if the WUMI settlement is approved. Therefore, going forward with the WUMI settlement poses a significant risk that Tamra will revoke its bid, which bid also has benefit of subordinating Waterloo's secured claim to priority obligations, providing $2 million cash to the [Debtor's] estate for potential distribution to general unsecured creditors, and being a firm bid going into the auction for the Company's assets.

[Debtor's] Counsel then sought guidance from the Board regarding going forward with the proposed settlements at the Hearing. At that time, David J. Richards expressed that [. . .] in his opinion, the Written Consents did not provide [. . .] the CROs with authority to enter into agreements or grant releases on behalf of the [Debtor]. Mr. Richards then moved (the "Motion") the Board to pass a resolution: (i) authorizing the [Debtor] to seek the Court's approval of the WUMI settlement; (ii) prohibiting the [Debtor] from seeking approval of any settlement that would be inconsistent with the WUMI settlement, including the Waterloo settlement; and (iii) clarifying that [the CRO] does not have the authority to release valuable [Debtor] legal claims against directors or members without Board approval. [The Motion was approved].

Discussion regarding the Motion ensued. Mr. Reilly commented that, in his opinion, Mr. Richards' Motion effectively overrides the CROs' authority to manage the bankruptcy sale process and counsel's and the CROs' recommendation that the Tamra bid is better and in the best interest of the [Debtor]. Mr. Richards noted his disagreement with Mr. Reilly's comments. Mr. Richards explained that he believed that his Motion was seeking only to "clarify" the CROs' authority.

[Debtor's] Counsel reiterated that its and the CROs' opinion is that the Tamra bid is superior to the Utah Copper bid, and that approval of the WUMI settlement is

29

not in the best interest of the [Debtor] because, among other things, it poses a
significant risk that Tamra will revoke its bid while Utah Copper has not firmly
demonstrated that it has sufficient funds to close its proposed transaction. [. . .]

After some further discussion, Counsel put the Motion to a vote. Mr. Richards'
Motion was approved by the Board by a 4-2 vote, with David J. Richards, Clinton
W. Walker, Sturges Karban, and John Bryan voting in favor of the Motion, and
Marshall Cooper and Tom Reilly voting against the Motion.

Counsel concluded by stating that given the Board's approval of Mr. Richards'
Motion, counsel will seek approval of the WUMI settlement at the Hearing, and
counsel will not seek approval of the Waterloo settlement, irrespective of whether
the WUMI settlement is approved.[54]

The CROs were retained to, *inter alia*, facilitate the Debtor's reorganizational process by
resolving the impasse amongst the Board.[55] Moreover, the CROs were given broad authority by
the Board to facilitate the Sale Process, which included negotiating and executing any documents
and filing any motions that the CROs deemed necessary in connection with the Sale Process.[56]
The WUMI Settlement Agreement is closely tied to the Sale Process. The Court understands that
the CROs' authority is not without bounds and it can be limited by the Board. However, a CRO's
authority and skill becomes meaningless in a contentious bankruptcy case when the CRO's
hands are tied by the Debtor.

The CROs' business decision lacks good faith due to the Board's restrictions on the
CROs' authority and recommendation to act in the best interest of the estate. Moreover, with
limited authority to act in the best interest of the estate, the CROs could not exercise sound
business judgment regarding the WUMI Settlement Agreement.

In support of the CROs' decision to support the WUMI Motion, David John Beckman,
representing the CROs, gave several reasons at the Hearing: 1) the WUMI Settlement would

---

[54] Waterloo Ex. YY, Email from Christopher Chuff (Draft Meeting Minutes of July 20,
2017 Telephonic Regular Meeting of the Board).
[55] *See* Dkt. No. 210, Transcript regarding Hearing Held 08/09/2016.
[56] Waterloo Ex. PP, Notice of Filing Letter to the Court and Proposed Form of Order.

30

settle the WUMI Claim and benefit the estate; 2) the $1,000,000.00 Cash Consideration would

provide an immediate benefit to the estate; 3) litigation costs would be decreased if WUMI and

the Debtor settled; 4) the WUMI Claim would be subordinated to Priority Obligations; 5) the

UCC supports the WUMI Motion and does not support the Waterloo Motion; 6) the credit bid by

WUMI would enhance the Sale Process; 7) the Board voted for the WUMI Motion at the

Telephonic Board Meeting; and 8) the WUMI Motion will keep a bidder in hand for the Debtor's

upcoming sale.

Beckman's strongest factor was the last factor - keeping a bidder at the table. Approval of

the WUMI Motion would eliminate the Tamra bid that was properly vetted by the CROs.[57] Even

with that, Beckman noted his support of the WUMI Motion at the Hearing because the Board

voted to approve the WUMI Motion and blocked approval of the Waterloo Motion. This

business decision effectively reduced the Debtor's options down to WUMI, a party closely

associated with Richards and Walker. The Board made this business decision after the CROs

carefully vetted the Waterloo Motion and had previously recommended the same to the Board.

All of the other reasons mentioned by Beckman were present when both the WUMI

Motion and Waterloo Motion were open for consideration and Beckman made clear that the

Waterloo Motion was in the best interest of the estate. Beckman also said that the offer from the

WUMI parties had not been fully reviewed by the CROs and Beckman was unsure if the WUMI

parties provided sufficient proof of funds to close the proposed transaction.

The majority of the Board, in particular Richards and Walker, significantly undermined

the CROs' authority to ensure the Sale Process was favorable to Richards and Walker. The Court

---

[57] The Tamra bid had a deadline of July 21, 2017. On July 20, 2017, the Waterloo Parties
extended its offer of the Tamra bid to August 18, 2017, with certain conditions, which included
not allowing WUMI to credit bid at any upcoming sale of the Debtor's assets.

31

finds that the CROs' business judgment is very questionable because it was not exercised in good faith. The Debtor zealously sought to employ the CROs to bring in stability for the Board to promote a successful reorganization. When the CROs' recommendations did not favor Richard or Walker, the Debtor overruled the CRO with a board vote. It appears Beckman was compelled to change his mind to then support Richards and Walkers interest and the WUMI Settlement. Accordingly, when subject to a higher level of scrutiny, the Court should deny the WUMI Motion on this basis alone. The Court concludes this is an abuse of discretion of the business judgment afforded the CROs, on behalf of the Debtor, and should not be approved.

### 4)      Waterloo's Claims Against WUMI

There is another basis for denying the WUMI Motion.

At the heart of this case are the disputes under the Intercreditor Agreement. Waterloo argues that its only source of recovery is from the resolution of the Waterloo Adversary and Waterloo Claim objection. The WUMI Settlement does not release or resolve any direct claims Waterloo may have, or hold, against WUMI. However, if approved, the WUMI Settlement would dissolve the Waterloo Claim Objection by deeming the WUMI Claim an allowed claim and resolve any equitable subordination and recharacterization claims alleged in the Waterloo Adversary and Waterloo Claim Objection.

Waterloo argues that pursuant to § 502 the Waterloo Claim Objection cannot be settled by the Debtor and WUMI in the WUMI Settlement Agreement without the Court's consideration of its claim objection at a noticed hearing under § 502(b). Relying primarily on *In re The C.P. Hall Co.,* 513 B.R. 540 (Bankr. N.D. Ill. 2014) and *Overton's, Inc. v. Interstate Fire & Cas. Ins. Co. (In re SportStuff, Inc.),* 430 B.R. 170 (8th Cir. BAP 2010), Waterloo argues that a directly injured creditor who has objected to a claim under § 502 has a right for that objection to be heard

32

and fully adjudicated on the merits without those rights being abridged or modified in a

settlement motion under Rule 9019.

The Waterloo Claim Objection is pending before the Court and has not been resolved.

Section 502(b) provides: "[I]f such objection to a claim is made, *the court, after notice and a*

*hearing*, *shall determine* the amount of such claim [. . .] and shall allow such claim in such

amount[.]" (emphasis added). Rule 9019 permits a Trustee or debtor-in-possession to settle

controversies through compromise.

In *C.P. Hall*, the court applied the clear language of the Code and held that it could not

consider or approve a 9019 settlement motion because the non-settling creditor was entitled to

receive a ruling on his claim objection prior to approval of the settlement agreement. That case

states, "[t]he court's obligation to rule on a claim objection is mandatory, and the creditor's right

to a ruling is also unqualified. Nothing in the Code subordinates that right to the trustee's duty to

administer the estate, let alone his agreement with a creditor that the creditor's claim will be

allowed." *In re The C.P. Hall Co.*, 513 B.R. at 544. *See also In re SportStuff, Inc.*, 430 B.R. at

181 (settlement motion cannot be used to deprive non-settling party of its rights to be heard on

the merits of its claims against settling party.)

The Debtor makes the exact opposite argument. Relying on *In re The Heritage Org.,*

*L.L.C.*, the Debtor points to the holding which states, "(i) there is no direct conflict between §

502 and Rule 9019, (ii) the rules do not dictate that claim objections be heard before settlement

motions, (iii) requiring litigation on the merits would undermine the policy of promoting

settlements in bankruptcy, and (iv) the debtor, as a fiduciary under the Code, has the duty to all

creditors to resolve claims in the best interest of the estate." *In re The Heritage Org., L.L.C.*, 375

B.R. 230, 285 (Bankr. N.D. Tex. 2007) (*citing Law Debenture Trust Co. v. Kaiser Aluminum*

33

*Corp. (In re Kaiser Aluminum Corp.)*, 339 B.R. 91 (D. Del. 2006) (the rights of the creditor objecting to claim are satisfied through the ability to object to the settlement.)).

The Tenth Circuit has not ruled on this precise issue; however, the Tenth Circuit has made very clear that when the language of the Code is unambiguous there is no need to venture into policy interpretations. *See United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008) ("We begin by examining the statute's plain language. If the statutory language is clear, our analysis ordinarily ends. It is a well established [*sic*] law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls.") (internal citations and quotation marks omitted). *See also King v. Burwell,* 135 S. Ct. 2480, 2483 (2015) ("If the statutory language is plain, the Court must enforce it according to its terms."); *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2169 (2015) ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding, and that is no less true in bankruptcy than it is elsewhere . . . . Our job is to follow the text even if doing so will supposedly undercut a basic objective of the statute.") (internal citations and quotation marks omitted); *Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, 1795 (2010) ("We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent."); *Mallo v. IRS*, 774 F.3d 1313, 1324–25 (10th Cir. 2014) ("[T]he plain language meaning of the Bankruptcy Code should rarely be trumped [even though the Code] at times is awkward, and even ungrammatical that does not make it ambiguous."). (internal citations omitted).

The *C.P. Hall* case is persuasive as it applies the unambiguous language of the Code. Section 502 makes clear that "the court" is to "determine" a claim objection under section 502(b) of the Code. When a party files an objection to a claim, their rights to be heard on the claim

34

objection should not be abridged or modified by a settlement.[58] This language does not conflict

with 9019 by obstructing policies encouraging settlement; rather, it gives a creditor the

opportunity to be fully heard on the merits when it objects to a claim under § 502(b).

The result may be that bankruptcy courts would be required to resolve claim objections

before approving a settlement. *See In re Kaiser Aluminum Corp.*, 339 B.R. at 94.[59] However, the

result is not absurd. *See In re McGough*, 737 F.3d 1268, 1276-77 (10th Cir. 2013) ("[T]he

absurdity doctrine is an exception to the rule that the plain and ordinary meaning of a statute

controls [this doctrine is applied] only when it would have been unthinkable for Congress to

have intended the result commanded by the words of the statute-that is, when the result would be

so bizarre that Congress could not have intended it.") (citations omitted).

Concluding otherwise would strip creditors of their claim objection rights under the clear

language of the Code. Further, "a hearing under Rule 9019 would provide no solace to the

objecting creditor." *In re The C.P. Hall Co.*, 513 B.R. at 545–46. A Rule 9019 hearing is not a

full blown trial. "The obligation of the court [at a hearing on a Rule 9019 Motion] is to canvass []

the issues and see whether the settlement falls below the lowest point in the range of

reasonableness." *In re Dennett*, 449 B.R. at 144. *See also In re SportStuff, Inc.,* 430 B.R. at 181

("The opportunity to object to a settlement does not take the place of a trial on the merits [. . .]

---

[58] *See* 11 U.S.C. § 502.

[59]  Taking this result further, it may be the case that if a debtor and creditor file an objection to the same claim, neither side could compromise the claim without mutual agreement, possibly leading a case to a stalemate. Or, it may be the case that if a debtor and creditor file an objection to the same claim, the debtor could resolve the objection in a settlement. If the claim at issue is property of the debtor's estate, or derivative in nature, resolution by the debtor is appropriate. However, in this case, Waterloo asserts some direct claims against WUMI in the Waterloo Claim Objection, which the Debtor seeks to eliminate in the WUMI Settlement Agreement. In this regard, the Court believes *In re The Heritage* and *In re Kaiser Aluminum Corp.* are distinguishable in that the Waterloo Claim Objection is a direct claim Waterloo asserts against WUMI, which the Debtor cannot assert..

litigants with pending claims [. . .] had the right to a trial on the merits, inasmuch as Fed. R.

Bank. P. 7001(7) requires an adversary proceeding for the imposition of an injunction. The

Settlements and Settlement Injunction deprived the [litigants] of that right.").

If the Settlement were approved Waterloo would be prejudiced because it would be

prevented from possibly equitably subordinating the WUMI Claim, which is its primary

contention in this case. It may be the case that the validity of the Waterloo equitable

subordination claims against WUMI are not successful. However, § 502(b) requires this Court to

"determine" and adjudicate the Waterloo Claim Objection on the merits. Accordingly, the

WUMI Motion cannot be used to estop the rights of Waterloo to pursue the Waterloo Claim

Objection and the WUMI Claim cannot be deemed "allowed" through the WUMI Settlement

Agreement.[60] Thus, the WUMI Settlement Agreement should be denied.


### 5)    Credit Bidding


---

[60] Any direct claims asserted by Waterloo against WUMI in the Waterloo Adversary, which are not property of the Debtor's estate or derivative in nature, cannot be settled as part of the WUMI Settlement. *See Matter of Energy Co op., Inc.*, 886 F.2d 921, 929 (7th Cir. 1989) (discussing the bankruptcy courts equitable power "to issue an injunction enjoining third parties from pursuing actions which are the exclusive property of the debtor estate and are dismissed pursuant to a settlement agreement."). WUMI argued that Waterloo's direct claim of equitable subordination could be satisfied with a monetary judgment outside of bankruptcy, which would not affect claims against the Debtor and would not result in Waterloo losing its rights. The Court is not persuaded by this argument. This argument is based on a premise the Court disagrees with. The premise being that a legal remedy and equitable remedy are equivalent and there would be no prejudice to Waterloo in seeking a monetary judgment. Waterloo's equitable remedies in this case, stemming from its direct claims, must be preserved. Otherwise, Waterloo may lose those rights because findings of this Court could easily impact Waterloo's ability to seek certain legal remedies. *See Granite Partners, L.P. V. Kidder Peabody & Co.*, 210 B.R. 508, 512-13, 516 (Bankr. S.D.N.Y. 1997) (trustee's settlement extinguished claims against defendant in equitable subordination case "based on conduct yielding injury to the estate, while leaving the plaintiffs' direct claims intact.") (internal citations omitted).

36

A final basis for denying the WUMI Motion revolves around the last issue of credit bidding, the WUMI Settlement Agreement, if approved, would allow WUMI to credit bid its secured claim at a sale of the Debtor's assets.

Per the Bid Procedures Order, entered in this case about eight months ago, pre-petition secured creditors are not entitled to submit a credit bid for some or all of the assets to be sold by the Debtor, unless modified by a further order of the Court or for cause. Notice of the motion to approve the Bid Procedures Order was given to all parties in interest and any objections to the same were resolved or overruled. The Court found that the Bid Procedures Order was in the best interest of the estate and approved the Bid Procedure Order.

A Court can prevent a secured creditor from credit bidding when doing so would enable the maximum value to the estate though fair and competitive bidding, rather than freezing the sale process, and when preventing credit bidding is determined to be in the best interest of the estate. Thus, at the moment, the Court finds no reason to modify the provision in Bid Procedures Order relating to credit bidding.

### a) *The Right to Credit Bid*

Under the Bankruptcy Code, credit bidding at a sale under § 363(b) is a right for secured lenders. That right is provided in § 363(k), which states:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.
> 11 U.S.C. § 363(k).

Credit bidding rights are not without its limits. *See In re Fisker Auto. Holdings, Inc.*, 510 B.R. 55, 59 (Bankr. D. Del. 2014) (stating, "the right to credit bid is not absolute") (*quoting In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 315 (3d Cir. 2010), as amended May 7, 2010).

37

First, the right applies to "the holder of a lien securing an ***allowed*** claim." *Collier*, *supra*, ¶ 363.09 (emphasis added). If there is a bona fide dispute with regards to a secured creditor's lien, credit bidding rights do not become automatic. *See id.* ¶ 363.09 ("The right of a lienholder whose lien was not in bona fide dispute to bid at a sale free and clear of liens was generally recognized under prior law, and this right is continued by section 363(k)." (*citing RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070 n.2, 182 L. Ed. 2d 967 (2012)).

Further, Congress amended credit bidding rights in 1984 to prevent a credit bid for "cause". *See* 11 U.S.C. § 363(k); *Collier*, *supra*, ¶ 363.LH. Cause is not defined by the Code but left to the court to determine on a case-by-case basis. *See In re: Aéropostale, Inc.*, 555 B.R. 369, 414 (Bankr. S.D.N.Y. 2016) (citing cases discussing "cause"). The Court has discretion in its determination of cause. *Id.* at 415 (courts should not act "freewheeling" but rather courts should "balance the interests of the debtor, its creditors, and the other parties of interests in order to achieve the maximization of the estate and an equitable distribution to all creditors") (citations and internal quotations omitted).

Cause may be found to deny credit bidding if allowing lien holders to bid at a sale would benefit an insider, impede or delay a successful reorganization strategy, chill the bidding process, and reduce the overall benefits to the estate. *See In re Philadelphia Newspapers*, LLC, 599 F.3d at 315) (citing a "variety of cases" where the court found cause to deny credit bidding). This list is non-exhaustive.

b) <u>Arguments of Waterloo and WUMI</u>

The WUMI Settlement Agreement, if approved, would allow WUMI, or any successor-in-interest or purchaser of the WUMI Allowed Secured Claim, to credit bid, up to the value of

the WUMI Collateral, at any auction or sale of Debtor's assets, provided such bid is deemed a

qualified bid and the bidder provides sufficient cash to Debtor's estate to pay all of the Priority

Obligations. The WUMI Claim is asserted against the Debtor's bankruptcy estate in the amount

of $24,926,036.00. In addition to the WUMI Claim, any cash bidder would be required to cover

the approximately $23,000,000.00 in Priority Obligations.

The Debtor and WUMI argue that the Bid Procedures Order should be modified to allow

credit-bidding so WUMI has the opportunity to bid on the sale of Debtor's assets. The Debtor

states that new evidence and facts not available at the time the Bid Procedures Order was entered

are sufficient reasons to modify the order. In addition, the Debtor argues that cause has not been

shown to deny credit bidding.

The Waterloo Parties argue against the allowance of credit bidding requested in the

WUMI Settlement Agreement primarily because 1) WUMI has no right to credit bid because the

WUMI Claim is disputed; 2) a joint bid from WUMI and the DIP Lenders would freeze the

bidding process because any potential bidder would need to top a bid of approximately $46

million and no evidence suggests that such a willing bidder exists; and 3) WUMI, Richards and

Walker are closely tied and credit bidding should not be allowed when it would primarily benefit

an insider.

*c)*   *The Bid Procedures Order is The Law of the Case*

As discussed, the Bid Procedures Order denied the right to credit bid unless the Court

entered a further order. The Court has not entered a further order, so, at the moment, this is the

law of the case. *See Padilla-Caldera v. Holder*, 637 F.3d 1140, 1145 (10th Cir. 2011) ("Under

the law of the case doctrine, when a court decides an issue of law, that decision should govern all

subsequent stages of the litigation."); *In re Antrobus*, 563 F.3d 1092, 1098 (10th Cir. 2009)

("The doctrine bars reopening a question already decided in an earlier stage of the same litigation, except in narrow and exceptional circumstances.) (internal quotations omitted).

The law of the case doctrine is discretionary, flexible and subject to exceptions in the interest of justice and policy. *Padilla-Caldera v. Holder*, 637 F.3d at 1145 (citation omitted). Flexibility is allowed in "exceptional circumstances". *Id.* The Tenth Circuit has recognized three exceptions to this doctrine. The first exception is the new evidence exception, which applies when evidence is found that is new, substantially different, and was previously unavailable. *In re Antrobus*, 563 F.3d at 1098. Next, the mandate rule says the law of the case doctrine should not apply when there is a dramatic change in controlling legal authority. *Padilla-Caldera v. Holder*, 637 F.3d at 1145 (citation omitted). The last exception applies when the decision was clearly wrong and is highly unjust. *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011). The Court finds the new evidence exception may be applicable in this case. The landscape has changed since the Bid Procedures Order was entered. Thus, a party could seek to modify the Bid Procedures Order by further order of the Court. However, as discussed below, the Court believes there is sufficient cause to maintain the status quo of the Bid Procedures Order, which forbids credit bidding by secured lien holders.

### d) *Cause Is Found to Deny Credit Bidding*

In addition to the Bid Procedures Order being in place, the Court finds cause to deny credit bidding rights requested in the WUMI Motion.

First, WUMI does not have an "allowed claim" which is needed to credit bid - as a starting point. As discussed, *supra*, Waterloo has objected to the WUMI Claim under § 502(a) and through the Waterloo v. WUMI Adversary.[61] *See In re: Aéropostale, Inc.*, 555 B.R. at 415

---

[61] Dkt No. 637.

(Bankr. S.D.N.Y. 2016) ("Courts have . . . limited the right to credit bid when the validity of a creditor's lien is in dispute.") (citations omitted)). Accordingly, WUMI (and Waterloo) cannot credit bid under § 363(k) because they do not have allowed claims.

Next, the evidence presented at the Hearing makes clear that if WUMI and the DIP Lenders were allowed to joint credit bid, the bidding process would be chilled, then frozen. Any potential bidder would need to come up with a bid of over $46 million. The CROs suggested that there are no other parties that could compete with a $46 million bid. Thus, if WUMI were allowed to credit bid, they would almost be guaranteed to walk away with the Debtor's assets.

Finally, cause is found to prevent credit bidding because it would benefit WUMI, who has very close ties (other than as a secured creditor) to the Debtor. *See In re Blixseth*, No. BKR. 09-60452-7, 2010 WL 716198, at *9 (Bankr. D. Mont. Feb. 23, 2010) (bidding procedures that did not encourage competitive bidding and favored an insider were rejected by the court) Moreover, even if the Court were to amend the Bid Procedures Order to allow credit bidding, it is likely that any potential insider bid would result in several objections, which would, in turn, delay the Sales Process and hamper the reorganization efforts in this case. *See In re Family Christian, LLC*, 533 B.R. 600, 604 (Bankr. W.D. Mich. 2015) (proposed sales to insiders frequently generate numerous objections).

A Sale Process without of credit bidding procedures that favoring insiders would promote competitive bidding. The Court finds and concludes that it is in the best interest of the estate to deny credit bidding to encourage and promote a robust sales process. The CROs indicated there are potential parties willing to submit cash bids on the Debtor's assets. The Court believes this may be the best option for the CROs to explore.

41

In light of the foregoing, the Court finds that the *Kopexa* factors and other considerations weigh in favor of denying the WUMI Settlement Agreement. The WUMI Settlement Agreement lacks good faith. Under the circumstances, the interests of estate are better served without the current compromise offered by the Parties.

## V.    CONCLUSION

For the reasons stated herein, the WUMI Motion is denied. The Waterloo Objection is sustained. The Court directs counsel for the Waterloo Parties to submit a proposed form of order consistent with this Memorandum Decision for the Court's consideration.

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION DENYING MOTION TO APPROVE SETTLEMENT** shall be served to the parties and in the manner designated below:

**By Electronic Service:** ECF LIST

- James W. Anderson    jwa@clydesnow.com, jritchie@clydesnow.com
- Troy J. Aramburu    taramburu@swlaw.com, nharward@swlaw.com;docket_slc@swlaw.com
- J. Thomas Beckett    tbeckett@parsonsbehle.com, ecf@parsonsbehle.com;brothschild@parsonsbehle.com;kstankevitz@parsonsbehle.com
- Darwin H. Bingham    dbingham@scalleyreading.net, cat@scalleyreading.net
- Stephen T. Bobo    sbobo@reedsmith.com
- Kyle A. Brannon    kbrannon@nexsenpruet.com
- Scott S Bridge    sbridge@keslerrust.com
- Martin J. Brill    mjb@lnbyb.com
- Mona Lyman Burton    mburton@hollandhart.com, intaketeam@hollandhart.com;slclitdocket@hollandhart.com;lcpaul@hollandhart.com
- Keith A. Call    kcall@scmlaw.com
- Kenneth L. Cannon    kcannon@djplaw.com, khughes@djplaw.com
- Laurie A. Cayton tr    laurie.cayton@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Patricia W. Christensen    pchristensen@parrbrown.com
- Christopher B. Chuff    chuffc@pepperlaw.com
- Joanna J. Cline    clinej@pepperlaw.com
- Joseph M.R. Covey    calendar@parrbrown.com
- P. Matthew Cox    bankruptcy_pmc@scmlaw.com
- Robert T. Denny    rtd@scmlaw.com, ajm@scmlaw.com
- Timothy D. Ducar    tducar@azlawyers.com, orders@azlawyers.com
- Victoria B. Finlinson    vbf@clydesnow.com
- Philip A. Gasteier    pag@lnbyb.com
- Christopher Grivakes    cg@agzlaw.com
- Robert W. Hamilton    rwhamilton@jonesday.com
- M. Darin Hammond    dhammond@smithknowles.com, astevenson@smithknowles.com
- George B. Hofmann    ghofmann@cohnekinghorn.com, dhaney@cohnekinghorn.com;jthorsen@cohnekinghorn.com
- Paul C. Huck    paulhuck@jonesday.com, ramoncastillo@jonesday.com
- David W. Hunter    davidh@fisherhunterlaw.com
- Evan L. James    elj@cjmlv.com, kbc@cjmlv.com;ljw@cjmlv.com
- Pedro A. Jimenez    pjimenez@jonesday.com
- Michael R. Johnson    mjohnson@rqn.com, docket@rqn.com;dburton@rqn.com
- Peter J. Kuhn tr    Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Brian R. Langford    brian@mhmlawoffices.com, brian@mhmlawoffice.com
- David H. Leigh    dleigh@rqn.com, dburton@rqn.com;docket@rqn.com

43

- David E. Leta    dleta@swlaw.com, wkalawaia@swlaw.com;csmart@swlaw.com
- Andrew C. Lillie    andrew.lillie@hoganlovells.com
- Jessica Black Livingston    jessica.livingston@hoganlovells.com
- Ralph R. Mabey    rmabey@kmclaw.com
- Adelaide Maudsley    amaudsley@kmclaw.com, tslaughter@kmclaw.com
- Steven J. McCardell    smccardell@djplaw.com, khughes@djplaw.com
- Scott O. Mercer    som@keslerrust.com
- Krikor J. Meshefejian    kjm@lnbyb.com
- Elijah L. Milne    emilne@djplaw.com, pbricker@djplaw.com
- Matt Munson    matt@mamunsonlaw.com, chris@mamunsonlaw.com
- Sherilyn A. Olsen    solsen@hollandhart.com,
  slclitdocket@hollandhart.com;intaketeam@hollandhart.com;cfries@hollandhart.com
- Ellen E Ostrow    eeostrow@hollandhart.com,
  mkthurgood@hollandhart.com;intaketeam@hollandhart.com
- A.M. Cristina Perez Soto    cperezsoto@jonesday.com
- Lester A. Perry    lap@hooleking.com, apb@hooleking.com
- David L. Pinkston    bankruptcy_dlp@scmlaw.com
- George W. Pratt    gpratt@joneswaldo.com
- Adam H Reiser    areiser@cohnekinghorn.com
- Walter A Romney    war@clydesnow.com
- John H. Schanne    schannej@pepperlaw.com,
  henrys@pepperlaw.com;molitorm@pepperlaw.com
- Chris L. Schmutz    chrisschmutz.pc@gmail.com,
  hillaryschmutz@yahoo.com;r60588@notify.bestcase.com
- Jeremy C. Sink    jsink@mbt-law.com
- Stephen Styler    steve@stylerdaniels.com
- Richard C. Terry    richard@tjblawyers.com, cbcecf@yahoo.com
- Jeff D. Tuttle    jtuttle@swlaw.com, jpollard@swlaw.com;docket_slc@swlaw.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Jessica P Wilde    jwilde@joneswaldo.com
- Mark W Williams    mwilliams@shermanhoward.com,
  dfouts@shermanhoward.com;efiling@sah.com;bmcalister@shermanhoward.com
- Kim R. Wilson    bankruptcy_krw@scmlaw.com
- Laura J. Wolff    ljw@cjmlv.com
- Lee E. Woodard    lwoodard@harrisbeach.com
- Beth Ann R. Young    bry@Lnbyb.com
- P. Matthew x2Cox    bankruptcy_pmc@scmlaw.com
- Gale K. x6Francis    txbk13@utah.gov

**By U.S. Mail/ Manual Notice List**:

**Donald J. Detweiler**
Pepper Hamilton, LLP
Hercules Plaza, Suite 5100
1313 North Market Street

P.O. Box 1709
Wilmington, DE 19899-1709

**Epiq Bankruptcy Solutions, LLC**
777 Third Ave, 12th Floor
New York, NY 10017

**FTI Consulting, Inc.**
1001 17th St. #1100
Attn: David Beckman
Denver, CO 80202

**Francis J. Lawall**
Pepper Hamilton
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799

**Levene, Neale, Bender, Yoo & Brill L.L.P.**
10250 Constellation Blvd.
Suite 1700
Los Angeles, CA 90067