**This order is SIGNED.**

**Dated: June 1, 2018**



**WILLIAM T. THURMAN
U.S. Bankruptcy Judge**



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Case No. 16-24818 |
| CS MINING, LLC, | Chapter 11 |
| Debtor. | Honorable William T. Thurman |

## MEMORANDUM DECISION

The matters before the court are the *Motion of Tamra Mining Company, LLC* ("Tamra") *to Enforce Sale Order and Enjoin and/or Dismiss Purchased Claims* ("Tamra's Motion to Enforce" or "Tamra's Motion"), filed February 15, 2018;[1] Noble Americas Corporation's ("Noble") *Motion to Enforce Order Granting Motion Pursuant to Federal Rules of Bankruptcy Procedure 9019 and 7041 to Approve Stipulation for Dismissal with Prejudice by and between CS Mining, LLC and Noble Americas Corp. and to Enjoin Prosecution of Claims* ("Noble's Motion to Enforce" or "Noble's Motion"), filed March 9, 2018;[2] and the *Cross-Motion of Clarity*

---

[1] Case No. 16-24818, Docket. No. 1120. All references to the Docket will be to the main bankruptcy case, which is Case No. 16-24818, unless otherwise specified.
[2] Docket No. 1217.

*Copper, LLC* ("Clarity") *and Skye Mineral Investors, LLC* ("SMI") *to Stay the Motion of Tamra Mining Company, LLC to Enforce Sale Order and Enjoin and/or Dismiss Purchased Claims* (the "Cross-Motion"), filed February 22, 2018.[3] [4]

On March 6, 2018, the Court conducted a preliminary hearing. David Leta appeared for CS Mining, LLC ("Debtor" or "CS"); Adelaide Maudsley, Paul Huck, and Amanda Parra Criste represented Tamra; Kenneth Cannon and Jason Cyrulnik represented SMI and Clarity; James Anderson and Walter Romney appeared for Noble.[5]

At the preliminary hearing, the Court and the parties agreed to a briefing schedule, and the parties agreed that the Court would consider two issues at the final hearing: (1) whether the Court has jurisdiction to grant the relief requested by Tamra and Noble; and (2) whether the claims asserted by SMI and Clarity in the Delaware Action were claims belonging to CS that were subsequently transferred by sale to Tamra or released as a result of the CS Mining-Noble settlement agreement.[6]

Subsequent to the preliminary hearing, the Court held an evidentiary hearing on April 25, 2018, and received evidence and further oral argument from the parties. Appearances at the evidentiary hearing were made on the record. Following the evidentiary hearing, the Court took the matter under advisement.

---

[3] Docket No. 1154.
[4] When Tamra and Noble are referred to collectively, this Court will address them as the "Movants." Similarly, when Skye Mineral Investors and Clarity Copper are referred to collectively, this court will address them as the "Cross-Movants."
[5] Any other appearances were listed on the record.
[6] Order Regarding Final Hearing on (I) Tamra Mining Company Motion to Enforce Sale Order, (II) Clarity Copper, LLC And Skye Mineral Investors, LLC Cross-Motion to Stay, and (III) Noble Americas Corp. Motion, Docket No. 1216.

The Court has carefully reviewed and considered the parties' arguments and submissions and has conducted its own independent research of the relevant case law. The Court issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 9014 and 7052.[7]

As set forth herein, the Court finds that it lacks jurisdiction to afford the relief requested by Tamra and Noble. Thus, the Court denies Tamra's Motion to Enforce and Noble's Motion to Enforce; accordingly, it is not necessary to rule on Clarity Copper and Skye Mineral Investor's Cross-Motion to Stay.

I. **Notice**

Notice is found to be adequate.

II. **Facts and Background**

A. **The Organization and Businesses of the Parties**

To provide some context to this decision, the Court will now provide a brief summary of the pertinent facts.[8] Although this recitation is ostensibly disordered, the Court has embraced the

---

[7] Any of the findings of fact herein are also deemed to be conclusions of law, and any conclusions of law herein are also deemed to be findings of fact, and they shall be equally binding as both.

[8] The facts set forth in this decision are based on: Tamra's Motion to Enforce, Docket No. 1120; Noble's Motion to Enforce, Docket No. 1217; Cross-Motion of Skye Mineral Investors and Clarity Copper, Docket No. 1154; Objection of Clarity and SMI to Noble's Motion to Enforce, Docket No. 1230; Debtor's First Amended Combined Disclosure Statement and Chapter 11 Plan Of Liquidation, Docket No. 1262; Declarations of Jason C. Cyrulnik, Docket No. 1222, Docket No. 1231, Docket No. 1239; Preliminary Response to Cross-Motion of Clarity and SMI, Docket No. 1197; Tamra's Objection to Cross-Motion of Clarity and SMI, Docket No. 1220; Objection of Clarity and SMI to Tamra's Motion to Enforce, Docket No. 1221; Tamra's Reply in Support, Docket No. 1237; Noble's Reply in Support, Docket No. 1236; Clarity and SMI's Reply in Support, Docket No. 1238; CS Mining's Omnibus Response, Docket No. 1200; Support Documents, Docket No. 1240, Docket No. 1241, Docket No. 1242.

3

pointillist approach, which the Court believes will provide a coherent chronology when the entire decision is considered.

CS Mining was formed in June 2011 as a limited liability company under Delaware law for the purpose of purchasing substantially all of the assets of Western Utah Copper Company ("WUCC") and Copper King Mining Corporation ("CKMC"), both of which were selling their assets in the course of their respective Chapter 11 cases.

Three separate members comprise the ownership of the Debtor, namely (i) Skye Mineral Partners ("SMP"); (ii) Robert Reynolds, as representative of the first lien lenders under the Equity Administration Agreement by and among the former first lien lenders of WUCC and CKMC; and (iii) CKMC. However, SMP is the majority controlling member, holding 99.25% of the overall units (common and preferred) of the Debtor; CKMC owns only 0.12% of the overall units, and Mr. Reynolds holds the remaining 0.62% overall units of the Debtor. In turn, SMP is owned by DXS Capital Ltd., PacNet Capital Ltd., Skye Mineral Investors, LLC, and Clarity Copper, LLC.

Prior to bankruptcy, the Debtor controlled approximately 60,000 acres of mineral rights in southern Utah, where it mined and processed copper, gold, and silver. Management of the Debtor was handled by the Debtor's board, which—at the time of the petition—included Marshall Cooper, David Richards, and Clinton Walker. These individuals also sat on the board of SMP, the majority owner of the Debtor; however, day-to-day operations of the Debtor were overseen by David McMullin, President and Chief Executive Officer, along with certain other individuals.

    **B.  The Noble Loan Agreement**

On August 12, 2014, Noble and the Debtor entered into a loan agreement ("The Noble Loan Agreement") under which Noble loaned the Debtor $30 million, and the Debtor granted Noble a security interest in substantially all of its assets; this security interest was junior in priority to the liens, claims, and security interests granted to WUMI, a previous lender. The Noble Loan Agreement was amended four times. The Debtor did not make any payments on the loan, and in November 2015, Noble informed the Debtor of the default and of Noble's right to accelerate payments and foreclose on the Debtor's assets.

Subsequent to this notice, the Debtor and Noble agreed to a fourth amendment to the loan agreement (the "Fourth Amendment"). Under the Fourth Amendment, Noble waived some of the Debtor's events of default, and the Debtor granted Noble a full release of the Debtor's past and present claims.

On December 31, 2015, Noble sold the Noble Loan to Waterloo Street Limited and its affiliates, DXS Capital Ltd., PacNet Capital Ltd., Lippo China Resources Ltd., Tamra, and others (the "Waterloo Parties," collectively).

On February 17, 2017, the Debtor commenced an adversary proceeding in this Court against Noble and Waterloo Street Limited.[9] The Debtor asserted causes of action for equitable subordination of the Noble claim, declaratory judgment, disallowance of the Noble claim, and breach of contract. On December 12, 2017, the Debtor and Noble entered into a stipulation for dismissal with prejudice in order to resolve the adversary proceeding.[10] The stipulation stated that "any and all claims between [Debtor and Noble and Waterloo Street Limited] that have

---

[9] Complaint, CS Mining, LLC v. Noble Americas Corp., Case No. 17-02025 (Bankr. D. Utah Feb. 17, 2017), Docket No. 1.
[10] Stipulation for Dismissal with Prejudice, Docket No. 1019, Ex. A.

been, or could have been, asserted, shall be dismissed, with prejudice."[11] The Court, in its Order dated January 8, 2018, approved the stipulation and incorporated the stipulation's terms into its Order ("Settlement Order").[12]

### C. The Involuntary Petition

On June 2, 2016, several creditors of the Debtor, including Bayer Professional Geologist, LLC; Mineral Advisory Group, LLC; and Rollins Construction & Trucking, LLC, filed an involuntary Chapter 11 petition against the Debtor.[13] After attempting to negotiate debtor-in-possession financing, the Debtor consented to an order for relief in the bankruptcy case;[14] the Court entered the Order for Relief on August 4, 2016.[15] Following the Order for Relief, the Debtor continued to operate its business as a debtor in possession consistent with 11 USC §§ 1107 and 1108. On August 12, 2016, the US Trustee appointed a Committee of Unsecured Creditors.[16] And, ultimately, this Court confirmed the Debtor's Chapter 11 Plan on April 5, 2018.[17]

### D. Debtor's Sale of Assets to Tamra

Prior to confirmation, in August 2017, the Debtor sold substantially all of its assets at auction to Tamra.[18] According to the purchase agreement, and as provided in this Court's Order

---

[11] *Id.* at 1.
[12] Order Granting Motion Pursuant to Federal Rules of Bankruptcy Procedure 9019 and 7041 to Approve Stipulation for Dismissal with Prejudice by and between CS Mining, LLC and Noble Americas Corp., Docket No. 1042.
[13] Involuntary Petition Against a Non-Individual, Docket No. 1.
[14] Notice of Filing Letter to the Court and Proposed Form of Order, Docket No. 128.
[15] Order for Relief, Docket No. 130.
[16] Appointment of Unsecured Creditors' Committee, Docket No. 181; Notice of Appointment of Reconstituted Unsecured Creditors' Committee, Docket No. 548.
[17] Order Confirming Debtor's First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation, Docket No. 1281.
[18] Motion of Debtor for Entry of (I) an Order (A) Approving Bidding Procedures in Connection with Sale of Substantially All of the Estate's Assets, (B) Approving Expense Reimbursement,

approving sale entered on August 18, 2017 ("Sales Order"),[19] the assets sold by Debtor to Tamra included "any and all Claims of the Debtor or the Debtor's Estate against any of the Waterloo Parties, including, but not limited to, all causes of action under chapter 5 of the Bankruptcy Code."[20]

### E. The Adversary Proceedings Initiated in This Court and the Delaware Court of Chancery

On July 21, 2016, Waterloo and PacNet filed claims in this Court against several parties, including SMI and Clarity Copper, for equitable subordination of claims, recharacterization of debt as equity, and tortious interference.[21] Waterloo and PacNet obtained leave from the Court to amend their complaint,[22] and their amended complaint was filed July 11, 2017.[23]

On January 24, 2018, Clarity and SMI (the "Delaware Plaintiffs") initiated an action against the Waterloo Parties (the "Delaware Defendants") in the Delaware Court of Chancery ("Delaware Action").[24] The Delaware Plaintiffs asserted fourteen causes of action for fraud,

---

(C) Scheduling an Auction and Hearing to Consider the Proposed Sale, and (D) Approving the Form and Manner of Notice thereof; (II) an Order (A) Approving the Sale, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief, Docket No. 365.

[19] Order (A) Approving the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests Pursuant to Sections 105, 363(b), (f) and (m) of the Bankruptcy Code, (B) Approving the Assumption, Assignment, and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Sections 363 and 365 of the Bankruptcy Code and Related Cure Amounts, and (C) Granting Related Relief, Docket No. 895.

[20] Asset Purchase Agreement, Docket No. 844, Ex. A, Art. 2 ¶ u.

[21] Complaint, *Waterloo Street Ltd. v. David Richards, LLC*, Case No. 16-02118 (Bankr. D. Utah July 21, 2016), Docket No. 1.

[22] Order Granting Waterloo Street Ltd. and PacNet Capital (U.S.) Ltd.'s Motion for Leave to Amend Complaint, *Waterloo*, Case No. 16-02118 (Bankr. D. Utah July 6, 2017), Docket No. 50.

[23] First Amended Complaint, *Waterloo*, Case No. 16-02118 (Bankr. D. Utah July 11, 2017), Docket No. 51.

[24] Verified Complaint, Docket No. 1231, Ex. 1. Originally, DXS Capital (U.S.) Limited, PacNet Capital (U.S.) Limited, Marshall Cooper, Sanjiv Noronha, Waterloo Street Limited, Lippo China

breach of contract, and breach of fiduciary duty. In February 2018, the Delaware Defendants removed the Delaware Action to the Bankruptcy Court for the District of Delaware; however, the removal was met with an ensuing motion to remand back to the state court.[25] Additionally, the Delaware Defendants have moved to change the venue of the Delaware Action to Utah.[26] To the Court's knowledge, those motions remain pending.

On January 25, 2018, Clarity, SMI, and the other Defendants to the adversary proceeding begun in this Court in July 2016 filed their amended answer to the first amended complaint and counterclaims.[27] The counterclaims are very similar to and largely coextensive with claims in the Delaware Action.[28]

Responding to the amended answer, on February 15, 2018, Tamra filed its Motion to Enforce in the main bankruptcy case here. In Tamra's Motion, it seeks to enjoin the Delaware Plaintiffs from pursuing their claims alleging that the claims are already subsumed in the Sale Order and are therefore barred. Noble, similarly, contends that the Delaware Plaintiffs are

---

Resources Ltd. Michael Riady, Stephen Riady, Tamra Mining Company, LLC, and Noble Americas Corp. comprised the "Delaware Defendants"; however, Tamra was later removed from the Delaware Action. Verified Amended Complaint, Docket No. 1231, Ex. 2.

[25] Notice of Removal of Civil Action, Skye Mineral Investors, LLC v. DXS Capital (U.S.) Ltd., Misc. Pro. No. 18-00101 (LSS) (Bankr. D. Del. Feb. 16, 2018), ECF No. 1; Plaintiffs' Motion for Abstention and to Remand the Delaware Action to the Court of Chancery of the State of Delaware, *Skye*, Misc. Pro. No. 18-00101 (LSS) (Bankr. D. Del. Mar. 2, 2018), ECF No. 19.

[26] Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. §§ 1404 and 1406, *Skye*, Misc. Pro. No. 18-00101 (LSS) (Bankr. D. Del. Feb. 16, 2018), ECF No. 3.

[27] Amended Answer of David Richards, Clinton Walker, David McMullin, Clarity Copper, LLC, And Skye Mineral Investors, LLC to First Amended Complaint and Counterclaim of Clarity Copper, LLC, And Skye Mineral Investors, LLC; Demand For Jury Trial, *Waterloo*, Case No. 16-02118 (Bankr. D. Utah Jan. 25, 2018), Docket No. 76.

[28] Cross-Motion of Clarity Copper, LLC and Skye Mineral Investors, LLC to Stay the Motion of Tamra Mining Company, LLC to Enforce Sale Order and Enjoin and/or Dismiss Purchased Claims, Docket No. 1154 at 2, fn. 1; Preliminary Response to Cross-Motion of Clarity Copper, LLC and Skye Mineral Investors, LLC to Stay the Motion of Tamra Mining Company, LLC to Enforce Sale Order and Enjoin and/or Dismiss Purchased Claims, Docket No. 1197 at 4 ¶ 4.

advancing claims on behalf of CS Mining that were settled by the CS Mining-Noble settlement agreement. The Cross-Motion of Clarity and SMI aims to stay the Motions of Tamra and Noble until a Delaware court ascertains the nature of the claims in the Delaware Action. The gist of Clarity and SMI's claims is that they have an independent right to proceed against the Delaware Defendants in Delaware Court of Chancery and neither the Settlement Order nor the Sales Order impaired their independent rights.

### III. Jurisdiction

#### A. Tamra's Position

Tamra contends that this Court has core and exclusive jurisdiction; moreover, Tamra insists that this Court is the "only" court with authority to adjudicate its Motion to Enforce.[29] Tamara's view is based on this Court's inherent ability to interpret and enforce its own orders.[30] Tamara further contends that enforcement of the sale order is a core proceeding as the sale itself was a core proceeding.[31] [32] Thus, Tamra concludes it is not asking this Court to create jurisdiction, as a determination of what is property of a debtor's estate is entirely consistent with the plain language of 28 U.S.C. 1334(e), which in relevant part reads, "the district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction . . . of all the

---

[29] Preliminary Response of Tamra to Cross-Motion, Docket No. 1197 at 2.
[30] Tamra's Objection to the Cross-Motion, Docket No. 1120 at 8. Tamra looks to *Travelers Indem. Co v. Bailey* for authority. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009). This Court discusses the potency *Travelers* at fn. 47 hereunder.
[31] "Core proceedings are, at most, those that arise in title 11 cases or arise under title 11," ("arise in" and "arise under" jurisdiction are discussed in greater detail in Subsection D of this decision) which bankruptcy judges may "hear and determine" and for which they may "enter appropriate orders and judgments." 1 Collier on Bankruptcy ¶ 3.02 (16th ed. 2018) (explaining 28 U.S.C. 157(b)(1)).
[32] Tamra's Objection to the Cross-Motion, Docket No. 1120 at 8. Tamra cites to *In re Star Acquisition III* for this contention, which is discussed in greater detail below. *In re Star Acquisition III*, LLC, 368 B.R. 85 (10th Cir. BAP 2007).

property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."[33] Tamra next argues that the Sales order, which contains retention of jurisdiction language, also invokes this Court's continued jurisdiction to interpret and enforce the order.[34]

Lastly, Tamra asserts that this Court has the authority to enjoin the prosecution of claims in the Delaware Court because doing so is necessary to carry out the Sales Order.[35] This view, the Court observes, requires the Court to reach into the Delaware Action to examine each cause of action.

### B. Noble's Position

Noble takes a position quite similar to Tamra's, as Noble too asserts that this Court has jurisdiction to enforce its own orders and to enjoin actions that are contrary to its orders.[36] Specifically, Noble maintains that claims brought against the Waterloo Parties in both the Utah

---

[33] Tamra's Objection to the Cross-Motion, Docket No. 1120 at 8-10. Tamra cites to *In re Touch Am. Holdings, Inc.*, which this Court declines to follow. *In re Touch Am. Holdings, Inc.*, 401 B.R. 107, 117 (Bankr. D. Del. 2009). *See* fns. 52, 54 hereunder.

[34] *E.g.*, Tamra's Motion to Enforce, Docket No. 1120 at 15 ¶ 27; *See* Tamra Order (A) Approving the Sale of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests Pursuant to Sections 105, 363(b), (f) and (m) of the Bankruptcy Code, (B) Approving the Assumption, Assignment, and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Sections 363 and 365 of the Bankruptcy Code and Related Cure Amounts, and (C) Granting Related Relief, Docket No. 895 ¶ 61.

[35] Tamra's Reply in Support, Docket No. 1237 at 15. Tamra calls on language from *White v. Kubotek Corp*. *White v. Kubotek Corp.*, 487 B.R. 1 (D. Mass. 2012). Although jurisdiction is discussed at length below, this Court briefly addresses this point. In *Kubotek*, an engineer sold the rights to his software to a company that later filed for bankruptcy protection; the software rights were subsequently sold to third-party purchaser under the bankruptcy case. *Id.* The engineer objected to the sales motion, but his objection was overruled. *Id.* He filed numerous proceedings in an attempt to undermine the sale and was barred from filing further pleadings objecting to the sale by the bankruptcy court, which decided it had jurisdiction over the matter. It is of import here that the bankruptcy court maintained jurisdiction because the engineer's claims "depend[ed] on an interpretation of the Bankruptcy Court's Sale Order" and were "an attack on [the order's] legitimacy." *Id.* at 7. This is dissimilar to the situation presently before this Court.

[36] Noble cites to many of the same cases identified by Tamra. Noble's Motion to Enforce, Docket No. 1217 at 6-7.

Adversary Proceeding and in the Delaware Court were settled and released as a result of this Court approving the settlement agreement between the Debtor and Noble.[37]

### C.  Clarity and SMI's Position

With regard to Tamra's Motion and Noble's Motion, Clarity and SMI allege that this Court does not have jurisdiction to award the relief requested by the Movants.[38] In particular, the Cross-Movants argue that this Court has neither core nor related jurisdiction over the Delaware claims because all parties to the Delaware Action are non-debtors and the resolution of these claims will have no effect on the administration of the Debtor's estate.[39] Additionally, as previously mentioned, the Cross-Movants emphasize that the Delaware Claims seek relief from harms done directly to them or singly derivatively on behalf of SMP.[40] Finally, they maintain that the Settlement Order between the Debtor and Noble and Sales Order between the Debtor and Tamra cannot somehow create jurisdiction where it is otherwise lacking.[41]

### D.  This Court's View of Jurisdiction

The question of jurisdiction is of paramount importance, as Justice Scalia once articulated, "[w]ithout jurisdiction the court cannot proceed at all in any cause."[42] Moreover,

---

[37] Reply in Support of Noble's Motion to Enforce, Docket No. 1236 at 14.

[38] This Court recognizes that would have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)). Similarly, the Court of Appeals for the Tenth Circuit highlighted that "[courts] have a duty to address jurisdiction sua sponte when [they] notice a substantial question regarding the court's jurisdiction." *Columbian Financial Corp. v. Bancinsure, Inc.*, 650 F.3d 1372, 1375-6 (10th Cir. 2011) (citing *Tafoya v. U.S. Dep't of Justice*, 748 F.2d 1389, 1390 (10th Cir.1984)); *see Gad v. Kansas State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015) ("We always have an independent obligation– no matter the state of litigation– to consider whether a case creates a live case or controversy and belongs in federal court.").

[39] Objection of Clarity and SMI to Noble's Motion to Enforce, Docket No. 1230 at 1.

[40] Reply Memorandum of Clarity and SMI, Docket No. 1238 at 2.

[41] Objection of Clarity and SMI to Tamra's Motion to Enforce, Docket No. 1221 at 9.

[42] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

"Congress has the constitutional authority to define the jurisdiction of the lower federal courts, and, once the lines are drawn, limits upon federal jurisdiction must be neither disregarded nor evaded."[43] To that end, 28 U.S.C. § 1334 provides that:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Congress then authorized district courts to refer such title 11 matters to bankruptcy courts pursuant to 28 U.S.C. §157(a), which specifies that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Consequently, "[b]ankruptcy courts have only the jurisdiction and powers expressly or by necessary implication granted by Congress."[44] Taken together, as the Supreme Court noted, "Congress has divided bankruptcy proceedings into three categories: those that "aris[e] under title 11"; those that "aris[e] in" a Title 11 case; and those that are "related to a case under title 11" and "District courts may refer any or all such proceedings to the bankruptcy judges of their district."[45] [46]

---

[43] *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993).
[44] *In re Gardner*, 913 F.2d 1515, 1517 (10th Cir. 1990).
[45] *Stern v. Marshall*, 564 U.S. 462, 473 (2011).
[46] This Court observes that in recent years the Supreme Court has addressed the topic of bankruptcy court jurisdiction three times; these decisions have commented on what had been argued as the apparent "encroachment" of bankruptcy courts into areas reserved strictly for adjudication by Article III judges. *See Stern v. Marshall*, 564 U.S. 462, 473 (2011); *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 189 L.Ed.2d 83 (2014); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 191 L.Ed.2d 911 (2015); *see also Renewable Energy Development Corp. v. Loveridge*, 792 F.3d 1274 (10th Cir. 2015) (discussing *Stern* claims). Based upon this Court's interpretation of the guidance from the Supreme Court, it is with all due caution that this Court approaches the question of jurisdiction in the present matter.

With that overview of the Congressional and Constitutional grant of jurisdiction to the bankruptcy courts, the Court now turns to the jurisdictional question immediately before it. While presumably a mere inquiry into this Court's undoubted power to enforce its own orders,[47] the Court considers it appropriate to reframe the question into its constituent, interdependent parts: (1) does this Court have jurisdiction to make a determination regarding what the Delaware Plaintiffs are asserting in their litigation; and (2) does this Court have the authority to enjoin external litigation brought by non-debtors? With this reassessment in mind, this Court now undertakes a jurisdictional analysis of each prong.

"Arising under" jurisdiction, as interpreted in this circuit, requires that an asserted cause be created by the Bankruptcy Code, "such as exemption claims under § 522, avoidance action under § 544, or claims of discrimination under § 525."[48] None of the parties has opined that "enforcement" of a sales order or order approving a settlement is a cause of action under the Bankruptcy Code.[49] Accordingly, this Court does not find it has "arising under" jurisdiction to evaluate the claims being championed in the Delaware Action.

---

[47] This Court does not dispute that it may, just as other bankruptcy courts, issue orders necessary to carry out its duties under the Bankruptcy Code pursuant to 11 U.S.C. 105(a), which allows it to "tak[e] any action . . . necessary or appropriate to enforce or implement court orders or rules." See *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009); *In re Lacy*, 335 B.R. 729, 738 (10th Cir. BAP 2006). However, this Court believes that Tamra's reading of *Travelers* is overly broad, as the Supreme Court itself noted, "[o]ur holding is narrow. We do not resolve whether a bankruptcy court, in 1986 or today, could properly enjoin claims against nondebtor insurers that are not derivative of the debtor's wrongdoing . . . [n]or do we decide whether any particular respondent is bound by the 1986 Orders." *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 155 (2009). That being said, a further discussion of whether this Court may enjoin the Delaware Action is not undertaken in this decision for the reason outlined in the remainder of this section: a lack of jurisdiction to make a determination on the nature of the Delaware Claims.
[48] *In re Midgard Corp.*, 204 B.R. 764, 771 (10th Cir. BAP 1997).
[49] *See* 11 U.S.C. §§ 101–1532 (2012).

The court next looks for "arising in" jurisdiction. This source of jurisdiction arises from proceedings "that could not exist outside of a bankruptcy case, but that are not causes of action created by the code. For example, orders respecting the obtaining of credit, confirmation of a plan, the assumption or rejection of a contract are all matters which could not exist absent the filing of a bankruptcy case, but are not causes of action created by the Bankruptcy Code."[50] Tamara and Noble assert that this Court has "arising in" jurisdiction, as this Court approved the sales agreement between the Debtor and Tamara and the settlement agreement between Noble and the Debtor, which allows this Court to enjoin actions that undermine these agreements.[51] While Tamra and Noble cite to a number of cases that appear to support their broad approach to jurisdiction,[52] the significant majority come from other circuits,[53] and this Court declines to follow their determinations, just as other courts have likewise declined to do.[54] Tamra and Noble have referenced two possibly controlling Tenth Circuit cases, *In re Star Acquisition III* and *CW Mining*. In *Star Acquisition*, a debtor owned oil wells, which were sold free and clear of encumbrances and liens to an unrelated company; however, a dispute arose over whether certain taxes were due from the debtor or from the purchaser after a taxing authority attempted to place a lien on the purchased oil wells.[55] The Bankruptcy Appellate Panel of the Tenth Circuit, which heard the appeal, remanded the proceeding back to the bankruptcy court with instructions to

---

[50] *In re Midgard Corp.*, 204 B.R. 764, 771 (10th Cir. BAP 1997).
[51] *E.g.*, Tamra's Reply in Support, Docket No. 1237 at 13 ¶ 19; Noble's Motion to Enforce, Docket No. 1217 at 6-7.
[52] *See, e.g.*, *In re Touch Am. Holdings, Inc.*, 401 B.R. 107, 117 (Bankr. D. Del. 2009); *but see Zerand-Bernal Grp. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994) (finding no "arising in" jurisdiction to enjoin a lawsuit purportedly precluded by a sales agreement approved by a bankruptcy court).
[53] *See, e.g.*, *In re Gawker Media, LLC*, No. 16-11700 (SMB), 2017 WL 6397727, at *4 (Bankr. S.D.N.Y. Dec. 13, 2017).
[54] *See, e.g.*, *Nat'l Beef Leathers, LLC v. Prime Tanning Corp.*, No. 2:11-CV-04004-NKL, 2011 U.S. Dist. LEXIS 31867, at *9 (W.D. Mo. Mar. 28, 2011).
[55] *In re Star Acquisition III, LLC*, 368 B.R. 85 (10th Cir. BAP 2007).

determine when the tax liability arose, as that would control whether the sales order was implicated.[56] Beyond the factual underpinnings of *Star Acquisition*, which are quite dissimilar to the matter presently before this Court, the bases for the relief requested are notably different. In *Star Acquisition*, a taxing authority was attempting to attach a lien to purchased property, possibly contrary to the express language of the statute and sales order;[57] however, in their respective Motions to Enforce, Tamra and Noble argue that the Delaware Plaintiffs are asserting claims in Delaware that were either purchased by Tamra or settled by Noble, a significantly more removed basis for relief from the Bankruptcy Code, which this Court determines does not invoke "arising in" jurisdiction and accordingly this argument is not availing. Similarly, this Court observes that *CW Mining* is factually distinct from the instant matter. In *CW Mining*, the purchaser of a debtor's assets, primarily a lease to operate a coal mine, filed suit against the lessor of the mine; both the purchaser and the lessor agreed that the dispute involved interpretation and enforcement of the sales order, as the bankruptcy court specifically included significant findings of fact and conclusions of law that related to an earlier dispute between the debtor and lessor over certain language contained in the lease.[58] In the present matter, as stated previously, there is no dispute about the particular verbiage found in the Sales Order, instead the dispute centers on a purchaser, who suspects that another entity is using its property, i.e. claims it purchased (or settled in the case of Noble) from the Debtor. Consequently, without a clear instruction from the appellate courts of this circuit, the question of "arising in" jurisdiction must turn on whether the Motions to Enforce could exist outside of a bankruptcy case;[59] this Court

---

[56] *Id.*
[57] *Id.*
[58] *In re C.W. Min. Co.*, No. 2:12-CV-418 TS, 2012 WL 4882295, at *1 (D. Utah Oct. 15, 2012).
[59] *See Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 835 (4th Cir. 2007) ("a controversy arises in Title 11 when it would have no practical existence but for the bankruptcy.")

finds that they could. Because there is no dispute about the terms of the Sales Order or Settlement Order, the crux of the matter is essentially a dispute over property between two non-debtor third parties—not an interpretation of what the order says. These type of disputes could and are routinely resolved in other, non-bankruptcy courts. Thus, this Court concludes it does not have "arising in" jurisdiction to resolve Tamra's and Nobles contentions.

Although the Delaware Plaintiffs assert causes of action that could exist outside of a bankruptcy case and were not created by the Bankruptcy Code, bankruptcy courts have one more area of jurisdiction, "related to" jurisdiction, which may bring the claims in the Delaware Action under this Court's purview. This grant of jurisdiction is the broadest of the three,[60] as this jurisdiction arises if a proceeding "could have been commenced in federal or state court independently of the bankruptcy case, but the outcome of that proceeding could conceivably have an affect [sic] on the estate being administered in bankruptcy."[61] While it might appear that suits between non-debtor third parties could never come under the jurisdiction of a bankruptcy court, this is not so. The Court of Appeals for the Tenth Circuit provided a test for courts to consider when determining if they possess "related to" jurisdiction over a proceeding, namely "the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way."[62] In other words, a "bankruptcy court lacks

---

(quoting *Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir. 2003)) (internal quotation marks omitted).

[60] *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307–08 (1995) ("Congress did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of some breadth.") (agreeing with the Court of Appels for the Third Circuit that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (1984)).

[61] *In re Midgard Corp.*, 204 B.R. at 771.

[62] *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990).

related jurisdiction to resolve controversies between third party creditors which do not involve the debtor or his property unless the court cannot complete administrative duties without resolving the controversy."[63] In the present case, Noble, Tamra, and the Delaware Plaintiffs all agree that the resolution of the Delaware Action will have no effect on the Debtor or its bankruptcy estate.[64] Thus, this court finds no "related to" jurisdiction because these disputes will not affect the administration of the CS Mining's bankruptcy case.[65]

As noted previously, Tamara also alleges that this Court maintains jurisdiction over this matter pursuant to the "retention of jurisdiction" language found in the Sales Order.[66] However, this Court is not persuaded by this argument; this Court elects to follow the reasoning set forth by the Third Circuit Court of Appeals in *Binder v. Price Waterhouse*, which provided a succinct commentary on the efficacy of such language, when it remarked that where a bankruptcy court lacks jurisdiction, retention of jurisdiction provisions are "fundamentally irrelevant."[67] Moreover, the *Binder* Court wrote, "neither the bankruptcy court nor the parties can write their

---

[63] *Id.*

[64] Clarity and SMI state, "[t]his Court neither has 'core' jurisdiction . . . nor 'related to' jurisdiction where all of the parties to the Delaware Claims are non-debtors and the resolution of these claims will have no effect on the administration of the Debtor's estate." Objection of Clarity and SMI to Noble's Motion to Enforce, Docket No. 1230 at 1. The statement that the Debtor's estate will not be affected by the outcome of this proceeding does not appear to be controverted by Tamra or Noble. *See* Noble's responsive pleadings, Docket No. 1217, Docket No. 1236; Tamra's responsive pleadings, Docket No. 1237, Docket No. 1197, Docket No. 1120, Docket No. 1220.

[65] Courts have found that while initially broad, "related to" jurisdiction diminishes when a plan of reorganization has been confirmed. *See In re Houlik*, 481 B.R. 661, 675 (10th Cir. BAP 2012); *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 164–65 (3d Cir. 2004). However, even when viewed in the broadest of lights, this Court finds it has no "related to" jurisdiction.

[66] *E.g.*, Tamra's Objection to Cross-Motion of Clarity and SMI, Docket No. 1220 at 9 ¶ 11.

[67] *See Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 164–65 (3d Cir. 2004).

17

own jurisdictional ticket."[68] In view of that, the Third Circuit concluded that retention of jurisdiction provisions would only be given effect if the bankruptcy court actually possessed subject-matter jurisdiction.[69] More recently, the Court of Appeals for the First Circuit has also considered retention of jurisdiction provisions; similarly, it found a bankruptcy court does not retain jurisdiction simply because the court approved a sales agreement and issued an order with a retention of jurisdiction clause.[70] The "source of the bankruptcy court's subject matter jurisdiction" is not the Bankruptcy Code, the First Circuit Court emphasized, but "28 U.S.C. §§ 1334 and 157."[71] Accordingly, because this Court previously determined it lacked subject matter jurisdiction pursuant to 28 U.S.C §§ 1334 and 157, the retention of jurisdiction provisions in the Sales Order and Settlement Order too fail to provide this Court with subject matter jurisdiction.

Jurisdiction not being found in the initial prong, inquiry into the second prong of the jurisdictional question is unnecessary.

## IV. Conclusion

As this Court finds that it does not have jurisdiction to make a determination on the initial question, there is no need to for this Court to address further the questions of whether the claims asserted by SMI and Clarity were claims belonging to Debtor that were subsequently transferred by sale to Tamra or released as a result of the CS Mining-Noble settlement agreement or whether

---

[68] *Id.* (citing *In re Continental Airlines, Inc.*, 236 B.R. 318, 323 (Bankr. D. Del. 1999), *aff'd*, 2000 WL 1425751 (D. Del. September 12, 2000), *aff'd*, 279 F.3d 226 (3rd Cir. 2002); *accord United States Trustee v. Gryphon at the Stone Mansion*, 216 B.R. 764, 769 (W.D. Pa. 1997) ("A retention of jurisdiction provision within a confirmed plan does not grant a bankruptcy court jurisdiction."), *aff'd*, 166 F.3d 552 (3d Cir. 1999)).
[69] *See Binder v. Price Waterhouse & Co., LLP*, 372 F.3d 164-65.
[70] *See Gupta v. Quincy Med. Ctr.*, 858 F.3d 657 (1st Cir. 2017).
[71] *Id.* at 663-664 (citing *U.S. Brass Corp. v. Travelers, Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d 296, 303 (5th Cir. 2002)) (internal quotation marks omitted).

18

it should grant Tamra's Motion to Enforce and Noble's Motion to Enforce. The Court will enter a separate order consistent with this Memorandum Decision.