Martin J. Brill (Calif. Bar No. 53220)
Philip A. Gasteier (Calif. Bar No. 130043)
Beth Ann R. Young (Calif. Bar No. 143945)
Krikor J. Meshefejian (Calif. Bar No. 255030)
**LEVENE, NEALE, BENDER, YOO & BRILL, L.L.P.**
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:      (310) 229-1234
Facsimile:      (310) 229-1244
Email:          mjb@lnbyb.com; pag@lnbyb.com; bry@lnbyb.com; kjm@lnbyb.com
*Counsel for Official Committee of Creditors Holding Unsecured Claims and Liquidation Trust of CS
Mining, LLC*

David Leta (1937)
Jeff Tuttle (14500)
**SNELL & WILMER L.L.P.**
1500 W South Temple, Suite 1200
Salt Lake City, UT 84101
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
Email: dleta@swlaw.com; jtuttle@swlaw.com
*Local Counsel for Liquidation Trust of CS Mining, LLC*

George Hofmann – Bar No. 10005
**COHNE KINGHORN, A PROFESSIONAL CORPORATION**
111 East Broadway, 11th Floor
Salt Lake City, UT  84111
Telephone:      (801) 415-0132
Facsimile:      (801) 363-4378
ghofmann@cohnekinghorn.com
*Local Counsel for Official Committee of Creditors Holding Unsecured Claims*

---

**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re **CS MINING, LLC**,<br><br>Debtor | Bankruptcy Case No. 16-24818<br><br>(Chapter 11)<br><br>Judge William T. Thurman<br><br>Adv. Pro. Nos.: 18-02064 and 18-02090 |

## MOTION FOR AN ORDER APPROVING SETTLEMENT AGREEMENT AND MUTUAL RELEASE

The Official Committee of Creditors Holding Unsecured Claims of the Bankruptcy Estate of CS Mining, LLC (the "Committee"), and the Liquidation Trust of CS Mining, LLC (the "Trust" and collectively with the Committee, "Plaintiffs"), by and through their undersigned counsel, hereby file this motion (the "9019 Motion") seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Settlement Order") pursuant to Rules 9019 and 7041 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.* as amended, the "Bankruptcy Code"), approving that certain Settlement Agreement And Mutual Release (the " Settlement Agreement") attached hereto as **Exhibit B**, made and entered into by and between the Committee and the Trust on the one hand, and David J. Richards ("Richards"), Clinton Walker ("Walker"), David McMullin ("McMullin"), Clarity Management, L.P. ("Clarity"), and Empire Advisors, LLC ("Empire") (collectively, "Defendants"), on the other hand.  The Settlement Agreement resulted from the Parties' participation in a mediation of the claims and defenses alleged in the Lawsuits (defined below). Defendants and Plaintiffs are referred to collectively in this Motion and in the Settlement Agreement as the "Parties."  In support of the 9019 Motion, Plaintiffs respectfully state as follows:

### I.        BACKGROUND

1.        On June 2, 2016, an involuntary Chapter 11 petition was filed against CS Mining, LLC ("CSM") in this Court and an order for relief was entered on August 4, 2016 (the "Bankruptcy Case").

2.        On February 2, 2018, the Court entered its order granting the Committee standing to pursue CSM's claims against Richards, Walker and McMullin.

3.     On May 22, 2018, the Committee filed an adversary proceeding, bearing Adversary Case No. 18-02064 (the "Committee Lawsuit"), which asserted CSM's claims against Richards, Walker and McMullin.

4.     On October 22, 2018, the Court granted in part the Defendants' motion to dismiss the claims in the Committee Lawsuit for breach of fiduciary duty against Richards and Walker based on their alleged rejection of funding proposals, failing to enjoin WUMI from foreclosing and forcing its conversion of debt to equity, and with respect to the WARN Act.

5.     On January 23, 2019, the Committee filed a First Amended Complaint in the Committee Lawsuit, alleging breach of fiduciary duty and negligence, and requesting the equitable subordination of the claims filed by Richards, Walker, and/or McMullin in the Bankruptcy Case.

6.     The Committee alleges in the Committee Lawsuit that Richards and Walker breached their fiduciary duties to CSM when they approved the construction of a project at a cost of more than $50,000,000, which CSM did not have the financial resources to expend, notwithstanding insufficient testing of the existence of available mining ore reserves, or any determination that sufficient reserves existed and could be extracted profitably. *See* First Amended Complaint, para. 3.  Additionally, the Committee alleges that Richards and Walker breached their fiduciary duties in connection with their participation in, and promotion and approval of, an amendment to a loan agreement, without submitting the amendment to CSM's board of managers, and while Richards and Walker had a conflict of interest, thereby causing debt of approximately $24 million to remain on CSM's books, instead of being converted to equity and freeing up CSM's ability to obtain much needed new capital and new financing. *See id.*

7.    On January 10, 2019, the Court approved a stipulation permitting Defendants an extension of time to respond to the First Amended Complaint until after mediation.

8.    The Committee also alleges in the Committee Lawsuit that McMullin breached his fiduciary duty and was negligent when his actions allegedly exposed CSM to WARN Act liability and penalties in excess of $1,100,000, as well as legal fees and loss of the ability to assert certain defenses to WARN Act liability.

9.    Richards, Walker and McMullin dispute the Committee's allegations and have argued that their actions and decisions with respect to the approval of the financing for the phase II construction are/were based on their business judgment, were approved by all directors and shareholders including by Lippo through its representative Marshall Cooper, were accompanied by substantial equity investments, and were reasonable under the circumstances. McMullin disputes liability with respect to the WARN Act on the grounds that the business judgment rule protects his actions.

10.    The allegations made by the Committee against Richards, Walker and McMullin are fact-intensive, subject to proof, will require an enormous amount of resources to prove through exhaustive discovery, are subject to defenses, and are by no means assured of prevailing.

11.    On July 25, 2018, the Trust filed an adversary proceeding in the Bankruptcy Case against Clarity and Empire, bearing Adversary Case 18-02090 (the "Trust Lawsuit" and collectively with the Committee Lawsuit, the "Lawsuits"), alleging breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty, and requesting the equitable subordination and/or disallowance of all of the claims filed by Clarity and Empire in the Bankruptcy Case.

12.    The Trust alleges in the Trust Lawsuit that Clarity and Empire violated their contractual and fiduciary duties to CSM in connection with numerous matters, including but not limited to, blocking financing, conspiring to prevent conversion of a multi-million dollar secured loan to equity, and wrongful foreclosure. *See* complaint filed in Trust Lawsuit, para. 20. The Trust also alleges in the Trust Lawsuit that Clarity and Empire failed to fulfill their obligations to CSM under a certain "Letter Agreement", by, among other things, failing to provide competent services under the Letter Agreement, and appointing directors who breached their fiduciary duties and other obligations to CSM. *See id.*, para. 49.  The allegations made by the Trust against Clarity and Empire in the Trust Lawsuit are fact-intensive, subject to proof, and will require an enormous amount of resources to prove through exhaustive discovery.  Moreover, Clarity and Empire have filed a motion to dismiss the Trust Lawsuit on the same or similar grounds which the Court partially granted with respect to the Committee Lawsuit (which motion was stayed pending the completion of mediation), dispute the claims therein, and have argued that, to the extent they owe/owed fiduciary duties to CSM, their actions and decisions are/were based on their business judgment, and were reasonable under the circumstances.

13.    Defendants strongly deny that there is any basis for the claims, and further deny any wrongdoing and liability for any claim, asserted or unasserted, known or unknown, in connection with the Lawsuits.  Plaintiffs disagree.

14.    Defendants have filed the following proofs of claim and administrative expense priority claims (the "Proofs of Claim") in the Bankruptcy Case:

a.    Proof of Claim number 20012 in the sum of $341,666.67 filed by Walker.

b.    Proof of Claim number 199 in the sum of $4,141,666.67 filed by Walker and Clarity.

    c.      Proof of Claim number 20011 in the sum of $392,692.49 filed by Clarity.

    d.      Proof of Claim number 20015 in the sum of $683,333.33 filed by Empire.

    e.      Proof of Claim number 200 in the sum of $4,483,333.33 filed by Empire.

    f.      Proof of Claim number 201 in the sum of $4,141,666.67 filed by Clarity.

    g.      Proof of Claim number 20016 in the sum of $192,000 filed by McMullin.

    h.      Administrative Expense Priority Claim in the sum of $199,623.00 filed by

Walker and Clarity on September 26, 2017 [Docket No. 946].

    i.      Administrative Expense Priority Claim in the sum of $199,623.00 filed by

Richards on August 17, 2017 [Docket No. 890].

    15.     On April 30, 2019, the Parties engaged in mediation in Los Angeles, California,

with the Honorable Michael A. Latin (Ret.) serving as mediator.  After a full day of mediation

and extensive negotiations, the Parties, with the assistance of the mediator, were able to reach an

agreement resolving *all* of the disputes between and among them, including, a resolution of the

Lawsuits and the Proofs of Claim.

    16.     In summary, the Settlement Agreement provides that CSM's bankruptcy estate

will receive cash consideration in the amount of $1,500,000.00, and additional consideration

consisting of the withdrawal of the Proofs of Claim of at least $10,234,692.50 of general

unsecured claims and at least $399,246.00 of administrative expense priority claims.   In

exchange, Plaintiffs will dismiss the Lawsuits, with prejudice.  The Settlement Agreement,

therefore, will increase distributions to all other general unsecured creditors by providing the

bankruptcy estate, through the Trust, with additional cash to distribute, as well as by reducing the

total amount of administrative and general unsecured claims against the estate by almost 40%.

The Settlement Agreement will also avoid the costs, delays and risks of highly disputed litigation.

17.    Under the circumstances present here, including the cost, uncertainty and expense of the Lawsuits and the continuing drain on estate resources, along with the related delay in realizing any actual monetary benefit from the Lawsuits (which, even if they are successful, would not provide any immediate cash benefits to the estate), Plaintiffs, in the exercise of their business judgment, have determined that the Settlement Agreement is fair and equitable and is in the best interest of the estate.

18.    Additionally, Plaintiffs respectfully submit that the Settlement Agreement is well within the "range of reasonableness" given (a) the probability of success in the pending litigation; (b) the difficulties and costs associated with proving wrongdoing, liability, and damages; (c) the complexity of the litigation, and attendant expense, inconvenience and delay; and (d) the paramount interests of creditors.

19.    For the reasons set forth herein, Plaintiffs respectfully request that the Settlement Agreement be approved by the Bankruptcy Court.

## II.    JURISDICTION AND VENUE

20.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O).

## III.    THE SETTLEMENT AGREEMENT

21.    The salient terms of the Settlement Agreement, in pertinent part, are as follows:[1]

---

[1] To the extent there is any inconsistency between this summary and the Settlement Agreement itself, the terms of the Settlement Agreement shall govern. Capitalized terms not otherwise defined have the same meaning ascribed to such terms in the Settlement Agreement.

**Consideration Paid on Behalf of Defendants to Liquidating Trust**.  Defendants shall cause their insurance carrier, Arch Insurance Company ("Arch"), to deliver to the Committee the sum of $1,500,000 (One Million Five Hundred Thousand Dollars) (the "Settlement Payment") in care of the Committee's/Trust's counsel Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB").   The Agreement requires the Settlement Payment to be delivered to LNBYB no later than ten days after all Parties have executed the Agreement, and a copy of the fully-executed Agreement has been provided to Arch, along with payee information and a valid Form W-9, and prior to Plaintiffs filing the 9019 Motion.  The Settlement Payment was delivered to LNBYB on June 6, 2019.  LNBYB will hold the Settlement Payment in its trust account pending the Court's consideration of this 9019 Motion. The Settlement Payment shall be deemed to be in the custody of the Bankruptcy Court, and shall remain subject to the jurisdiction of the Bankruptcy Court, until such time as the Settlement Payment shall be released to the Committee/Trust or returned to Arch. Neither the Defendants nor Arch shall bear any responsibility or liability, directly, indirectly or otherwise, for acts or omissions in the handling of the Settlement Payment once delivered to LNBYB.

If for any reason the Court does not grant the 9019 Motion, LNBYB shall within ten days return the Settlement Amount to Arch, plus any interest accrued on the Settlement Amount after it was received by LNBYB.  If LNBYB fails to timely return the Settlement Amount to Arch, plus applicable interest, LNBYB shall be directly liable to Arch for all reasonable fees and expenses Arch may incur to recover the same.

**Defendants' Withdrawal of Proofs of Claim.**   Upon approval of the 9019 Motion, Defendants will withdraw, waive and release all of the Proofs of Claim they filed in the Bankruptcy Case as detailed in Recital H of the Settlement Agreement, as well as any other

proofs of claim or administrative claims filed by them or on their behalf.  Defendants will not

receive any distributions on account of the Proofs of Claim that they filed or any other proofs of

claim or administrative claims that were filed on their behalf.  Plaintiffs agree that execution of

the Settlement Agreement, completion of the Settlement Payment, and withdrawal, waiver and

release of the Proofs of Claim, shall constitute full, final, and complete performance by

Defendants under Paragraph 2 of the Settlement Agreement.  Defendants' obligations under

Paragraph 2 of the Settlement Agreement are conditioned upon Plaintiffs executing and

delivering to counsel for Defendants the following:  (1) fully-executed copies of the Settlement

Agreement; and, (2), any applicable tax ID number(s) and W-9 Forms as may be reasonably

necessary to effectuate the terms and purpose of the Settlement Agreement.  Plaintiffs shall be

solely responsible for their respective obligations to pay federal, state, local or non-U.S. taxes of

any nature that are or may be assessed against them relating to the Settlement Payment.

Plaintiffs and their counsel agree that Defendants make no representation as to the tax

consequences of the Settlement Payment.

**Dismissal of the Lawsuits.**  Within 10 days of entry of a final, non-appealable Order

granting the 9019 Motion, Plaintiffs shall file a request for dismissal of the Lawsuits in their

entirety, with prejudice.  Defendants will use their best efforts to support the 9019 Motion and

will take no action to oppose, directly or indirectly, the 9019 Motion.

**Release by Plaintiffs.**  In exchange for the consideration given in the Settlement

Agreement, Plaintiffs, on behalf of themselves, and as transferee of CSM, as well as past,

present, and future heirs, estates, licensees, sublicensees, agents, representatives, executors,

trustees, attorneys, insurers, successors, and assigns, and all persons or entities acting by,

through, under, or in concert with Plaintiffs, hereby fully and forever release and discharge

Defendants, as well as their respective predecessor and successor companies, parent companies, subsidiaries, affiliated entities, owners, partners, joint venturers, divisions and all related corporate and operating entities, attorneys, officers, directors, employees and agents, producers, independent contractors, representatives, alter egos, shareholders, successors, assigns, licensees, sublicensees, advertisers, and their respective insurers and underwriters and reinsurers, from any and all actions, rights of action, causes, claims, grievances, demands, losses, damages, obligations and liabilities of any kind, whether actual or potential, known or unknown, based in law or equity, arising out of or relating to the facts, circumstances, conduct, events, transactions or occurrences alleged in the Lawsuits or which could have been alleged by the Committee or CSM in the Lawsuits. This Release does not include any rights Plaintiffs have under the Settlement Agreement.

2. **Release by Defendants.** In exchange for the consideration given in the Settlement Agreement, Defendants, on behalf of themselves, as well as past, present, and future heirs, estates, licensees, sublicensees, agents, representatives, executors, trustees, attorneys, insurers, successors, and assigns, and all persons or entities acting by, through, under, or in concert with Defendants, hereby fully and forever release and discharge Plaintiffs, as well as their respective predecessor and successor companies, parent companies, subsidiaries, affiliated entities, owners, partners, joint venturers, divisions and all related corporate and operating entities, attorneys, officers, directors, employees and agents, producers, independent contractors, representatives, alter egos, shareholders, successors, assigns, licensees, sublicensees, advertisers, and their respective insurers and underwriters, from any and all actions, rights of action, causes, claims, grievances, demands, losses, damages, obligations and liabilities of any kind, whether actual or potential, known or unknown, based in law or equity, arising out of or relating to the facts,

circumstances, conduct, events, transactions or occurrences alleged in the Lawsuits.  This

Release does not include any rights Defendants have under the Settlement Agreement and does

not apply to any claims which have been asserted in Adversary Proceeding Case No. 16-02118

styled Waterloo Street Limited et al vs. David Richards LLC et al and in Delaware Chancery

Court Case No. 2018-0059-JRS styled Skye Mineral Investors, LLC et al vs. DXS Capital (U.S.)

Limited et al.

      **<u>Waiver of California Civil Code Section 1542</u>.**   With respect to the matters released

herein, the Parties acknowledge that there is a possibility that, after the execution of the

Settlement Agreement, they will discover facts or claims, or discover that they have sustained

losses or damages, that were unknown or unsuspected at the time the Settlement Agreement was

executed, and which if known by them at that time might have materially affected his or its

decision to execute the Settlement Agreement.   The Parties acknowledge and agree that by

reason of the Settlement Agreement, and the releases contained in the Settlement Agreement,

they are assuming any risk of such unknown facts and such unknown and unsuspected claims,

losses, or damages.  The Parties have been advised by their respective counsel of the existence of

Section 1542 of the California Civil Code, which provides:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, AND THAT IF KNOWN BY
> HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED
> PARTY."**

Notwithstanding such provisions, the releases in the Settlement Agreement shall constitute a full

release of in accordance with the terms of the Settlement Agreement.  Plaintiffs and Defendants

knowingly and voluntarily waive the provisions of Section 1542, as well as any other statute,

law, or rule of similar effect, and acknowledge and agree that this waiver is an essential and

material term of the Settlement Agreement and the settlement which it memorializes, and without such waiver the settlement would not have been accepted.

**Denial of Liability.**  The Settlement Agreement is the result of a compromise and shall not at any time for any purpose be construed by the Parties, their attorneys, or by anyone else as an admission by any Party of any liability or responsibility for any injuries and/or damages allegedly suffered by another Party, and the Parties further acknowledge that each Party specifically disclaims any liability or responsibility for such alleged injuries and/or damages.

**No Assignment by Plaintiffs.**  Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any of their claims against Defendants, any portion thereof, or any interest therein.  Plaintiffs specifically represent and warrant that no other person or entity has any right, title, or interest in Plaintiffs' claims against Defendants, or any other matter that formed the bases of the Lawsuits.

**No Assignment by Defendants.**  Defendants represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any of their Proofs of Claim filed in the Bankruptcy Case, any portion thereof, or any interest therein. Defendants specifically represent and warrant that no other person or entity has any right, title, or interest in the Proofs of Claim filed in the Bankruptcy Case, or any other matter that formed the bases or Defendants' defenses of the Lawsuits.

**Fees and Costs.**   The Parties shall bear their own costs, attorneys' fees, and experts' fees incurred in connection with the Lawsuits and the Settlement Agreement.

**Choice of Law.**  The laws of the State of California shall govern the validity, interpretation and performance of the Settlement Agreement, without regard to conflicts of laws principles.

## IV.   **RELIEF REQUESTED**

22.     By this Motion, Plaintiffs seek entry of an Order approving the Settlement Agreement pursuant to Bankruptcy Code section 105 and Bankruptcy Rule 9019.

## V.   **ARGUMENT**

23.     Bankruptcy Rule 9019(a) provides that the Court may approve a compromise or settlement, on a motion by the trustee and after a hearing on notice to creditors – here, the Trust and the Committee have obtained standing to settle these matters.  Settlements and compromises are generally favored in bankruptcy cases. *See In re Donald Wesley Dennett*, 449 B.R. 139, 144 (Bankr. D. Utah 2011); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3rd Cir. 1996) (quoting 9 Collier on Bankruptcy, ¶ 9019.03[1] (15th Ed. 1993)).  Settlements are "'a normal part of the process of reorganization.'" *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. LA. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

24.     It is within the Court's discretion to approve settlements and compromises that are brought under its jurisdiction. *See Reiss v. Hagmann*, 881 F.2d 890, 891-92 (10th Cir. 1989). "The decision of a bankruptcy court to approve a settlement must be 'an informed one based upon an objective evaluation of developed facts.'" *Kopp v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022 (10th Cir. B.A.P. 1997) (*quoting Reiss v. Hagmann*, 881 F.2d at 892).  A bankruptcy court's approval of a compromise must be affirmed unless the court's determination is either (1) completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. *Dennett*, 449 B.R. at 144 (citing *In re Southern Medical Arts Co., Inc.*, 343 B.R. 258 (10th Cir. B.A.P. 2006) and *In re Kaiser Steep Corp.*, 105 B.R. 971, 978 (D. Colo. 1989)).  A bankruptcy

court need not decide the numerous issues of law and fact raised by a settlement, but rather "the underlying test for the bankruptcy court's approval is whether the [Committee's and Trust's] actions are 'within the universe of reasonable actions,' not whether pressing onward might produce more funds." *Dennett*, 449 B.R. at 144 (citing *In re Mailman Steam Carpet Cleaning Corp.*, 212 F.3d 632, 636 (1st Cir. 2000), *cert. denied*, 531 U.S. 960 (2000) and Fed. R. Bankr. P. 9019, Selected Case Comment, Approval Factors and Standards for Consideration).

25.     In determining whether to approve a settlement, a court must simply "canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *In re Key3Media Group, Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. Oct. 7, 2005) (citing *In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D. N.J. 2000); *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[C]ourts must only conclude that the compromise or settlement falls within the reasonable range of litigation possibilities.") (citing *In re Perm Central Transp. Co.*, 596 F.2d 1102, 1114 (3rd Cir. 1979); *In re Servisense.com, Inc.*, 382 F.2d 68, 71 (1st Cir. 2004). A full evidentiary hearing to determine the merits of the underlying litigation is not required under Bankruptcy Rule 9019. *In re Dennett*, 449 B.R. 139, 145 (Bankr. D. Utah 2011) ("Further, the Court is not required to hold a mini-trial on the issues involved in the case being compromised.").

26.     In deciding whether a particular settlement falls within the "range of reasonableness" courts consider the following factors: (1) the probability of success in the underlying litigation; (2) the possible difficulty in collection of a judgment; (3) the complexity and expense of the litigation; and (4) the interests of creditors in deference to their reasonable views (*i.e.* the paramount interests of creditors). *In re Kopexa Realty Venture Co.*, 213 B.R. at 1022.

27.    In addition, when determining the reasonableness of the settlement, the Court may weigh the opinions of the parties, and their attorneys, and may consider the principals' belief that all of the factors bearing upon the appropriateness of the settlement have been explored and that the compromise is fair, equitable, and the wisest course. *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976).   Settlements should be approved so long as a minimal threshold of reasonableness is satisfied. *See, e.g., In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008) ("In considering a proposed settlement, the court's duty is to determine whether the compromise is reasonable, not whether the compromise is the best possible settlement.").

28.    Plaintiffs believe the Settlement Agreement –  a product of extensive, good faith, arms'-length negotiations between the Parties in the context of a mediation administered by the Hon. Michael Latin (Ret.) – is fair and reasonable, and that approval is in the best interests of the estate and its creditors.  Furthermore, each of the foregoing relevant factors (*i.e.*, the probability of success in the litigation; the difficulties associated with collection; the complexity of the litigation, and attendant expense, inconvenience and delay, and the paramount interests of creditors) militates in favor of this Court's approval of the Settlement Agreement.

29.    **First**, the probability of success in both of the Lawsuits and in litigating the Proofs of Claim is less than certain.  The claims in the Lawsuits are highly disputed and will require the Parties to take more than 7 depositions; retain expert witnesses regarding both fiduciary duties and calculation of damages; and also, further motion practice.   The costs associated with all of this would likely exceed $500,000.  Pursuant to the Settlement Agreement, all of the claims, litigation and disputes between and among the Parties will be resolved.  *All* of the Proofs of Claim will be withdrawn, including hundreds of thousands of dollars of administrative priority claims.  It would not be possible for Plaintiffs to achieve a superior result

with respect to the disallowance of the Proofs of Claim absent the Settlement Agreement, and it would cost Plaintiffs substantially more to litigate the Proofs of Claim, with no assurance of success. Additionally, while it is *possible* that Plaintiffs may achieve a superior result in the Lawsuits, the costs and outcome of pressing forward with the Lawsuits, which involve complicated factual allegations that Plaintiffs would have the burden to prove, are unknown, whereas the Settlement Agreement guarantees that the estate will receive $1.5 million in cash, in addition to the withdrawal of the Proofs of Claim at no further expense to the estate. In light of these known costs and unknown risks, Plaintiffs believe that the probability of success in litigation does not outweigh the significant cost savings and benefits of the Settlement Agreement.

30. **Second**, while there may not be difficulties collecting any judgment obtained, there will likely be substantial delays associated with collection of any judgment, and, this factor is not relevant to the disallowance/subordination of the Proofs of Claim. Here, while there are potential insurance policies that would cover, at least to some extent, any judgments obtained by Plaintiffs, the insurance policies have limits, and are subject to depletion due to ongoing litigation costs. Accordingly, while there may not be substantial collection issues now, given the complicated nature of the allegations against Defendants, and given the substantial amount of litigation that will be required to be undertaken in order to obtain a judgment against them, by the time such judgments are obtained, the existing policy could be completely depleted and collection may be a significant problem. The Settlement Agreement completely resolves this concern, by guaranteeing that there is $1.5 million for the benefit of CSM's estate now at no further cost to the estate, and with no further depletion of the Defendants' policy of insurance.

31.    **Third**, the complexity of the litigation, and attendant expense, inconvenience and delay favor approval of the Settlement Agreement.  The issues between the Parties and the legal disputes that arise therefrom are fact intensive, time consuming, and will be costly to litigate.  The issues and related disputes are also extremely complex and the settlement embodied in the Settlement Agreement will avoid protracted, expensive and uncertain litigation.  Plaintiffs project that the cost of resolving the disputes via litigation will exceed hundreds of thousands of dollars, which may be unrecoverable, and could be considerably more when taking into account appeals.  Thus, the benefits to the estate could be very easily and very quickly outweighed by the litigation costs.  Thus, when measured against a possible uncertain recovery after trial and possible appeals, the Settlement Agreement is fair and reasonable, falling well above "the lowest point in the range of reasonableness."

32.    **Fourth**, the paramount interest of creditors militates in favor of approval of the Settlement Agreement.  The Settlement Agreement was negotiated in good faith with the oversight and assistance of a qualified mediator who is a former judge.  All parties including Arch were represented by counsel who zealously advocated on behalf of their clients.  The Lawsuits and the Proofs of Claim involve complex facts, and the litigation that would ensue absent a settlement will be protracted and expensive.  The Bankruptcy Case has been pending since 2016, and the litigation between the Parties could continue for a number of years, without any assurance of benefit to creditors.  Plaintiffs respectfully submit that the paramount interest of creditors is to resolve the Lawsuits and the Proofs of Claim, and avoid additional expense and delay.  The Settlement Agreement accomplishes these interests.  The Settlement Agreement provides for both the Settlement Payment and the withdrawal of substantial claims against the estate, without further cost to the estate.  Resolving the Proofs of Claim in this manner will

preserve estate assets for the benefit of other creditors and permit the Trustee to proceed with

distributions to creditors holding allowed claims.  The releases between the Parties also provide

certainty and eliminate future risk.    Accordingly, Plaintiffs believe that approval of the

Settlement Agreement is in the best interests of the estate and its creditors, and respectfully

request that this Court approve the Settlement Agreement and authorize the Parties to perform

the obligations thereunder through entry of an Order granting the 9019 Motion and approving the

Settlement Agreement.

## VI.    <u>CONCLUSION</u>

Wherefore, Plaintiffs respectfully request entry of an Order approving the Settlement

Agreement, and authorizing and granting such other and further relief in favor of Plaintiffs as the

Court deems just and proper.

Dated:  June 7, 2019                **LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**


                                    _*/s/ Martin J. Brill*_
                                    Martin J. Brill (admitted *pro hac vice*)
                                    Philip A. Gasteier (admitted *pro hac vice*)
                                    Beth Ann R. Young (admitted *pro hac vice*)
                                    Krikor J. Meshefejian (admitted *pro hac vice*)

                                    *Counsel for Plaintiffs Official Committee of Creditors
                                    Holding Unsecured Claims and Liquidation Trust of CS
                                    Mining, LLC*

# EXHIBIT "A"

Martin J. Brill (Calif. Bar No. 53220)
Philip A. Gasteier (Calif. Bar No. 130043)
Beth Ann R. Young (Calif. Bar No. 143945)
Krikor J. Meshefejian (Calif. Bar No. 255030)
**LEVENE, NEALE, BENDER, YOO & BRILL, L.L.P.**
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:     (310) 229-1234
Facsimile:     (310) 229-1244
Email:          mjb@lnbyb.com; pag@lnbyb.com; bry@lnbyb.com; kjm@lnbyb.com
*Counsel for Official Committee of Creditors Holding Unsecured Claims and Liquidation Trust of CS Mining, LLC*

David Leta (1937)
Jeff Tuttle (14500)
**SNELL & WILMER L.L.P.**
1500 W South Temple, Suite 1200
Salt Lake City, UT 84101
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
Email: dleta@swlaw.com; jtuttle@swlaw.com
*Local Counsel for Liquidation Trust of CS Mining, LLC*

George Hofmann – Bar No. 10005
**COHNE KINGHORN, A PROFESSIONAL CORPORATION**
111 East Broadway, 11th Floor
Salt Lake City, UT  84111
Telephone:     (801) 415-0132
Facsimile:     (801) 363-4378
ghofmann@cohnekinghorn.com
*Local Counsel for Official Committee of Creditors Holding Unsecured Claims*

---

### IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re **CS MINING, LLC**,<br><br>Debtor | Bankruptcy Case No. 16-24818<br><br>(Chapter 11)<br><br>Judge William T. Thurman<br><br>Adv. Pro. Nos.: 18-02064 and 18-02090 |

**ORDER APPROVING SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

This matter came before the Court upon the Motion (the "9019 Motion") [Docket No. ___] of the Official Committee of Creditors Holding Unsecured Claims of the Bankruptcy Estate of CS Mining, LLC (the "Committee"), and the Liquidation Trust of CS Mining, LLC (the "Trust" and collectively with the Committee, "Plaintiffs") pursuant to Bankruptcy Rule 9019 to approve a Settlement Agreement between the Committee and the Trustee, on the one hand, and David J. Richards, Clinton Walker, David McMullin, Clarity Management, L.P., and Empire Advisors, LLC (collectively, "Defendants"), on the other hand. The Settlement Agreement is attached to the 9019 Motion as **Exhibit B.** Notice of the 9019 Motion was given properly to parties in interest as shown by the certificate of service of record [Docket No. ___]. The Court having found, on the record, that the proposed Settlement Agreement satisfies the requirements of Bankruptcy Rule 9019, and other good cause appearing therefor, hereby ORDERS that:

1. The Settlement Agreement is approved.

2. The Plaintiffs and the Defendants are authorized and directed to forthwith implement and perform the Settlement Agreement pursuant to its terms.

***** End of Order *****

# EXHIBIT "B"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered into by and between the Official Committee of Creditors Holding Unsecured Claims of the Bankruptcy Estate of CS Mining, LLC (the "Committee"), and the Liquidation Trust of CS Mining, LLC (the "Trust") (collectively, "Plaintiffs") on the one hand, and David J. Richards ("Richards"), Clinton Walker ("Walker"), David McMullin ("McMullin"), Clarity Management, L.P. ("Clarity"), and Empire Advisors, LLC ("Empire") (collectively, "Defendants"), on the other hand.  Defendants and Plaintiffs are referred to collectively in this Agreement as the "Parties."

## RECITALS

This Agreement is entered into with reference to the following facts:

A.    On June 2, 2016, an involuntary Chapter 11 petition was filed against CS Mining, LLC ("CSM") in the United States Bankruptcy Court for the District of Utah, bearing Case No. 16-24818 and an order for relief was entered on August 4, 2016 (the "Bankruptcy Case").

B.    On February 2, 2018, the Court entered its order granting the Committee standing to pursue CSM's claims against Richards, Walker and McMullin.

C.    On May 22, 2018, the Committee filed an adversary proceeding, bearing Adversary Case No. 18-02064 ("Committee Lawsuit"), which asserted CSM's claims against Richards, Walker and McMullin.

D.    On July 25, 2018, the Trust filed an adversary proceeding in the Bankruptcy Case against Clarity and Empire, bearing Adversary Case 18-02090 (the "Trust Lawsuit").

E.    On January 23, 2019, the Committee filed a First Amended Complaint in the Committee Lawsuit.

1

F.   The Committee Lawsuit and the Trust Lawsuit are collectively referred to herein as the "Lawsuits" or individually by name.

G.   Defendants deny that there is any basis for the claims, and further deny any wrongdoing and liability for any claim, asserted or unasserted, known or unknown, in connection with the Lawsuits.  The Committee and Trust disagree.

H.   Defendants have filed the following proofs of claim and administrative expense priority claims (the "Proofs of Claim") in the Bankruptcy Case:

1.   Proof of Claim number 20012 in the sum of $341,666.67 filed by Walker.

2.   Proof of Claim number 199 in the sum of $4,141,666.67 filed by Walker and Clarity.

3.   Proof of Claim number 201 in the sum of $4,141,666.67filed by Clarity.

4.   Proof of Claim number 20011 in the sum of $392,692.49 filed by Clarity.

5.   Proof of Claim number 20015 in the sum of $683,333.33 filed by Empire.

6.   Proof of Claim number 200 in the sum of $4,483,333.33 filed by Empire.

6.    Proof of Claim number 20016 in the sum of $192,000 filed by McMullin.

7.    Administrative Expense Priority Claim in the sum of $199,623.00 filed by Walker and Clarity on September 26, 2017 [Docket No. 946].

8.   Administrative Expense Priority Claim in the sum of $199,623.00 filed by Richards on August 17, 2017 [Docket No. 890].

I.   Without in any way admitting any liability and to avoid the further expenditure of time or cost of litigation, the Parties now desire to resolve fully and finally all of the disputes that exist or may exist between them arising out of or relating to the Lawsuits and the Proofs of

Claim, including the events, conduct, transactions, or occurrences alleged in the Lawsuits or the

Proofs of Claim or that could have been alleged in the Lawsuits or the Proofs of Claim.

**ACCORDINGLY, THE PARTIES AGREE AS FOLLOWS**:

1.   <u>Consideration Paid on Behalf of Defendants to Liquidating Trust</u>.

Defendants shall cause their insurance carrier, Arch Insurance Company ("Arch"), to

deliver to the Committee the sum of $1,500,000 (One Million Five Hundred Thousand Dollars)

(the "Settlement Payment") in care of the Committee's/Trust's counsel Levene, Neale, Bender,

Yoo & Brill L.L.P. ("LNBYB").   The Settlement Payment will be delivered to LNBYB prior to

Plaintiffs filing the 9019 Motion (discussed below), and no later than ten days after all Parties

have executed this Agreement, and a copy of the fully-executed Agreement has been provided to

Arch, along with payee information and a valid Form W-9.

LNBYB will hold the Settlement Payment in its trust account pending the Court's

consideration of the 9019 Motion. The Settlement Payment shall be deemed to be in the custody

of the Bankruptcy Court, and shall remain subject to the jurisdiction of the Court, until such time

as the Settlement Payment shall be released to the Committee/Trust or returned to Arch.  Neither

the Defendants nor Arch shall bear any responsibility or liability, directly, indirectly or

otherwise, for any acts or omissions in the handling of the Settlement Payment once delivered to

LNBYB.

If for any reason the Court does not grant the 9019 Motion, LNBYB shall within ten days

return the Settlement Amount to Arch, plus any interest accrued on the Settlement Amount after

it was received by LNBYB.  If LNBYB fails to timely return the Settlement Amount to Arch,

plus applicable interest, LNBYB shall be directly liable to Arch for all reasonable fees and

expenses Arch may incur to recover the same.  .

3

2.    <u>Defendants' Withdrawal of Proofs of Claim</u>.

a.    Upon approval of the 9019 Motion, Defendants will withdraw, waive and release all of the Proofs of Claim they filed in the Bankruptcy Case as detailed in Recital H above, as well as any other proofs of claim or administrative claims filed by them or on their behalf.  Defendants understand that they will not receive any distributions on account of the Proofs of Claim that they filed or any other proofs of claim or administrative claims that were filed on their behalf.

b.    Plaintiffs agree that execution of this Agreement, completion of the Settlement Payment referenced above, and withdrawal, waiver and release of the Proofs of Claim referenced above, shall constitute full, final, and complete performance by Defendants under this Paragraph.

c.    Defendants' obligations under this Paragraph are conditioned upon Plaintiffs executing and delivering to counsel for Defendants all of the following:  (1) fully-executed copies of this Agreement; and, (2), any applicable tax ID number(s) and W-9 Forms as may be reasonably necessary to effectuate the terms and purpose of the Agreement.  Plaintiffs shall be solely responsible for their respective obligations to pay federal, state, local or non-U.S. taxes of any nature that are or may be assessed against them relating to the Settlement Payment. Plaintiffs and their counsel agree that Defendants make no representation as to the tax consequences of the Settlement Payment.

2.    <u>Motion for Settlement Under FRBP 9019</u>.  In exchange for the consideration given in this Agreement, the sufficiency of which is hereby acknowledged, within five days of their receipt of both (a) this Agreement executed by all of the Parties; and (b) delivery to LNBYB of the Settlement Payment, Plaintiffs will file a motion for approval of the Agreement pursuant to

4

Federal Rule of Bankruptcy Procedure 9019 (the "9019 Motion").  Within 10 days of entry of a

final, non-appealable Order granting the 9019 Motion, Plaintiffs shall file a request for dismissal

of the Lawsuits in their entirety, with prejudice.  Defendants will use their best efforts to support

the 9019 Motion and will take no action to oppose, directly or indirectly, the 9019 Motion.

3.    Release by Plaintiffs.  In exchange for the consideration given in this Agreement,

Plaintiffs, on behalf of themselves, and as transferee of CSM, as well as past, present, and future

heirs, estates, licensees, sublicensees, agents, representatives, executors, trustees, attorneys,

insurers, successors, and assigns, and all persons or entities acting by, through, under, or in

concert with Plaintiffs, hereby fully and forever release and discharge Defendants, as well as

their respective predecessor and successor companies, parent companies, subsidiaries, affiliated

entities, owners, partners, joint venturers, divisions and all related corporate and operating

entities, attorneys, officers, directors, employees and agents, producers, independent contractors,

representatives, alter egos, shareholders, successors, assigns, licensees, sublicensees, advertisers,

and their respective insurers and underwriters and reinsurers, from any and all actions, rights of

action, causes, claims, grievances, demands, losses, damages, obligations and liabilities of any

kind, whether actual or potential, known or unknown, based in law or equity, arising out of or

relating to the facts, circumstances, conduct, events, transactions or occurrences alleged in the

Lawsuits or which could have been alleged by the Committee or CSM in the Lawsuits.  This

Release does not include any rights Plaintiffs have under this Agreement.

4.    Release by Defendants.  In exchange for the consideration given in this Agreement,

Defendants, on behalf of themselves, as well as past, present, and future heirs, estates, licensees,

sublicensees, agents, representatives, executors, trustees, attorneys, insurers, successors, and

assigns, and all persons or entities acting by, through, under, or in concert with Defendants,

5

hereby fully and forever release and discharge Plaintiffs, as well as their respective predecessor

and successor companies, parent companies, subsidiaries, affiliated entities, owners, partners,

joint venturers, divisions and all related corporate and operating entities, attorneys, officers,

directors, employees and agents, producers, independent contractors, representatives, alter egos,

shareholders, successors, assigns, licensees, sublicensees, advertisers, and their respective

insurers and underwriters, from any and all actions, rights of action, causes, claims, grievances,

demands, losses, damages, obligations and liabilities of any kind, whether actual or potential,

known or unknown, based in law or equity, arising out of or relating to the facts, circumstances,

conduct, events, transactions or occurrences alleged in the Lawsuits.  This Release does not

include any rights Defendants have under this Agreement and does not apply to any claims

which have been asserted in Adversary Proceeding Case No. 16-02118 styled Waterloo Street

Limited et al vs. David Richards LLC et al and in Delaware Chancery Court Case No. 2018-

0059-JRS styled Skye Mineral Investors, LLC et al vs. DXS Capital (U.S.) Limited et al.

5.    Waiver of California Civil Code Section 1542.  With respect to the matters released

herein, the Parties acknowledge that there is a possibility that, after the execution of this

Agreement, they will discover facts or claims, or discover that they have sustained losses or

damages, that were unknown or unsuspected at the time this Agreement was executed, and which

if known by them at that time might have materially affected his or its decision to execute this

Agreement.  The Parties acknowledge and agree that by reason of this Agreement, and the

releases contained in the preceding Paragraphs, they are assuming any risk of such unknown

facts and such unknown and unsuspected claims, losses, or damages.  The Parties have been

advised by their respective counsel of the existence of Section 1542 of the California Civil Code,

which provides:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, AND THAT IF KNOWN BY
> HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED
> PARTY."**

Notwithstanding such provisions, the releases in this Agreement shall constitute a full release of in accordance with the terms above.  Plaintiffs and Defendants knowingly and voluntarily waive the provisions of Section 1542, as well as any other statute, law, or rule of similar effect, and acknowledge and agree that this waiver is an essential and material term of this Agreement and the settlement which it memorializes, and without such waiver the settlement would not have been accepted.

6.   <u>Denial of Liability</u>.  This Agreement is the result of a compromise and shall not at any time for any purpose be construed by the Parties, their attorneys, or by anyone else as an admission by any Party of any liability or responsibility for any injuries and/or damages allegedly suffered by another Party, and the Parties further acknowledge that each Party specifically disclaims any liability or responsibility for such alleged injuries and/or damages.

7.   <u>No Assignment by Plaintiffs</u>.  Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any of their claims against Defendants, any portion thereof, or any interest therein.  Plaintiffs specifically represent and warrant that no other person or entity has any right, title, or interest in Plaintiffs' claims against Defendants, or any other matter that formed the bases of the Lawsuits.

8.   <u>No Assignment by Defendants</u>.  Defendants represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any of their Proofs of Claim filed in the Bankruptcy Case, any portion thereof, or any interest therein.

7

Defendants specifically represent and warrant that no other person or entity has any right, title, or

interest in the Proofs of Claim filed in the CSM Bankruptcy Case, or any other matter that

formed the bases or Defendants' defenses of the Lawsuits.

9.    <u>Fees and Costs</u>.    The Parties shall bear their own costs, attorneys' fees, and experts'

fees incurred in connection with the Lawsuits and this Agreement.

## **REPRESENTATIONS, WARRANTIES AND OTHER PROVISIONS**

10.    If any portion of this Agreement is found to be unenforceable, the Parties desire that

all other portions that can be separated from it or appropriately limited in scope will remain fully

valid and enforceable.

11.    The laws of the State of California shall govern the validity, interpretation and

performance of this Agreement, without regard to conflicts of laws principles.

12.    The Parties acknowledge that they have been represented by independent counsel of

their choice in connection with the Lawsuits and throughout all negotiations related to this

Agreement and its execution.  The Parties represent that they have read carefully (or have had

read to them), and have fully understood, all of the provisions of this Agreement, and that they

are entering into this Agreement voluntarily.

13.    This Agreement contains the entire agreement and understanding concerning this

subject matter between the Parties, and supersedes and replaces all prior negotiations, proposed

agreements and agreements, written or oral.  The Parties, and each of them, acknowledge that no

other Party, nor any agent or attorney of any such party, has made any promise, representation or

warranty whatever, express or implied, not contained in this Agreement, to induce them to

execute this Agreement.  The Parties, and each of them, further represent and acknowledge that

they are not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement.

14.   This Agreement may be executed in counterparts, each of which shall be an original as against any Party who signed it, and all of which shall constitute one and the same document.

15.   Each Party agrees that he/it will execute and deliver such documents and instruments, and do such acts and things as reasonably may be required, for effecting and otherwise carrying out the purposes of the settlement covered and contemplated by this Agreement.  Signatures in PDFs sent by electronic mail and/or facsimiles shall be deemed to be original signatures.

16.   In any construction of this Agreement, the Agreement shall not be interpreted against or in favor of any Party based on the identity of the drafter of the Agreement or any term or provision in it.

17.   This Agreement and the terms and conditions contained in therein are each made an integral part of this Agreement by this reference as though fully set forth herein.  Recitals are also incorporated by this reference, including the definitions set forth in this Agreement.

May __, 2019                    OFFICIAL COMMITTEE OF CREDITORS HOLDING
                                UNSECURED CLAIMS OF THE BANKRUPTCY
                                ESTATE OF CS MINING, LLC

                                By: _____
                                      Name: Robert J. Bayer
                                      Title: Chair of the Committee

May __, 2019                    LIQUIDATION TRUST OF CS MINING, LLC

                                By: _____
                                      Name: Peter Kravitz
                                      Title: Liquidation Trustee

**SIGNATURES CONTINUED ON FOLLOWING PAGE**

9

they are not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement.

14.   This Agreement may be executed in counterparts, each of which shall be an original as against any Party who signed it, and all of which shall constitute one and the same document.

15.   Each Party agrees that he/it will execute and deliver such documents and instruments, and do such acts and things as reasonably may be required, for effecting and otherwise carrying out the purposes of the settlement covered and contemplated by this Agreement.  Signatures in PDFs sent by electronic mail and/or facsimiles shall be deemed to be original signatures.

16.   In any construction of this Agreement, the Agreement shall not be interpreted against or in favor of any Party based on the identity of the drafter of the Agreement or any term or provision in it.

17.   This Agreement and the terms and conditions contained in therein are each made an integral part of this Agreement by this reference as though fully set forth herein.  Recitals are also incorporated by this reference, including the definitions set forth in this Agreement.

May 23, 2019            OFFICIAL COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS OF THE BANKRUPTCY ESTATE OF CS MINING, LLC

By: _____
Name: Robert J. Bayer
Title: Chair of the Committee

May ___, 2019            LIQUIDATION TRUST OF CS MINING, LLC

By: _____
Name: Peter Kravitz
Title: Liquidation Trustee

**SIGNATURES CONTINUED ON FOLLOWING PAGE**

9

May __, 2019                    EMPIRE ADVISORS, LLC

                               By: _____
                                    Name: David J. Richards
                                    Title: _____

May 23, 2019                   CLARITY MANAGEMENT, L.P.

                               By: _____
                                    Name: Clinton W. Walker
                                    Title: _____


**SIGNATURES CONTINUED ON FOLLOWING PAGE**


May __, 2019                   DAVID J. RICHARDS


                               By: _____
                                    David J. Richards

May 23, 2019                   CLINTON W. WALKER


                               By: _____
                                    Clinton W. Walker

May 23, 2019                   DAVID D. MCMULLIN


                               By: _____

10

May __, 2019                          EMPIRE ADVISORS, LLC

                                     By: _____
                                            Name: David J. Richards
                                            Title: _____


May __, 2019                          CLARITY MANAGEMENT, L.P.

                                     By: _____
                                            Name: Clinton W. Walker
                                            Title: _____


**SIGNATURES CONTINUED ON FOLLOWING PAGE**


May 28, 2019                          DAVID J. RICHARDS

                                     By: _____
                                            David J. Richards


May __, 2019                          CLINTON W. WALKER

                                     By: _____
                                            Clinton W. Walker


May __, 2019                          DAVID D. MCMULLIN

                                     By: _____


10

David D. McMullin

**APPROVED AS TO FORM:**

May 28, 2019                          AFFELD GRIVAKES LLP

                              By: _____
                                  Christopher Grivakes
                                  Attorneys for Richards, Walker, McMullin,
                                  Clarity and Empire

May___, 2019                          LEVENE, NEALE, BENDER, YOO & BRILL, L.L.P.

                              By: _____
                                  Martin J. Brill
                                  Attorneys for the Committee and the Trust

11

**APPROVED AS TO FORM:**

May__, 2019                          AFFELD GRIVAKES LLP

                    By: _____
                          Christopher Grivakes
                          Attorneys for Richards, Walker, McMullin,
                          Clarity and Empire

May 23, 2019                         LEVENE, NEALE, BENDER, YOO & BRILL, L.L.P.

                    By: _____
                          Martin J. Brill
                          Attorneys for the Committee and the Trust

11

# CERTIFICATE OF SERVICE

1.      On the 7th day of June 2019, I served the following document:

**MOTION FOR AN ORDER APPROVING SETTLEMENT AGREEMENT AND
MUTUAL RELEASE**

2.      I served the above-named document by the following means to the persons as listed below:

    **X**    **a.**    **ECF System**

    **X**    **b.**    **United States mail, postage fully prepaid**

          **c.**    **Personal Service**

          **d.**    **By direct email (as opposed to through the ECF System)**
Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

          **e.**    **By Fax transmission**
Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below.  No error was reported by the fax machine that I used.  A copy of the record of fax transmission is attached.

          **f.**    **By Messenger**
I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 7th day of June 2019

By:  Lourdes Cruz_____          _/s/ Lourdes Cruz_____
                                      Signature

1

### SERVICE VIA ECF NOTICE

2

3
- Adam S. Affleck    asa@pyglaw.com,
docket@princeyeates.com;andalin@princeyeates.com
4
- Steven F. Alder    stevealder@utah.gov
- James W. Anderson    jwa@clydesnow.com,
5
mmann@clydesnow.com;atrujillo@clydesnow.com
- Troy J. Aramburu    taramburu@swlaw.com,
6
mrudiger@swlaw.com,docket_slc@swlaw.com,awayne@swlaw.com,mwilkey@swlaw.c
om
7
- J. Thomas Beckett    tbeckett@parsonsbehle.com,
8
ecf@parsonsbehle.com;brothschild@parsonsbehle.com;kstankevitz@parsonsbehle.com
- Darwin H. Bingham    dbingham@scalleyreading.net, cat@scalleyreading.net
9
- Stephen T. Bobo    sbobo@reedsmith.com
- Kyle A. Brannon    kbrannon@nexsenpruet.com
10
- Scott S Bridge    sbridge@keslerrust.com
11
- Martin J. Brill    mjb@lnbyb.com
- Mona Lyman
12
Burton    intaketeam@hollandhart.com;slclitdocket@hollandhart.com;lcpaul@hollandha
rt.com
13
- Keith A. Call    kcall@scmlaw.com, hae@scmlaw.com
14
- Kenneth L. Cannon    kcannon@djplaw.com, khughes@djplaw.com
- Laurie A. Cayton tr    laurie.cayton@usdoj.gov,
15
James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Patricia W. Christensen    pchristensen@parrbrown.com
16
- Christopher B. Chuff    chuffc@pepperlaw.com
- Joanna J. Cline    clinej@pepperlaw.com
17
- Joseph M.R. Covey    calendar@parrbrown.com;nmckean@parrbrown.com
18
- P. Matthew Cox    bankruptcy_pmc@scmlaw.com
- Robert T. Denny    rtd@scmlaw.com, ajm@scmlaw.com
19
- Andres' Diaz    courtmail@adexpresslaw.com
- Timothy D. Ducar    tducar@azlawyers.com, orders@azlawyers.com
20
- Victoria B. Finlinson    vbf@clydesnow.com, kpeck@clydesnow.com
21
- Gale K. Francis    gfrancis@agutah.gov
- Philip A. Gasteier    pag@lnbyb.com
22
- Matthew A. Gold    courts@argopartners.net
- Christopher Grivakes    cg@agzlaw.com
23
- Robert W. Hamilton    rwhamilton@jonesday.com
- M. Darin Hammond    dhammond@smithknowles.com, astevenson@smithknowles.com
24
- Timothy O. Hemming    themming@djplaw.com
25
- George B. Hofmann    ghofmann@ck.law, dhaney@ck.law;mparks@ck.law
- Paul C. Huck    paulhuck@jonesday.com, ramoncastillo@jonesday.com
26
- David W. Hunter    davidh@fisherhunterlaw.com
- Pedro A. Jimenez    emartin@jonesday.com
27
- Michael R. Johnson    mjohnson@rqn.com, docket@rqn.com;dburton@rqn.com

28

- Peter J. Kuhn tr    Peter.J.Kuhn@usdoj.gov,
  James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Brian R. Langford    brian@mhmlawoffices.com,
  brian@mhmlawoffice.com;langfordbr85579@notify.bestcase.com
- David H. Leigh    dleigh@rqn.com, dburton@rqn.com;docket@rqn.com
- David E. Leta    dleta@swlaw.com, wkalawaia@swlaw.com;csmart@swlaw.com
- Andrew C. Lillie    andrew.lillie@hoganlovells.com
- Jessica Black Livingston    jessica.livingston@hoganlovells.com
- Ralph R. Mabey    rmabey@kmclaw.com
- Adelaide Maudsley    adelaide.maudsley@pi.bank, torri.slaughter@pi.bank
- Scott O. Mercer    som@keslerrust.com
- Krikor J. Meshefejian    kjm@lnbyb.com
- Matt Munson    matt@mamunsonlaw.com, chris@mamunsonlaw.com
- Sherilyn A. Olsen    solsen@hollandhart.com,
  intaketeam@hollandhart.com;cfries@hollandhart.com
- Ellen E. Ostrow    ellen.ostrow@stoel.com,
  Stephanie.hore@stoel.com;docketclerk@stoel.com
- A.M. Cristina Perez Soto    cperezsoto@jonesday.com, ramoncastillo@jonesday.com
- Lester A. Perry    lap@hooleking.com, apb@hooleking.com
- Thomas W. Peters    twp@psplawyers.com, hj@psplawyers.com
- David L. Pinkston    bankruptcy_dlp@scmlaw.com
- George W. Pratt    gpratt@joneswaldo.com
- Adam H. Reiser    adam@ahrlaw.org
- Walter A Romney    war@clydesnow.com, mmann@clydesnow.com
- Brian M. Rothschild    brothschild@parsonsbehle.com, ecf@parsonsbehle.com
- John H. Schanne    schannej@pepperlaw.com,
  henrys@pepperlaw.com;molitorm@pepperlaw.com
- Chris L. Schmutz    chrisschmutz.pc@gmail.com,
  hillaryschmutz@yahoo.com;r60588@notify.bestcase.com
- Jeremy C. Sink    jsink@mbt-law.com
- Stephen Styler    steve@stylerdaniels.com
- Richard C. Terry    richard@tjblawyers.com, cbcecf@yahoo.com
- Jeff D. Tuttle    jtuttle@swlaw.com, jpollard@swlaw.com;docket_slc@swlaw.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Jessica P Wilde    jwilde@joneswaldo.com
- Mark W Williams    mwilliams@shermanhoward.com,
  efiling@sah.com;bmcalister@shermanhoward.com
- Kim R. Wilson    bankruptcy_krw@scmlaw.com
- Lee E. Woodard    lwoodard@harrisbeach.com
- Beth Ann R. Young    bry@Lnbyb.com

1

## SERVICE VIA FIRST CLASS MAIL

2

**SEE ATTACHED SERVICE LIST:**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFELD GRIVAKES ZUCKER LLP
ATTN: CHRISTOPHER GRIVAKES
2049 CETNURY PARK EAST, SUITE 2460
LOS ANGELES, CA 90067

BROADBILL PARTNERS, L.P.
COUNSEL TO DIP LENDER
ATTN: JON MARCUS
527 MADISON AVENUE,
6TH FLOOR
NEW YORK, NY 10022

COHNE KINGHORN, A PROFESSIONAL
CORPORATION/COUNSEL TO
UNSECURED CREDITORS' COMMITTEE
ATTN: GEORGE HOFMANN
111 EAST BROADWAY, 11TH FLOOR
SALT LAKE CITY, UT 84111

CS MINING, LLC
ATTN: DAVID MCMULLIN
PO BOX 608
1208 S 200 W
MILFORD, UT 84751

FISHER & HUNTER, LLC
COUNSEL TO EXPRESS METAL
FABRICATORS, LLC
ATTN: DAVID W. HUNTER
444 EAST TABERNACLE, STE B-201
ST. GEORGE, UT 84770

FTI CONSULTING, INC.
ATTN: DAVID BECKMAN
1001 17TH ST. #1100
DENVER, CO 80202

HARRIS BEACH PLLC/COUNSEL TO
IRONSHORE INDEMNITY, INC., LEXON
INSURE/COMPANY AND BOND
SAFEGUARD INSURANCE COMPANY
ATTN: LEE E. WOODARD, ESQ
333 WEST WASHINGTON STREET, STE 200
SYRACUSE, NY 13202

JONES DAY
COUNSEL TO TAMRA MINING
COMPANY,LLC
ATTN: PEDRO A. JIMINEZ
600 BRICKELL AVENUE, SUITE 3300
MIAMI, FL 33131

JONES DAY
COUNSEL TO TAMRA MINING, LLC
ATTN: ROBERT W. HAMILTON
325 JOHN H. MCCONNELL
BOULEVARD, SUITE 600
COLUMBUS, OH 43215-267

JONES DAY
COUNSEL TO TAMRA MINING, LLC
ATTN: PAUL C. HUCK, JR
600 BRICKELL AVENUE
BRICKELL WORLD PLAZA, SUITE 3300
MIAMI, FL 33131

JONES DAY
COUNSEL TO TAMRA MINING, LLC
ATTN: CRISTINA P  REZ SOTO
600 BRICKELL AVENUE
BRICKELL WORLD PLAZA, SUITE 3300
MIAMI, FL 33131

Kevin G. Mikulaninec
Walker Wilcox Matousek LLP
One North Franklin Street
Suite 3200
Chicago, Illinois 60606

MACARTHUR, HEDER & MELTER, PLLC
COUNSEL TO COMMON SENSE PROJECT
SOLUTIONS, LLC
ATTN: BRIAN R. LANGFORD
3319 N. UNIVERSITY AVE.
PROVO, UT 84604

NEXEN PRUET, LLC/COUNSEL TO
AUGUSTA FIBERGLASS COATINGS,
INC./ATTN: KYLE A. BRANNON
1230 MAIN STREET SUITE 700
P.O. BOX 2426
COLUMBIA, SC 29202

PEPPER HAMILTON, LLP
DEBTOR'S COUNSEL
ATTN: DONALD J. DETWEILER
1313 NORTH MARKET STREET
P.O. BOX 1709
WILMINGTON, DE 19899-1709

PEPPER HAMILTON, LLP
DEBTOR'S COUNSEL
ATTN: FRANCIS J. LAWALL
3000 TWO LOGAN SQUARE
EIGHTEENTH AND ARCH STREETS
PHILADELPHIA, PA 19103-2799

PETERS SCOFIELD
COUNSEL TO BEAVER COUNTY
ATTN: THOMAS W. PETERS
7430 CREEK ROAD, SUITE 303
SANDY, UT 84093

PETERS SCOFIELD
COUNSEL TO BEAVER COUNTY
ATTN:THOMAS W. PETERS
7430 CREEK ROAD, SUITE 303
SANDY, UT 84093

PRINCE, YEATES & GELDZAHLER
COUNSEL TO DAVID C. MCMULLIN
ATTN: ADAM S. AFFLECK
15 WEST SOUTH TEMPLE, SUITE 1700
SALT LAKE CITY, UT 84101

SKYE MINERAL PARTNERS, LLC
C/O A REGISTERED AGENT, INC.
1521 CONCORD PIKE #202
WILMINGTON, DE 19803

SKYE MINERAL PARTNERS, LLC
500 S. FRONT ST., SUITE 11200
COLUMBUS, OH 43215

ST. CLOUD CAPITAL PARTNERS II. LP
COUNSEL TO DIP LENDER
ATTN: ROBERT LAUTZ
10866 WILSHIRE BLVD., SUITE 1450
LOS ANGELES, CA 90024

TERRY JESSOP & BITNER/COUNSEL TO
IRONSHORE INDEMNITY, INC., LEXON INSUR.
COMPANY AND BOND SAFEGUARD
INSURANCE COMPANY
ATTN: RICHARD C. TERRY, ESQ
341 SOUTH MAIN STREET, SUITE 500
SALT LAKE CITY, UT 84111

U.S. TRUSTEE
ATTN: LAURIE A. CAYTON
ATTN: PETER J. KUHN
405 SOUTH MAIN STREET, SUITE 300
SALT LAKE CITY, UT 84111

UTAH COPPER
11601 WILSHIRE BLVD, SUITE 1600
LOS ANGELES, CA 90025

WATERLOO STREET LIMITED
ATTN: RALPH MABEY, ESQ.
KIRTON MCCONKIE
50 EAST SOUTH TEMPLE, SUITE 400
SALT LAKE CITY, UT 84111

WATERLOO STREET LIMITED
ATTN: PEDRO A. JIMENEZ, ESQ. AND
PAUL
HUCK, JR; JONES DAY
600 BRICKELL AVENUE, SUITE 3300
MIAMI, FL 33131

WATERLOO STREET LIMITED
2307 RIVER ROAD, SUITE 200
LOUISVILLE, KY 40206

WELLINGTON FINANCIAL
11601 WILSHIRE BLVD, SUITE 1600
LOS ANGELES,, CA 90025

WELLINGTON FINANCING PARTNERS
11601 WILSHIRE BLVD
SUITE 1600
LOS ANGELES, CA 90025

WELLS FARGO
ATTN: TERRI HARTLEY
797 S. MAIN ST.
CEDAR CITY, UT 84720

WELLS FARGO MILFORD
PO BOX 99
326 SOUTH MAIN STREET
MILFORD, UT 84751

WESTERN US MINERAL INVESTORS, LLC
500 S. FRONT ST., SUITE 1200
COLUMBUS, OH 43215